## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MUWEKMA OHLONE TRIBE )
Post Office Box 360791 )
Milpitas, California  95036 )
)
                Plaintiff,
   v.

GALE A. NORTON, Secretary of the
Interior and AURENE MARTIN,
Acting Assistant Secretary for Indian
Affairs; United States Department )
of the Interior )
1849 C Street, N.W. )
Washington, D.C.  20240 )
)
           Defendants. )
_____ )

CASE NUMBER  1:03CV01231

JUDGE: Ricardo M. Urbina

DECK TYPE: Administrative Agency Review

DATE STAMP: 06/06/2003

## COMPLAINT

### Introduction

1.    This is an action brought by the Muwekma Ohlone Tribe ("Muwekma" or

"Tribe") under the United States Constitution and the Administrative Procedure Act, 5 U.S.C. §

§ 554, 701-706, for review of the "Final Determination Against Federal Acknowledgment of the

Muwekma Ohlone Tribe" issued by the Secretary of the Interior ("Secretary") on September 6,

2002 ("Final Determination") refusing federal recognition to the Tribe. 67 Fed. Reg. 58,631

(2002).  The Final Determination was arbitrary, capricious, an abuse of discretion, not in

accordance with law and unwarranted by the facts in violation of the Administrative Procedure

Act, and also constituted a denial to the Tribe of due process and equal protection.

2.    The Tribe has a continuing right to the benefits, services and protection of a

government-to-government relationship with the United States.  As the Department of the Interior ("Department" or "Interior") has confirmed, it recognized the Tribe at least until 1927. Congress has never terminated the Tribe.  However, sometime after 1927 the Department ceased recognizing the Tribe for some purposes and substantially reduced the benefits, services and protection provided to the Tribe.  The Department took this action without any formal, reasoned decision or advance notification to the Tribe or the public and in blatant violation of law and breach of the Department's fiduciary duty to the Tribe.

3.      Notwithstanding the Department's neglect, in the approximately sixty years that followed – only two generations – the Tribe survived and even grew, continuing its tribal activities.  Significantly, thirteen of the 68 known members of the Tribe in 1927 were still alive when the Tribe sought reaffirmation of its status in 1989.  Today, three of the original members are still with us.

4.      In its Final Determination, the Department arbitrarily and capriciously disregarded the Tribe's legal right to continued recognition and rejected substantial evidence of ongoing tribal status.  For example, the Department expressly refused to consider evidence related to the periods prior to 1927 and after 1985, improperly discounted evidence of enrollment of tribal members in Bureau of Indian Affairs schools for tribal children and on the rolls of 1933, 1955, and 1970 of tribal Indians entitled to participate in claims brought against the United States. Without explanation the Department departed on multiple occasions from their own acknowledgment regulations and precedent.  The defendants also refused the Tribe's repeated requests to be reaffirmed on the same basis as other prior recognized tribes that were reaffirmed by the Department as recognized tribes.  Finally, the Department's decision was tainted by bias resulting from the Tribe's successful litigation against the Department compelling expedited

review of the Tribe's petition.

## Parties

5.　　The Muwekma Ohlone Tribe is an Indian tribe located in Northern California in the San Francisco Bay area.  The Department has confirmed that the Tribe was federally recognized as the Verona Band as late as 1927, and the Tribe presented evidence of federal recognition as late as 1970.  Over 99% of the members of the current Muwekma Ohlone Tribe are direct descendants of the members of the Verona Band, and no act of Congress, court ruling, or prior act of the Executive has altered the Tribe's status.

6.　　The defendant, Gale A. Norton, is the Secretary of the Interior.  The defendant, Aurene Martin, is the Acting Assistant Secretary for Indian Affairs, the highest ranking official in the Bureau of Indian Affairs ("BIA"), which has direct responsibility for administering the acknowledgment procedures.  Both defendants are officers or employees of the United States Department of the Interior and have direct or delegated statutory duties for carrying out relations with Indian tribes and the United States' trust obligations to tribes.  25 U.S.C. §§ 2, 9.  Both are named here in their official capacities.

## Jurisdiction

7.　　This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (congressional acts regulating commerce with Indian tribes), and 5 U.S.C. § 702 (Administrative Procedure Act).

## Venue

8.　　Venue in this action lies in this district because the defendants reside in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.  28 U.S.C. § 1391(e).

**<u>Allegations Applicable to all Causes of Action</u>**

9.      Recognition by the United States is vitally important for the Tribe and its members.  Recognition, or acknowledgment, "is a prerequisite to the protection, services, and benefits of the federal government available to Indian tribes by virtue of their status as tribes" and "mean[s] that the tribe is entitled to the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." 25 C.F.R. § 83.2; *see also Muwekma v. Babbitt*, 133 F.Supp.2d 42, 43-44 (D.D.C. 2001).  Recognition imposes on the United States a fiduciary, or trust duty with respect to the tribe.

10.      The people of the Muwekma Ohlone Tribe have lived in the San Francisco Bay area since before the Spanish arrived.  During the Spanish period ancestors of the Muwekma were forced to live and work at or near the Mission of San Jose and were therefore referred to as the Mission Indian Tribe.  When California was incorporated into Mexico, the missions were abolished, and the tribes who lived there were rendered largely landless and destitute.  In the late nineteenth century and early twentieth century, the Muwekma settled in villages known as Alisal, near Pleasanton, and El Molino, near Niles, a few miles away, located within the Tribe's aboriginal territory in Alameda County, California.

11.      The history of federal Indian policy in California is unique.  In the nineteenth century California tribes were overwhelmed by a rapid influx of settlers resulting from the Gold Rush beginning in 1849, including nearly 260,000 miners who moved into the remote areas of the state.  Such rapid and large-scale settlement resulted in substantial disruption of Indian life.  Following the 1848 Treaty of Guadalupe Hidalgo by which Mexico ceded California and other parts of the Southwest to the United States and statehood in 1850, the federal government sent

three federal commissioners to California to negotiate treaties with tribes throughout the state. In 1851 and 1852 the commissioners negotiated eighteen treaties with the tribes of California. In these treaties the tribes ceded the most valuable parts of the state, including the coastal and mountain areas, but reserved approximately 8.5 million acres in the central part of the state for their own use as reservation lands. At the urging of the California delegation, however, the United States Senate did not ratify these treaties and instead sealed them in Senate files until they were discovered in the early twentieth century.

12.    As a result of the Senate's actions, California tribes were left with none of the lands negotiated in the treaties, and they became squatters on their own lands, forced to live at the mercy of non-Indian landowners. During the late nineteenth century non-Indians were particularly hostile to tribes, seeking out and killing Indians outright, often encouraged by bounties offered by local governments. The Secretary of the Interior established three reservations in the northern part of the state and a number of reservations in the south, but created none in the central region or near the San Francisco Bay area, leaving the thousands of Indians in those areas, including the Muwekma, landless. In a 1913 report, a Bureau of Indian Affairs agent estimated that only 5,200 of the Indians in the state had reservations, while the vast majority, over 12,000, had no reservation. These events dealt a particularly severe blow to Mission Indian tribes, such as the Muwekma, who had already suffered substantial displacement decades before when the Spaniards forced them into the missions.

13.    The federal government repeatedly recognized the Tribe in the twentieth century. Pursuant to the Act of March 3, 1905, 33 Stat. 1048, 1058, the BIA conducted a special census of landless Indian communities in Northern California, in which it specifically recognized the Tribe as an Indian tribe. The BIA referred to the Tribe as "the Verona Band," taking the name from a

railroad station located near the Tribe's settlement at Alisal, rather than the name Muwekma, a name in the Tribe's own language which the Tribe uses today to identify itself.

14.    In the Act of June 21, 1906, 34 Stat. 325, 333, Congress appropriated funds to purchase land for homeless Indian tribes in California, and in subsequent appropriations acts provided additional amounts in nearly every year until 1937 for the same purpose. As it administered these Acts, the BIA again acknowledged the Tribe as a federally recognized tribe. In 1914 a BIA agent identified Muwekma as one of the tribes eligible for land purchases in a report to the Commissioner of Indian Affairs. In 1927 the Superintendent of the Sacramento Agency reported to the Commissioner of Indian Affairs on the non-reservation tribes in his jurisdiction for purposes of purchasing land under the Acts. He reported that the Muwekma was "a band in Alameda County commonly known as the Verona Band, [whose members] were formerly those that resided in close proximity of the Mission San Jose." L.A. Dorrington, Superintendent, Sacramento Agency, Bureau of Indian Affairs to Commissioner of Indian Affairs 1 (June 23, 1927) ("Dorrington Report"). The BIA did not set aside land for Muwekma.

15.    The BIA recognized the Tribe as it implemented its general statutory duties to carry out the United States' obligations under treaties, administer programs, and conduct relations with tribes. For example, in 1923 the Reno Agency of the BIA declared in its annual report that the Tribe fell under its jurisdiction.

16.    Congress has never enacted legislation terminating the trust relationship with the Muwekma Ohlone Tribe in that name, the name of the Verona Band, or any other name. Nor has a court, the Department or any division of the Executive Branch terminated the Tribe. Nor has the Tribe voluntarily abandoned tribal relations. Nevertheless, sometime after 1927 the Department ceased recognizing the Tribe for some purposes and substantially reduced the

benefits and services provided to the Tribe. This occurred without notice to the Tribe or the public or any formal decision by the Department. Since it began publishing a list of federally recognized tribes in 1979, despite repeated requests by the Tribe, the Department has never included it on the list or provided much of the benefits, services or protections to which the Tribe was entitled. Such actions violated the law and breached the Department's trust duty to the Tribe.

17.    The Department has continued to provide the Tribe some benefits and services since 1927, evidencing a continued government-to-government relationship. On three separate occasions, in 1933, 1955 and 1970 the Department enrolled Muwekma tribal members pursuant to the Act of May 18, 1928, 45 Stat. 602 ("California Claims Act"). In that Act Congress authorized the attorney general of California to bring an action in the United States Claims Court on behalf of the "Indians of California" for compensation for the approximately 8.5 million acres of lands which tribes in California reserved in the eighteen unratified treaties negotiated in 1851 and 1852. The Act, as amended, required the Department in 1928 to prepare an initial roll of all eligible Indians entitled to receive benefits under the Act and to revise the roll in 1950 and then to prepare a third roll for distributing the proceeds of the judgment fund in 1968. 25 U.S.C. §§ 657-659. In implementing the Act, the Department required applicants to demonstrate that they were members of a California tribe. Members of the Muwekma Tribe or their ancestors were included in one or more of the three rolls.

18.    The Bureau of Indian Affairs recognized the Tribe's status when it repeatedly admitted members of Muwekma to schools operated by the BIA for tribal children. The BIA has jurisdiction solely over members of federally recognized Indian tribes. *See Morton v. Mancari*, 417 U.S. 535 (1974).

19.     Notwithstanding the Department's neglect, the Tribe has continually maintained its tribal existence since 1927 as a distinct American Indian community, interacting socially and exercising political authority over its citizens. The Tribe's leaders organized the community on three separate occasions to enroll under the California Claims Act, between 1929 and 1932, 1950 and 1957 and between 1968 and 1970. Throughout the 1960's the Tribe mobilized to preserve from destruction the Ohlone Cemetery, an Indian cemetery of Mission San Jose, an effort which succeeded. Since the late 1970's the Tribe has been active in working to preserve and ensure proper treatment of archeological resources and ancestral human remains uncovered as land development expanded in the San Francisco Bay area. It has worked closely with Stanford University, the City of San Jose, the California Department of Transportation, and the U.S. Army Corps of Engineers in such matters.

20.     The Central California Agency Superintendent and the Pacific Regional Director of the Bureau of Indian Affairs, the Tribe's Congresswoman, the Lieutenant Governor and numerous local and state authorities have expressed strong support for continuing federal recognition of the Tribe.

21.     The Tribe maintained its existence in the twentieth century in the face of great obstacles. The population of the San Francisco Bay area grew substantially. Such growth transformed the area surrounding the Alisal and El Molino Rancherias in Alameda County from a rural and isolated agricultural region into a suburb integrated into the larger San Francisco Bay area. The Muwekma community was hit hard with outbreaks of tuberculosis and other illness that killed more than 20 members – nearly one-third of the Tribe – between 1915 and 1925, as well as alcoholism and poverty. As all Muwekma were members of the migrant working class, they were forced to leave the area to find work. Six Muwekma men served in the armed services

during World War I, and sixteen served during World War II. Since the Tribe had no landbase, these events put great pressure on the community. Furthermore, the federal policies of assimilation and society's negative image of Native persons and culture discouraged expressions of Indian and tribal identity.

22. Notwithstanding these challenges, Muwekma has survived as a community and even has flourished. In 1927 the Tribe was comprised of eight distinct lineages and approximately 68 persons. While the original eight lineages have been reduced to four, the Tribe's numbers have grown to over 400. The Tribe has also distinguished itself as a leader in the region, the state and the Nation on political and cultural issues of importance to the Tribe.

23. In 1978 the Department promulgated regulations governing administrative determinations to extend federal recognition to unrecognized tribes. Those regulations are codified at 25 C.F.R. part 83. The Department amended these regulations in 1994. The regulations require the Department to maintain a list of federally recognized tribes and establish a process by which unrecognized tribes may petition for acknowledgment of their status as a tribe under federal law. They require petitioning tribes to satisfy seven criteria, including evidence of identification by external sources of the tribe as an Indian entity on a substantially continuous basis, that a predominant portion of the tribe comprises a distinct community, and that the tribe has maintained political influence or authority over its members. 25 C.F.R. § 83.7. The regulations, as amended in 1994, establish modified criteria for previously recognized tribes. *Id.* § 83.8.

24. The regulations require only that evidence establish a reasonable likelihood of the validity of the facts in relation to each criterion. *Id.* § 83.6(d). Neither conclusive proof nor a preponderance of the evidence is required. *Id.* The regulations further require that evaluation of

petitions "take into account historical situations and time periods for which evidence is demonstrably limited or not available" and the "limitations inherent in demonstrating the historical existence of community and political influence or authority." Furthermore, "[f]luctuations in tribal activity during various years shall not in themselves be a cause for denial of acknowledgment under these criteria." *Id.* § 83.6(e).

25.    The Tribe filed its letter of intent to petition for federal acknowledgment in March, 1989. The Tribe submitted substantial evidence in thousands of pages of exhibits and explanation in more than ten volumes in support of its petition. It was not until 9 years later, in March, 1998 that the BIA placed the Tribe on its list of petitioners "ready, waiting for active consideration." By then the Department had concluded that the Tribe had been previously recognized as late as 1927 and that its members were direct descendants of the previously recognized Tribe.

26.    In 1994 the Assistant Secretary reaffirmed the status of the Ione Band of Miwoks, a previously recognized California tribe, without requiring it to submit a petition pursuant to 25 C.F.R. part 83. Like Muwekma, the Ione Band was recognized as a tribe entitled to land for homeless tribes in the Dorrington Report and other reports. Thereafter the Bureau ceased formally dealing with the Ione Band, without formal decision or notice, though it continued providing limited services. Similarly, in 2002, the Lower Lake Rancheria, another California tribe that had previously been recognized, was reaffirmed by administrative action without being required to submit a petition under 25 C.F.R. part 83. Like Muwekma, Lower Lake was found to be entitled to land for homeless tribes. In 1916 the Department purchased approximately 140 acres for the Tribe in Lake County, but because so few members settled there, the Department later sold the land. Thereafter, the BIA, without formal decision or notice, ceased dealing with

Lower Lake to the same extent as with other recognized tribes and reduced benefits and services provided to the Tribe.

27.    On repeated occasions – before the Tribe's petition was complete and after – the Tribe requested that the Department reaffirm the Tribe's status. Each time the defendants refused. Notwithstanding the Department actions to the contrary with respect to the Ione Band and Lower Lake, BIA staff repeatedly advised the Tribe that the Assistant Secretary lacked authority to administratively reaffirm tribal status.

28.    In 1999 the Department had a significant backlog of petitions and consistently decided them at a glacial pace, resulting in substantial delays to petitions waiting for consideration. The Tribe determined that the Department would not likely make a determination on its petition for 20 years. The Tribe brought suit in this Court under the Administrative Procedure Act "to compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Court's rulings in that action are published at *Muwekma Tribe v. Babbitt*, 133 F.Supp.2d 30 (D.D.C. 2000) and 133 F.Supp.2d 42 (D.D.C. 2001).

29.    The Department vigorously opposed the Tribe's request for judicial intervention to ensure that the Department would review the Tribe's petition within a reasonable time as required by law.

30.    On June 30, 2000, this Court ruled against the Department's motion to dismiss, and granted in part the Tribe's motion for summary judgment, ordering Interior to propose a schedule for reaching a final determination on this petition. The Department proposed a schedule without any definite termination date. In subsequent orders, all initially opposed by Interior, the Court set a firm time schedule for Interior to rule on the Tribe's petition. *See* 133 F.Supp.2d at 51. Based upon information and belief, this was the first action in which a tribe successfully

challenged the Department's slow pace of deciding petitions and failure to reduce its backlog. The Court held that the fact that the Tribe was previously recognized, that it has been required to go through this long procedure when other tribes have not, and that, as applied to Muwekma, the procedure may be in contravention of an act of Congress, required an expedited decision. *Id.* at 36-42. The Court also found that the Department had been "glaringly disingenuous" in its pleadings before the Court. *Id.* at 49.

31.     As a result of this decision, other tribes also brought suit against the Department for agency action unreasonably delayed, breaking the absolute control that Interior had exercised over its recognition procedures regardless of delay, to the consternation of the Interior officials.

32.     On July 30, 2001 the Assistant Secretary for Indian Affairs issued a "Proposed Finding on the Ohlone/Costanoan Muwekma Tribe" in which it proposed to decline recognition of the Tribe. Notice of this decision was published in the Federal Register. 66 Fed. Reg. 40,712 (2001). The Tribe submitted extensive comments on the proposed finding comprising twelve volumes of binders and thousands of pages of documentation, including substantial new evidence. On September 6, 2002, the Department issued its Final Determination and published notice in the Federal Register on September 17, 2002. 67 Fed. Reg. 58,631 (2002). The determination became final for the Department on December 17, 2002.

33.     Upon information and belief, plaintiff alleges that the Department of Interior lawyers and other officials who participated both in defending the Department in *Muwekma v. Babbitt* and in consideration of the Muwekma petition developed an animus against the Tribe because of the Tribe's insistence over many years that it was entitled to recognition and its successful effort in court to break through Interior's delays.

## FIRST CAUSE OF ACTION:
## THE FINAL DETERMINATION IS CONTRARY TO LAW

34.     Congress has never authorized the Department of Interior, either expressly or by implication, to withdraw recognition of an Indian tribe once recognized, or to terminate a government-to-government relationship established by the Department in implementing Congressional acts.  The Department has no such authority.  In the Final Determination the Department unlawfully withdrew such recognition of the Muwekma Ohlone Tribe.

35.     Congress has expressly prohibited the Department from withdrawing federal recognition from tribes and terminating tribal benefits and protection. The Federally Recognized Indian Tribe List Act of 1994 requires the Secretary to annually "publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 479a-1(a).  The Act, in its findings, states that "Congress has expressly repudiated the policy of terminating recognized Indian tribes, and has actively sought to restore recognition to tribes that previously have been terminated." 25 U.S.C. § 479a  note (6).  This Court found that "[t]he Tribe List Act prohibits the Secretary from removing or omitting tribes once placed on the list and underscores that Congress has the sole authority to terminate the relationship between a tribe and the United States." *Muwekma v. Babbitt*, 133 F.Supp.2d at 37-38.

36.     The defendants have unlawfully failed to include the Muwekma Ohlone Tribe in the annual list of federally recognized Indian tribes published in the Federal Register as required by the Federally Recognized Indian Tribe List Act.  The Tribe should have been listed and should not have been required to go through the procedures of 25 C.F.R. part 83 at all. Defendants' failure in the Final Determination to include the Muwekma Ohlone Tribe on the list

of federally recognized tribes after the Department determined that the Tribe and the Verona Band were one and the same and that more than 99% of the members of the Tribe were direct descendants of the members of the Verona Band, was contrary to law, in excess of defendants' authority, in violation of the Administrative Procedure Act and the Federally Recognized Indian Tribe List Act.

## SECOND CAUSE OF ACTION:
## THE DEFENDANTS' WITHDRAWAL OF RECOGNITION TO THE MUWEKMA OHLONE TRIBE VIOLATES THE CONSTITUTIONAL RIGHT OF THE TRIBE TO EQUAL PROTECTION OF THE LAWS

37.     As alleged in paragraph 26 above, while the Tribe's petition for recognition was pending, the Department reaffirmed the status of the Ione Band of Miwok Indians and Lower Lake Rancheria outside the 25 C.F.R. part 83 procedures. The Department also restored three other previously recognized tribes outside the part 83 acknowledgment procedures.

38.     The Department denied the Tribe equal protection by failing to reaffirm the Tribe's status after it found that the Tribe was previously recognized and had never been properly terminated, while reaffirming the status of similarly situated tribes.

39.     Within the 25 C.F.R. part 83 procedures, the defendants also denied the Muwekma Ohlone Tribe equal protection of the law by applying standards of proof and construing their regulations in a manner that imposed a substantially higher burden on the Tribe than has been placed on other petitioning tribes.

## THIRD CAUSE OF ACTION:
## THE DEFENDANTS' DENIAL OF RECOGNITION TO THE MUWEKMA OHLONE TRIBE VIOLATES THE CONSTITUTIONAL RIGHT OF THE TRIBE TO DUE PROCESS OF LAW

40.     The Final Determination violates the Tribe's right to due process of law because it

is the product of biased decision-making.   The Muwekma Ohlone Tribe alleges on information and belief that the attorney or attorneys and staff members who fought bitterly against the Tribe in *Muwekma v. Babbitt* also participated in the administrative decision not to recognize the Tribe and assisted in preparing the Final Determination against the Tribe, and that the adversary spirit of the first litigation tainted the Final Determination with bias.  This action violated the Tribe's right to due process because it deprived the Tribe of the right to a full and fair determination by a neutral decision-maker.

### FOURTH CAUSE OF ACTION:
### THE FINAL DETERMINATION WAS ARBITRARY AND CAPRICIOUS AS A RESULT OF BIAS

41.     The Final Determination is arbitrary and capricious as a result of substantial bias that tainted the decision-making process.  In addition to the indicia of bias contained in the ruling itself, the Muwekma Ohlone Tribe alleges on information and belief that: (1) the attorney or attorneys and staff members who fought bitterly against the Muwekma Tribe defending the Department in *Muwekma v. Babbitt* also participated in the deliberations and preparation of the Final Determination against the Tribe; (2) that at the very minimum the attorney or attorneys for Interior in *Muwekma v. Babbitt* should have recused themselves from the administrative determination and the preparation of the decision; and (3) that the adversary spirit of the first litigation unfairly biased the Final Determination

### FIFTH CAUSE OF ACTION:
### THE DEFENDANTS VIOLATED 5 U.S.C. § 554(d) BECAUSE THE ATTORNEY OR ATTORNEYS WHO REPRESENTED THE DEPARTMENT IN *MUWEKMA V. BABBITT* WERE THE SAME ATTORNEY OR ATTORNEYS WHO PARTICIPATED OR ADVISED IN THE "FINAL DETERMINATION" AGAINST THE MUWEKMA OHLONE TRIBE

42.     Section 554(d) of the Administrative Procedure Act provides in pertinent part:

> An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings.

43.     The Muwekma Ohlone Tribe alleges, on information and belief, that the attorney or attorneys and staff members who assisted in the Department's defense in *Muwekma v. Babbitt* also participated in the deliberations and preparation of the Final Determination against the Tribe.  This conduct violated Section 554(d) of the Administrative Procedure Act and tainted the Final Determination.

### SIXTH CAUSE OF ACTION:
### THE FINAL DETERMINATION WAS ARBITRARY AND CAPRICIOUS BECAUSE OF FAILURE TO APPLY THE STANDARDS REQUIRED BY THE DEPARTMENT'S REGULATIONS, MISINTERPRETATION OF LAW, AND FAILURE TO FOLLOW WELL-ESTABLISHED DEPARTMENT PRECEDENT ESTABLISHED IN OTHER RECOGNITION CASES

44.     The acknowledgment regulations provide that a petitioning tribe "may" be denied recognition if certain criteria set out in 25 C.F.R. § 83.7 are not satisfied.  The regulations established an evidentiary standard for evaluating petitions, which provides, in pertinent part:

> A criterion shall be considered met if the available evidence establishes a *reasonable likelihood* of the validity of the facts relation to that criterion.  *Conclusive proof of the facts relating to a criterion shall not be required* in order for the criterion to be considered met.

25 C.F.R. § 83.6(d) (emphasis supplied).  This standard, accounting for the absence of historical records affecting many unrecognized tribes, is deliberately *less* demanding than a preponderance of the evidence.

45.     In the Final Determination – which reads more like an opposing brief than an

impartial administrative ruling – the defendants consistently rejected persuasive evidence that the Tribe satisfied the criteria, applying a standard of proof far *beyond* the regulatory standard, or even a preponderance of the evidence, approaching a standard of beyond a reasonable doubt. This failure to apply their own standards, particularly in the case of a previously recognized tribe, was arbitrary and capricious in the extreme, and based on information and belief, biased.

46.    25 C.F.R. § 83.6(e) provides:

> Evaluation of petitions shall take into account historical situations and time periods for which evidence is demonstrably limited or not available. The limitations inherent in demonstrating the historical existence of community and political influence or authority shall also be taken into account. Existence of community and political influence or authority shall be demonstrated on a substantially continuous basis, but this demonstration does not require meeting these criteria at every point in time. Fluctuations in tribal activity during various years shall not in themselves be a cause for denial of acknowledgment under these criteria.

Defendants, in violation of their regulations, did not take account of the impact of the historical circumstances as a landless, previously recognized California tribe in evaluating the Tribe's petition for acknowledgment.

47.    In the Final Determination the Department arbitrarily and capriciously rejected the Tribe's uncontested evidence that the Department enrolled tribal members in Indian schools and the California Claims Act, providing clear evidence of recognition of the Tribe. Furthermore, defendants arbitrarily and capriciously rejected hundreds of pieces of evidence presented by the Tribe, often departing from the Department's own precedent, failing to consider them in historical context as required by their regulations, and failing to consider their cumulative effect.

## Prayer for Relief

Wherefore the plaintiff Muwekma Ohlone Tribe respectfully prays for a judgment granting it relief as follows:

1.      Reversing the Final Determination and declaring that the Department of the Interior has unlawfully failed to include the Muwekma Ohlone Tribe on the list of federally recognized tribes published in the Federal Register and that the Muwekma Tribe retains its status of an Indian tribe recognized by the United States;

2.      Enjoining the defendants from withholding from the Muwekma Ohlone Tribe the benefits, services and protection the Department provides other federally recognized tribes and directing the defendants to place the Muwekma Ohlone Tribe on the Department's list of federally recognized tribes published annually in the Federal Register;

3.      Ordering such other legal or equitable relief as is necessary to protect the rights declared by this Court.

Respectfully submitted,

Harry R. Sachse, Bar No. 231522
SONOSKY, CHAMBERS, SACHSE,
 ENDRESON & PERRY, LLP
1425 K Street, N.W., Suite 600
Washington, D.C.  20005
(202) 682-0240

Colin Cloud Hampson,  Bar No. 448481
SONOSKY, CHAMBERS, SACHSE,
 ENDRESON & PERRY, LLP
750 B Street, Suite 3300
San Diego, California, 92101
(619) 595-8070

Dated this 6th day of June, 2003.