## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MUWEKMA OHLONE TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Civil Action No.  03-1231(RBW) |
| DIRK KEMPTHORNE,[1] | ) |
| Secretary of the Interior, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

The Muwekma Ohlone Tribe ("Muwekma," "the Tribe," or "the plaintiff")[2] brings this

action under the United States Constitution and the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 554, 701-706 (2000), seeking review of the "Final Determination Against Federal

Acknowledgment of the Muwekma Ohlone Tribe" ("Final Determination"), 67 Fed. Reg. 58,631

(2002), issued by the Department of the Interior ("DOI" or "the Department"),[3] which declined to

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted the Secretary of the Interior, Dirk Kempthorne, for the former Secretary, Gale Norton, as a defendant in this action.

[2]  As a matter of convenience, and in accordance with both parties' pleadings, the Court will at times throughout this Opinion refer to the plaintiff as "the Tribe." See Complaint ¶ 1; Answer at 2 n.2. The Court notes, however, that the plaintiff's status as a Native American tribe within the meaning of the federal acknowledgment criteria is the primary point of contention in this litigation. See Morton v. Mancari, 417 U.S. 535, 553 & n.24 (1974) (stating that for the purposes of federal recognition tribal status is a political rather than racial classification). Accordingly, the Court's reference to the plaintiff as "the Tribe" is not intended to suggest that the plaintiff is, or should be, entitled to federal tribal recognition.

[3]  The named defendants are (1) Gale Norton, in her official capacity as the Secretary of the Interior ("Secretary"); (2) Aurene Martin, in her capacity as the Acting Assistant Secretary for Indian Affairs; and (3) the Department of the Interior (collectively "the defendants").  As noted supra, Dirk Kempthorne has been substituted for Gale Norton pursuant to Rule 25(d)(1).  In addition, Aurene Martin is no longer the Acting Assistant Secretary for Indian Affairs, and the position is currently vacant.

1

grant federal recognition to Muwekma as a Native American tribe pursuant to the

acknowledgment criteria of 25 C.F.R. § 83 (2006) ("Part 83").  Complaint ("Compl.") ¶ 1.

Specifically, Muwekma contends, inter alia, that the Department violated the Equal Protection

Clause and the APA by requiring it to undergo the Part 83 acknowledgment procedures while

allowing similarly situated tribal petitioners to bypass these procedures altogether.  Compl. ¶¶

37-39; Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s

Mem.") at 22-30.  Currently before the Court are the parties' cross-motions for summary

judgment.[4]  For the reasons set forth below, the Court denies both parties' motions without

prejudice and directs the Department to supplement the administrative record.

## I. Background

The following facts are not in dispute.  Muwekma is a group of American Indians

indigenous to the San Francisco Bay area, the members of which are direct descendants of the

historical Mission San Jose Tribe, also known as the Pleasanton or Verona Band of Alameda

County ("the Verona Band").  Pl.'s Mem. at 4; Defs.' Mem. at 5; Answer at 6.  From 1914 to

1927, the Verona Band was recognized by the federal government as an Indian tribe.  Pl.'s Mem.

at 4-5; Defs.' Mem. at 5; Answer at 12-13.  Neither Congress nor any executive agency ever

formally withdrew federal recognition of the Verona Band.  Pl.'s Mem. at 5; Answer at 14.

---

[4]  The following papers have been submitted in connection with these motions: (1) Points and Authorities in
Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."); (2) Memorandum in Support of Defendants'
Cross-Motion for Summary Judgment and Response in Opposition to Plaintiffs' Motion for Summary Judgment
("Defs.' Mem."); (3) Reply Brief in Support of Plaintiff's Motion for Summary Judgment and Opposing Defendants'
Motion for Summary Judgment ("Pl.'s Opp."); (4) Reply Memorandum in Support of Defendants' Cross-Motion for
Summary Judgment ("Defs.' Reply"); (5) Plaintiff's Notice of Supplemental Authority ("Pl.'s Not."); (6)
Defendants' Response to Plaintiff's Filing of Supplemental Authority ("Defs.' Resp."); (7) Plaintiff's Second Notice
of Supplemental Authority ("Pl.'s Second Not."); (8) Defendants' Response to Plaintiff's Second Notice of
Supplemental Authority ("Defs.' Second Resp."); and (9) Plaintiff's Reply in Support of Second Notice of
Supplemental Authority ("Pl.'s Reply to Second Resp.").

Nevertheless, after 1927, the federal government no longer acknowledged the Verona Band, or

any past or present-day incarnation of the plaintiff, as a federally recognized tribal entity entitled

to a government-to-government relationship with the United States.[5]  Pl.'s Mem. at 5 (alleging

that "sometime after 1927 the Department began to simply ignore the Tribe for many purposes

and substantially reduced the benefits and services provided to the Tribe"); Answer at 3 (stating

that "the Department does not recognize the Tribe and has not recognized it or any successor of it

since 1927").  For example, Muwekma has never been included on the list of federally

recognized tribes, first published by the Department in 1979.  Pl.'s Mem. at 6; Answer at 14-15.


*A.  Federal Tribal Recognition*

Federal recognition of tribal status "is a prerequisite to the protection, services, and

benefits of the Federal government available to Indian tribes" and to the "immunities and

privileges available to other federally acknowledged Indian tribes by virtue of their government-

to-government relationship with the United States."  25 C.F.R. § 83.2.  Pursuant to statutorily

delegated authority, the Department is empowered to determine which currently unrecognized

tribes meet the criteria for federal recognition.  25 U.S.C. §§ 2, 9 (2000); see also James v. HHS,

824 F.2d 1132, 1137 (D.C. Cir. 1987) (stating that "Congress has specifically authorized the

Executive Branch to prescribe regulations concerning Indian affairs and relations.  The purpose

_____

[5]  The plaintiff claims that "the Department has . . . continued to provide the Tribe limited benefits and
services since 1927, evidencing a continued government-to-government relationship."  Pl.'s Mem. at 6-7.  The
Department contests this characterization, arguing that the examples provided by the plaintiff do not indicate federal
recognition of its tribal identity after 1927.  Defs.' Mem. at 12-13.  Because the Court is remanding this case for the
Department to supplement the administrative record, it need not decide at this time whether, and to what extent, the
plaintiff received benefits and services after 1927 which suggested that it had been identified by the federal
government as an Indian tribe.

of the regulatory scheme is to . . . determine which Indian groups exist as tribes") (citations omitted).  Notably, Congress does not specify a procedure which the Department must follow to determine whether a petitioning Indian group is entitled to federal tribal recognition.  Prior to 1978, such determinations were made on an ad hoc basis.  Pl.'s Mem. at 9-10; Defs.' Mem. at 1 n.2.  In 1978, however, the Department promulgated regulations that formally addressed the tribal recognition process.  43 Fed. Reg. 39, 361 (Sept. 5, 1978) (codified at 25 C.F.R. § 54 et seq.) (recodified at 25 C.F.R. § 83 et seq.).  These regulations, which were revised in 1994, set forth seven "mandatory criteria," all of which must be satisfied in order for a petition for tribal acknowledgment under Part 83 to be successful.  25 C.F.R. § 83.7.  The Part 83 criteria are as follows:

> (a) The petitioner has been identified as an American Indian entity on a substantially continuous basis since 1900. . . .

> (b) A predominant portion of the petitioning group comprises a distinct community and has existed as a community from historical times until the present. . . .

> (c) The petitioner has maintained political influence or authority over its members as an autonomous entity from historical times until the present. . . .

> (d) A copy of the group's present governing document including its membership criteria. . . .

> (e) The petitioner's membership consists of individuals who descend from a historical Indian tribe or from historical Indian tribes which combined and functioned as a single autonomous political entity. . . .

> (f) The membership of the petitioning group is composed principally of persons who are not members of any acknowledged North American Indian tribe. . . .

> (g) Neither the petitioner nor its members are the subject of congressional legislation that has expressly terminated or forbidden the [f]ederal relationship.

Id.  Until their 1994 revision, the regulations made no distinction between tribes that had been previously (but not currently) acknowledged and those that had never been federally acknowledged.[6] 43 Fed. Reg. 39, 361 (Sept. 5, 1978) (codified at 25 C.F.R. § 54 et seq.) (stating that the regulations are "intended to cover only those American Indian groups . . . which are ethnically and culturally identifiable, but which are not currently acknowledged as Indian tribes by the Department").  The revised regulations, however, establish modified criteria for petitioning tribes that can provide substantial evidence of  "[u]nambiguous previous [f]ederal acknowledgment."  25 C.F.R. § 83.8(a).  Under the modified criteria, a previously acknowledged tribe needs only demonstrate, inter alia, (1) that it has been identified as an American Indian entity on a substantially continuous basis "since the point of [its] last [f]ederal acknowledgment," 25 C.F.R. § 83.8(d)(1); (2) that "it comprises a distinct community at present," 25 C.F.R. § 83.8(d)(2); and (3) that "political influence or authority is exercised within the group . . . from the point of [its] last [f]ederal acknowledgment to the present," 25 C.F.R. § 83.8(d)(3).

B.  *Muwekma's Petition for Acknowledgment*

In early 1989, Muwekma submitted a letter of intent to petition for federal acknowledgment as an Indian tribe to the Department.  Pl.'s Mem. at 11; Defs.' Mem. at 4.  In its response, the Department directed Muwekma to file a formal petition for acknowledgment along

---

[6] In one instance, the old regulations do implicitly distinguish between tribes that have previously been acknowledged and tribes that have never been acknowledged, stating that the Department has the responsibility to contact "all Indian groups known to the Department . . . whose existence has not been previously acknowledged by the Department" and inform them of the newly codified acknowledgment procedure.  43 Fed. Reg. 39,361 (Sept. 5, 1978) (codified at 25 C.F.R. § 54.6(a)).

with detailed documentation in accordance with the Part 83 criteria.[7]  Pl.'s Mem., Exhibit ("Ex.")

46 (April 25, 1989 letter from Joseph Little to Rosemary Cambra) at 1 (cautioning Muwekma

that "[b]ecause of the significance and permanence of acknowledgment as a tribe, the process of

evaluation is a lengthy and thorough one").  Accordingly, beginning in 1995, Muwekma

submitted a formal petition for acknowledgment as well as "thousands of pages" of supplemental

material, Pl.'s Mem. at 11, comprising "primary and secondary source documents, genealogical

evidence, arguments by its researchers, and responses to questions posed by the Department's

staff," Defs.' Mem. at 5.  After reviewing Muwekma's petition and the accompanying materials,

the Department concluded preliminarily in May 1996 "that the Pleasanton or Verona Band of

Alameda County[, from which members of the Muwekma tribe are directly descended,] was

previously acknowledged by the federal government between 1914 and 1927."  Defs.' Mem. at 5;

see also Pl.'s Mem. at 11.  The Department thus informed Muwekma "that it would be able to

complete its petition documentation with the expectation that it would be evaluated under the

federal acknowledgment regulations' modified criteria set out in § 83.8."  Defs.' Mem. at 5.  In

early 1998, after further documentary submissions by the plaintiff, the Department concluded

that Muwekma's petition was complete and placed it "on the list of petitions ready for

consideration."  Id.; see also Pl.'s Mem. at 11.

---

[7]  According to the plaintiff, the Department's response stated "that the Tribe was required to petition under [Part 83].  The Department disclosed nothing regarding alternate procedures for securing recognition."  Pl.'s Mem. at 11.  The Court notes that the response does not expressly state that Part 83 is the only avenue by which groups may petition the Department for tribal acknowledgment.  See  Pl.'s Mem., Ex. 46 (April 25, 1989 letter from Joseph Little to Rosemary Cambra).  In the absence of any statement by the Department to the contrary, however, such a conclusion is certainly a reasonable inference from the text of the letter, which discusses the Part 83 process in detail and indicates no other means for a tribal petitioner to seek acknowledgment.  See id.

After several years during which the Department took no action on Muwekma's formal Part 83 petition for acknowledgment, another member of this Court determined in June 2000 that the defendants had "unreasonably delayed processing of the Muwekma Tribe's petition," calling the delay "unjustifiable and without good reason." Muwekma Tribe v. Babbitt, 133 F. Supp. 2d 30, 41 (D.D.C. 2000) ("Muwekma I"); see also Muwekma Tribe v. Babbitt, 133 F. Supp. 2d 42, 51 (D.D.C. 2001) ("Muwekma II") (ordering the Department to provide a concrete date on which it would conclude consideration of the Tribe's petition).[8] Finally, in July 2001, the Department issued a "Proposed Finding Against Federal Acknowledgment of the Ohlone/Costanoan Muwekma Tribe," in which the Assistant Secretary of Indian Affairs stated the Department's intention "to decline to acknowledge that [Muwekma] exists as an Indian tribe within the meaning of [f]ederal law," 66 Fed. Reg. 40,712, 40,712 (Aug. 3, 2001). The proposed finding determined that Muwekma had failed to satisfy three of the Part 83 criteria. Id. at 40,712-14. Specifically, it stated that Muwekma had not provided "sufficient evidence that it: (1) had been identified as an American Indian entity on a substantially continuous basis since 1927; (2) was a community at present; and (3) exercised political influence or authority over its members since 1927." Defs.' Mem. at 6; see also 66 Fed. Reg. 40,712-14. In September 2002, after reviewing public comments on the proposed findings, Defs.' Mem. at 6-7, the Department promulgated its Final Determination, which concluded "that [Muwekma] did not merit acknowledgment as an Indian tribe under the federal acknowledgment regulations." Id. at 7; see also Pl.'s Mem. at 14;

---

[8] For the parties' account of the Muwekma I and Muwekma II litigation, see Pl.'s Mem. at 12-13 and Defs.' Mem. at 5-6.

67 Fed. Reg. 58,631 (September 17, 2002).  The Final Determination became effective on

December 16, 2002.  Defs.' Mem. at 7; Pl.'s Mem. at 14.

C.  *The Ione and Lower Lake Rancheria Tribes*

In 1994, the Department conferred federal recognition upon the Ione Band of Miwok

("Ione"), a Central California Indian tribe.  Pl.'s Mem. at 25; id., Exs. 61-63; see also Compl. ¶

26; Answer at 22.  The Department similarly acknowledged the tribal status of the Lower Lake

Rancheria of California ("Lower Lake"), another Central California tribe, by placing it on the list

of federally recognized tribes in 2001.[9]  Pl.'s Mem. at 24; id., Ex. 60; see also Compl. ¶ 26;

Answer at 23.  Neither Ione nor Lower Lake were required by the Department to submit a formal

petition for tribal acknowledgment under Part 83, nor to undergo the "lengthy and thorough"

process of evaluation "based on detailed documentation provided by the petitioner," Pl.'s Mem.,

Ex. 46, before receiving the benefits of federal tribal recognition.  Compl. ¶ 26; Answer at 22, 23

(admitting that the Department "clarified the status of [Ione] . . . [and] reaffirmed the status of

[Lower Lake] without requiring [them] to submit . . . petition[s] under . . . Part 83"); Answer at

30 (admitting that "while the Tribe's petition for recognition was pending, the Department

reaffirmed the status of [Ione] and [Lower Lake] outside the [Part 83] procedures").  Moreover,

---

[9]  There is some confusion in the record regarding the year in which the tribal status of Lower Lake was formally acknowledged.  See Compl. ¶ 26 (stating that "in 2002, [Lower Lake] . . . was reaffirmed by administrative action"); Answer at 23 (admitting that "in December 2000, [the Department] reaffirmed the status of [Lower Lake]"); Pl.'s Mem. at 24 (stating that "[o]n January 3, 2001, the Department announced that it would correct its records to recognize [Lower Lake]") (citing Pl.'s Mem., Ex. 60 (January 3, 2001 DOI news release)).  The precise date of Lower Lake's recognition is not material to this litigation, but for convenience the Court will refer to January 3, 2001, the date on which the Department formally stated that it had "reaffirmed the federal trust relationship between the United States and . . . [Lower Lake]," as the operative date.  Pl.'s Mem., Ex. 60 at 1.  The Department also extended federal acknowledgment to two Alaska tribes, without requiring them to proceed through the Part 83 process, at the same time it recognized Lower Lake.  Pl.'s Mem. at 24 (citing Pl.'s Mem., Ex. 60); Pl.'s Opp. at 2; Answer at 30 (stating that "the former Assistant Secretary reaffirmed the status of two Alaska Native villages outside the [P]art 83 acknowledgment procedures during the pendency of the Muwekma petition").

the Department does not dispute Muwekma's allegation that Ione and Lower Lake, like

Muwekma, "were . . . Central California tribes previously recognized at least as late as 1927"

who did not appear on the 1979 list of federally recognized tribes despite "never [having] been

terminated by Congress [or] by any official action of [the Department]."  Pl.'s Opp. at 5; see also

Pl.'s Mem. at 23-27; Answer at 22-23.

On several occasions, Muwekma requested that the Department reaffirm its tribal status

through administrative correction, as the Department had done with Ione and Lower Lake,

without requiring that its completed petition be evaluated under the Part 83 criteria.  Pl.'s Mem.

at 11; Compl. ¶ 27; Answer at 23.  The Department denied Muwekma's requests, stating that it

did not have the power to restore Muwekma to the list of recognized tribes by administrative

means.  Pl.'s Mem. at 11; Compl. ¶ 27; Answer at 23 (admitting that "[n]otwithstanding the

Department actions to the contrary with respect to the Ione Band and Lower Lake, [Department]

staff repeatedly advised [Muwekma] that the Assistant Secretary [of Indian Affairs] lacked

authority to administratively reaffirm tribal status").  The Department's contention to Muwekma

notwithstanding, it is important to note that its regulations provide that the Secretary of the

Interior "retains the power to waive or make exceptions to [Department regulations pertaining to

Indian affairs] in all cases where permitted by law and [where] the Secretary finds that such

waiver or exception is in the best interest of the Indians."  25 C.F.R. § 1.2 (2006).  The District of

Columbia Circuit, as well as at least one other Circuit, has observed the applicability of 25

C.F.R. § 1.2 to the Part 83 procedures for federal tribal acknowledgment.[10]  Cherokee Nation of

_____

[10]  The factual record is silent as to whether the Department made formal findings pursuant to this regulation
stating that it would be "in the best interest of the Indians" in the Ione or Lower Lake tribes to waive the Part 83

(continued...)

Okla. v. Babbitt, 117 F.3d 1489, 1499 (D.C. Cir. 1987) (referencing 25 C.F.R. § 1.2 as a method

by which the Part 83 recognition procedures may be waived); see also Cherokee Nation of Okla.

v. Norton, 389 F.3d 1074, 1087 (10th Cir. 2004) (same).

*D. The Present Litigation*

Muwekma brought this action on June 6, 2003, seeking reversal of the Final

Determination, placement on the Department's list of federally recognized tribes, and other

injunctive relief.  Compl. at 18.  On July 13, 2005, Muwekma moved for summary judgment,

alleging, inter alia, that the Department violated the APA and the Equal Protection Clause when

it required Muwekma to petition for acknowledgment of its tribal status pursuant to the "lengthy

and thorough" regulatory procedures of Part 83, Pl.'s Mem., Ex. 46, despite administratively

reaffirming the status of similarly situated tribes without requiring those tribes to undertake the

Part 83 process and without sufficient explanation for the disparate treatment.[11]  Pl.'s Mem. at

21-22, 26-30; see also Pl.'s Opp. at 9-12; Compl. ¶¶ 37-39, 44-47.  Specifically, Muwekma

contends that "[t]he Department returned Lower Lake and Ione to the list of recognized tribes

---

[10](...continued)
acknowledgment procedures in those instances.  25 C.F.R. § 1.2.

[11]  Muwekma also argues (1) that because the Department lacks the authority "to withdraw recognition of an Indian tribe once recognized, . . . [it] unlawfully withdrew [federal tribal] recognition of the Muwekma Ohlone tribe" when it issued its Final Determination, Compl. ¶¶ 34; see also Pl.'s Mem. at 15-17; (2) that the Final Determination and the failure to include Muwekma on the Department's annual list of federally recognized tribes constituted an unlawful breach of the Department's trust relationship with Muwekma, Compl. ¶ 35; see also Pl.'s Mem. at 17-21; (3) that the Department "unlawfully failed to include [it] in the annual list of federally recognized Indian tribes . . . after [it] determined that [Muwekma] and the Verona Band were one and the same," Compl. ¶ 36; (4) that the Department was biased against Muwekma in a manner which violated Muwekma's constitutional right to due process, the APA, and 5 U.S.C. § 554(d) (2000), Compl. ¶¶ 40-43; see also Pl.'s Mem. at 30-34; and (5) that the Department arbitrarily and capriciously applied incorrect evidentiary standards in violation of the APA and failed to consider substantial evidence of Muwekma's tribal status when rejecting its Part 83 petition in the Final Determination, Compl. ¶¶ 44-47; see also Pl.'s Mem. at 35-45.  Because the Court is remanding this case to the Department to supplement the administrative record on Muwekma's claims of disparate treatment, it need not address Muwekma's other claims at this time.

outside of the [Part 83] procedures [while] requir[ing] Muwekma to complete the Part 83 process

and then, applying a greater evidentiary burden, denied Muwekma recognition despite [its]

significantly stronger case for recognition."  Pl.'s Mem. at 23; see also Pl.'s Opp. at 7 (arguing

that "the facts of Muwekma, even more than Lower Lake, compel administrative correction and

recognition"), 8 (arguing that "the Department relied on findings to reaffirm Ione which would

have disqualified it for recognition under the standards applied to Muwekma"), 10 (asserting that

"Muwekma has provided a much more thorough record of its right to be recognized than Ione or

Lower Lake").

In response to Muwekma's summary judgment motion, the defendants filed a cross-

motion for summary judgment on September 12, 2005.  See generally Defs.' Mem.  In their

motion, the defendants do not deny that Ione and Lower Lake were allowed to bypass the "full-

throated administrative review" required of Muwekma under Part 83.  Defs.' Reply at 18; see

also Answer at 22, 23, 30.  Nor do they offer any express justification for requiring Muwekma to

proceed through the lengthy federal acknowledgment process while exempting Ione and Lower

Lake.  See generally Answer; Defs.' Mem.; Defs. Reply.  Rather, the defendants assert that the

path to federal tribal acknowledgment taken by Ione and Lower Lake is immaterial to the

plaintiff's complaint.  See Defs.' Mem. at 38-41; Defs.' Reply at 16-19.  They argue (1) that the

Department had a rational basis for requiring Muwekma to petition under Part 83, because "[t]he

federal acknowledgment regulations are specifically written to address and take into account

demonstrations of previous federal acknowledgment," Defs.' Mem. at 39-40; (2) that because

"groups demonstrating or alleging characteristics similar to [Muwekma] are regularly required to

proceed through the federal acknowledgment process," making such a requirement of Muwekma

was not a departure from agency precedent, Defs.' Mem. at 40; see also Defs.' Reply at 17-19;

and (3) that at most, Muwekma is asking that Ione and Lower Lake be required to undergo the

Part 83 procedures, a request for which it lacks standing, Defs.' Mem. at 41; Defs.' Reply at 18.

For the following reasons, the Court concludes that, on the record before it, it lacks sufficient

information about the Department's decisions to recognize Ione and Lower Lake outside of the

Part 83 process to resolve Muwekma's equal protection and APA claims.  Accordingly, it

remands this case to the Department so that the administrative record may be supplemented on

this issue.

## II. Standard of Review

### A.  Summary Judgment

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure

56(c) only if the moving party has "show[n] that there is no genuine issue as to any material fact

and that [it] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on

a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-

moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v.

Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all

justifiable inferences" in the non-moving party's favor and accept the non-moving party's

evidence as true.  Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v.

Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (quotation

marks omitted).  Thus, "conclusory allegations unsupported by factual data will not create a

triable issue of fact."  Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir.

1999) (internal quotation marks and citations omitted).   If the Court concludes that "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Moreover, "in ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Shays v. FEC, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citation omitted).  "Because this case involves a challenge to a final administrative action, the Court's review is limited to the administrative record." Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)); see also Vt. Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, 435 U.S. 519, 549 (1978) (stating that "when there is a contemporaneous explanation of the [challenged] agency decision, the validity of that action must stand and fall on the propriety of that finding") (quoting Camp, 411 U.S. at 143) (internal quotation marks and other citation omitted); Shays, 424 F. Supp. 2d at 109-10 (observing that "summary judgment is an appropriate procedure when a court reviews an agency's administrative record" in the face of a challenge to a final agency action) (citations omitted).

## B.  Review of Agency Action under the APA

An agency action challenged pursuant to the APA "must be set aside if the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or if the action failed to meet statutory, procedural, or constitutional requirements." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 414 (1971) (quoting 5 U.S.C. § 706(2)) (internal quotation

marks omitted).  "The scope of review under the 'arbitrary and capricious standard' is narrow

and a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n

v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983).  "To survive review under [this

standard], an agency must 'examine the relevant data and articulate a satisfactory explanation for

its action including a rational connection between the facts found and the choice made.'"  Tripoli

Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 437 F.3d 75, 81 (D.C.

Cir. 2006) (citations omitted).  That is, "an agency action must be supported by reasoned

decisionmaking," id. at 77 (quoting Allentown Mack Sales & Serv. v. NLRB, 522 U.S. 359, 374

(1998)) (internal quotation marks omitted), and "[w]here the agency has failed to provide a

reasoned explanation, or where the record belies the agency's conclusion, [a court] must undo its

action," Petroleum Commc'ns v. FCC, 22 F.3d 1164, 1172 (D.C. Cir. 1994) (citation omitted).

See also Bowman Transp. v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974) (stating that

courts "may not supply a reasoned basis for the agency's action that the agency itself has not

given," but that they "will uphold a decision of less than ideal clarity if the agency's path may

reasonably be discerned") (citations omitted).

The party challenging agency action has the burden to prove that the action was arbitrary,

capricious, or otherwise unlawful.  Hawai'i Orchid Growers Ass'n v. Dep't of Agric., 436 F.

Supp. 2d 45, 49 (D.D.C. 2006) (citation omitted).  Moreover, because the Department has

"special expertise" in determining whether petitioning tribes are entitled to tribal recognition,

James, 824 F.2d at 1138, the Court must be particularly deferential to its determinations.  Bldg.

& Const. Trades Dep't, AFL-CIO v. Brock, 838 F.2d 1258, 1266 (D.C. Cir. 1988) (observing

that "[w]hen called upon to review technical determinations on matters to which the agency lays

claim to special expertise, the courts are at their most deferential") (citation omitted).  Thus, "absent a showing of arbitrary action, a court must assume an agency has exercised its discretion appropriately."  Hawai'i Orchid Growers Ass'n, 436 F. Supp. 2d at 50 (citing Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976)).  Even in matters of agency expertise, however, "[t]he degree of deference a court should pay an agency's construction is . . . affected by the thoroughness, validity, and consistency of [the] agency's reasoning."  Hornbeck Offshore Transp. v. U.S. Coast Guard, 424 F. Supp. 2d 37, 46 (D.D.C. 2006) (quoting FEC v. Democratic Senatorial Campaign Comm., 454 U.S. 27, 37 (1981)) (internal quotation marks omitted).  And when an agency's explanation for its actions "lacks any coherence," the Court "owe[s] no deference to [the agency's] purported expertise because [it] cannot discern it."  Tripoli Rocketry Ass'n, 437 F.3d at 77.  Finally, "[w]hen an agency provides a statement of reasons insufficient to permit a court to discern its rationale, or states no reasons at all, the usual remedy is a 'remand to the agency for additional investigation or explanation.'"  Tourus Records v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

### III. Analysis

Both the Equal Protection Clause and the APA prohibit agencies from treating similarly situated petitioners differently without providing a sufficiently reasoned justification for the disparate treatment.  See, e.g., Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1102-03 (D.C. Cir. 2005) ("To prevail on [its] equal protection claim, [a plaintiff must] demonstrate that [it] was treated differently than similarly situated [parties] and that the [agency's] explanation does not satisfy the relevant level of scrutiny.") (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)); County of Los Angeles v. Shalala, 192 F.3d 1005, 1022 (D.C. Cir. 1999) (holding that "an agency action

15

is arbitrary when the agency offers insufficient reasons for treating similar situations differently")

(internal quotation marks and citations omitted); Freeman Eng'g Assocs. v. FCC, 103 F.3d 169,

178 (D.C. Cir. 1997) (observing that "an agency may not treat like cases differently") (internal

quotation marks and citation omitted); Petroleum Commc'ns, 22 F.3d at 1172 (stating that the

District of Columbia Circuit has "long held that an agency must provide [an] adequate

explanation before it treats similarly situated parties differently") (citations omitted); Local 777,

Democratic Union Org. Comm. v. NLRB, 603 F.2d 862, 872 (D.C. Cir. 1978) (stating that an

agency "cannot, despite its broad discretion, arbitrarily treat similar situations dissimilarly")

(citations omitted).  Here, Muwekma argues (1) that it is similarly situated to Ione and Lower

Lake, as all three entities are "Central California tribes previously recognized at least as late as

1927" who did not appear on the 1979 list of federally recognized tribes despite "never [having]

been terminated by Congress [or] by any official action of [the Department]," Pl.'s Opp. at 5; see

also Pl.'s Mem. at 23-27; Answer at 22-23; (2) that it was treated differently than Ione and Lower

Lake, in that it was required to petition for federal tribal acknowledgment under Part 83, while

Ione and Lower Lake were accorded tribal recognition outside of the Part 83 process, see Pl.'s

Mem. at 23; Answer at 30; and (3) that neither the administrative record nor the Final

Determination addresses this purportedly disparate treatment or seeks to distinguish Muwekma

from Ione and Lower Lake, Pl.'s Opp. at 10, even though Muwekma repeatedly requested that

the Department reaffirm its tribal status through administrative correction, as it had done with

Ione and Lower Lake, Pl.'s Mem. at 11; Compl. ¶ 27; Answer at 23.  Thus, Muwekma contends

that the Department violated the Equal Protection Clause and the APA in "applying to [it] a

greater evidentiary burden [than Ione and Lower Lake] even though [it] was similarly situated [to those tribes], and by failing to explain the disparate treatment."  Pl.'s Mem. at 22.

The defendants contest Muwekma's argument on several fronts.  First, they assert that the Department "had a rational basis for requiring [Muwekma] to proceed through the [Part 83] federal acknowledgment process," Defs.' Mem. at 39, because "[t]he federal acknowledgment regulations are specifically written to address and take into account demonstrations of past federal acknowledgment," id. at 39-40.  Second, the defendants argue that the Department has not "treated like cases differently" because "[b]y their very nature, . . . federal acknowledgment decisions require highly fact-specific determinations."  Defs.' Reply at 17.  Finally, they claim that Muwekma was not treated differently than similarly situated petitioners, because "groups demonstrating or alleging characteristics similar to [Muwekma] are regularly required to proceed through the federal acknowledgment process," and therefore requiring Muwekma to complete a Part 83 petition "is undoubtedly in keeping with agency precedent.  Id. at 40; see also Defs.' Reply at 18 (stating that "[i]n reaching [the Final Determination regarding Muwekma's tribal status], [the d]efendants clearly followed established procedures") (citations omitted).

For the following reasons, the Court concludes that the defendants have not articulated a sufficient basis for the Department's disparate treatment of Muwekma and the Ione and Lower Lake tribes.  First, the fact that "[t]he federal acknowledgment regulations are specifically written to address and take into account demonstrations of past federal acknowledgment," Defs.' Mem. at 39-40; see also 25 C.F.R. § 83.8, provides an avenue, rather than a justification, for the Department's decision to require Muwekma to complete a Part 83 petition.  It is immaterial to Muwekma's equal protection claim whether the Department can direct tribes who are able to

demonstrate previous federal acknowledgment to proceed under Part 83, as the Part 83 procedure clearly provides one method by which the Department may confer federal recognition upon a petitioning tribe, regardless whether that tribe had previously been recognized.  See 25 C.F.R. § 83.8; see also Burt Lake Band of Ottawa and Chippewa Indians v. Norton, 217 F. Supp. 2d 76, 79 (D.D.C. 2002) (stating that "[t]he fact that [the Department's] regulations include separate fast tracking provisions for groups claiming prior federal recognition makes [it] all the more evident that federal recognition does not allow an entity to completely bypass [the Department's] recognition process") (citation omitted).  Instead, the relevant inquiry here is whether the Department has provided a rational basis for requiring Muwekma to adhere to the Part 83 procedure while exempting other tribes that are purportedly similarly situated.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 448 (1985) (holding that city ordinance was invalid where the city had not provided a rational basis for requiring special-use permit from one group home but not from other facilities).  Simply stating that the Department is empowered to require a Part 83 petition from Muwekma, without addressing why Muwekma was treated differently than Ione or Lower Lake, does not provide such a basis.  See Settles, 429 F.3d at 1102-03; County of Los Angeles, 192 F.3d at 1022.

If the Department were compelled to require tribes seeking federal recognition to complete petitions under Part 83—that is, if it had no discretion to exempt certain tribes from the Part 83 procedures—then its argument that "federal acknowledgment regulations specifically take into account demonstrations of previous acknowledgment," Defs.' Reply at 17, would carry far more weight in establishing that it had a rational basis for denying Muwekma's requests to proceed outside the Part 83 framework without explanation of, or reference to, the "depart[ures]

18

from agency precedent" in the cases of Ione and Lower Lake, id. at 18.  Undoubtedly, "[a]n

agency is required to follow its own regulations."  Babbitt, 117 F.3d at 1499.  Here, however, the

Secretary of the Interior is expressly empowered to "waive or make exceptions to [the

Department's regulations] in all cases where permitted by law," if the Secretary makes a finding

that "such waiver or exception is in the best interest of the Indians."  25 C.F.R. § 1.2; see also

Babbitt, 117 F.3d at 1499 (referencing 25 C.F.R. § 1.2 as a method by which the Part 83

recognition procedures may be waived).  And the Supreme Court has "frequently reiterated" that

when a matter is committed to the discretion of an agency, "[the] agency must cogently explain

why it has exercised its discretion in a given manner."  State Farm, 463 U.S. at 48-49 (citations

omitted).  Thus, if the Department is "permitted by law" to waive or except the Part 83 tribal

acknowledgment procedures when it is "in the best interest of the Indians," 25 C.F.R. § 1.2, and

if it appears that it has waived the acknowledgment procedures in other, ostensibly similar

instances, then it is incumbent upon the Department to explain to Muwekma "why it has

exercised its discretion in a given manner" in this instance, State Farm, 463 U.S. at 48-49

(citations omitted).  This it has not done.

Indeed, the Department does not, and, in light of 25 C.F.R. § 1.2, effectively cannot,

claim that it lacks discretion to pull tribes out of the lengthy Part 83 petition process and allow

them to be considered for federal recognition without having to submit thousands of pages of

documentary material.  While the defendants repeatedly state that the Part 83 criteria are a

"mandatory" aspect of the federal acknowledgment regulations, nowhere in the papers submitted

to this Court do they assert that the Department has no authority to exempt a petitioning tribe

from the regulatory procedure entirely and determine by some other, less burdensome method

that the tribe has demonstrated the necessary historical continuity.  See, e.g., Defs.' Mem. at 32

(arguing that "[b]ecause [Muwekma] could not meet the mandatory criteria set out in the

resulations, the [F]inal [D]etermination was lawful"); Defs.' Reply at 15 (stating that "the federal

acknowledgment regulations set out seven mandatory criteria that must be established").  That is,

the defendants contend that "[t]he federal acknowledgment regulations are a valid exercise of the

Department's authority over Indian affairs," Defs.' Mem. at 32 (emphasis added), but take

seeming pains to avoid stating that the regulations must be followed, and detailed findings made

in accordance with the Part 83 criteria, in every instance before the Department can confer

federal recognition upon a petitioning tribe, see, e.g. Defs.' Reply at 12 (stating that "even a once

recognized group must be able to demonstrate that it has maintained tribal relations through the

present day").

     In their cross-motion for summary judgment, the defendants reference a Tenth Circuit

case which "recently suggested . . . that the Department has no authority to acknowledge tribal

status outside the process in its acknowledgment regulations."  Defs.' Mem. at 40 (citing Norton,

389 F.3d at 1087).  The defendants themselves, however, do not claim that the Department is

powerless to "clarif[y]" or "reaffirm[]" tribal status without recourse to the Part 83 regulatory

process, Answer at 22, 23, nor do they contend that the extra-regulatory recognition of Ione,

Lower Lake, and other tribes was somehow ultra vires or otherwise a mistake that will not be

repeated in the future.  See Defs.' Reply at 18 (stating that "[t]o date, the Department has

required multiple petitioners for acknowledgment to proceed through the federal

acknowledgment process" and that "[Muwekma's] arguments are—at most—directed at showing

that the Assistant Secretary departed from agency precedent in making the decisions regarding

[Ione and Lower Lake]").  Moreover, as Muwekma observes, Pl.'s Opp. at 9 n.12, the Tenth

Circuit in <u>Norton</u> expressly notes that the Department may "properly waive application of [the

Part 83] procedures" under 25 C.F.R. § 1.2.  <u>Norton</u>, 389 F.3d at 1087 (citation omitted); <u>see also</u>

<u>Babbitt</u>, 117 F.3d at 1499 (referencing 25 C.F.R. § 1.2 as a method by which the Part 83

recognition procedures may be waived).[12]  Accordingly, in the absence of any affirmative

statement to the contrary, the Court concludes that the Department possessed the authority under

25 C.F.R. § 1.2 to allow Muwekma to bypass the Part 83 procedures, as it did for Ione and Lower

Lake.  It is therefore obligated to "cogently explain why it has exercised its discretion" to require

Muwekma to complete a Part 83 petition, <u>State Farm</u>, 463 U.S. at 48-49 (citations omitted),

despite the fact that "while [Muwekma's] petition for recognition was pending, the Department

reaffirmed the status of [Ione] and [Lower Lake] outside the [Part 83] procedures," Answer at 30.

Nevertheless, according to the defendants, the Department has not "treated like cases

differently" because "[b]y their very nature, . . . federal acknowledgment decisions require highly

fact-specific determinations."  Defs.' Reply at 17.   The defendants argue that because "the full

body of administrative records regarding [Ione and Lower Lake] is not before the Court,"

Muwekma cannot establish a violation of the Equal Protection Clause or the APA simply by

---

[12]  In addition, the Department's representation to Muwekma that it lacked the authority to confer federal recognition on the tribe outside of the Part 83 acknowledgment process, <u>see</u> Answer at 23 (admitting that "[n]otwithstanding the Department actions to the contrary with respect to the Ione Band and Lower Lake, [Department] staff repeatedly advised [Muwekma] that the Assistant Secretary [of Indian Affairs] lacked authority to administratively reaffirm tribal status"), appears from the Department's own admission to be patently false, unless (1) the officers who allowed Ione and Lower Lake to bypass formal review under Part 83 were acting beyond the limits of the Department's power, which is difficult to credit, given 25 C.F.R. § 1.2, or (2) the Department has some principled basis for distinguishing Muwekma from Ione and Lower Lake such that it was compelled to direct Muwekma to proceed through Part 83, but was free to disregard the regulatory framework when dealing with the other two tribes.  Yet, as already noted, the Department appears to avoid stating in its submissions to the Court that it has no power to allow tribal petitioners to bypass the Part 83 procedures, and it offers no express justification for treating Muwekma differently from Ione, Lower Lake, or any other tribal petitioner who has been exempted from making a formal petition under Part 83.

alleging that it has been treated differently than those tribes.[13]  Id.  It is certainly true that the

administrative records for Ione and Lower Lake are not before this Court.  What matters,

however, is whether the Department sufficiently justified in the administrative record for

Muwekma's tribal petition its decision to treat Muwekma differently from Ione and Lower Lake,

and a hand-waving reference to "highly fact-specific determinations" does not free the defendants

of this obligation.  Id.; see Tripoli Rocketry Ass'n, 437 F.3d at 83 ("It is well understood in

administrative law that the focal point for judicial review should be the administrative record

already in existence, not some new record completed initially in the reviewing court.") (internal

quotation marks and citation omitted).  As the District of Columbia Circuit stated in Phila. Gas

Works v. FERC, 989 F.2d 1246 (D.C. Cir. 1993), in finding that the Federal Energy Regulatory

Commission ("FERC") failed to explain its actions in sufficient detail:

> For FERC to utter the words 'unique facts and circumstances'[,] . . . as a wand waved
> over an undifferentiated porridge of facts, leaves regulated parties and a reviewing
> court completely in the dark as to the core of FERC's reasoning and its relationship

---

[13]  The defendants, albeit obliquely, do provide an asserted basis for distinguishing Muwekma and Lower Lake in their reply to Muwekma's opposition to their cross-motion for summary judgment, stating:

> In any event, the administrative record[] itself[] points out differences between the Lower Lake Rancheria and [the] [p]laintiff.  The [Advisory Council on California Indian Policy's] Final Reports and Recommendations found that the Lower Lake Rancheria was a federally recognized tribe as evidenced by the previous acquisition of land in trust for the Lower Lake Rancheria's benefit, as well as the tribe's participation in an [Indian Reorganization Act] election. . . .  The Report does not make a similar recommendation regarding [the] [p]laintiff.

Defs.' Reply at 17 n.17.  However, this explanation fails to serve as a sufficient justification for the Department's allegedly differential treatment of Muwekma for several reasons.  First, and most obviously, this explanation pertains only to a difference between Muwekma and one of the tribes with whom it is claiming to be similarly situated.  The defendants do not assert any "highly fact-specific determination[]" that would explain why Muwekma is not similarly situated to Ione in such a way as to require a reasoned explanation of the Department's disparate actions.  Second, the Department does not contend, here or in the administrative record, that it required Muwekma and not Lower Lake to undergo the Part 83 procedure because the latter, unlike the former, had received land in trust and had participated in an election.  See Bowman Transp., 419 U.S. at 285; Tripoli Rocketry Ass'n, 437 F.3d at 83; Petroleum Commc'ns, 22 F.3d at 1172.

22

to past precedent. . . .   Without more explanation, it is impossible to say whether FERC has acted reasonably or capriciously.

989 F.2d at 1251.  Similarly, the defendants here have cited nothing to explain the basis for the Department's decision to treat Muwekma differently from Ione and Lower Lake.  Cf. Wyandotte Nation v. Nat'l Indian Gaming Comm., 437 F. Supp. 2d 1193, *14 (D. Kan. 2006) (finding that an agency's determination "was not founded on a reasoned evaluation of the relevant factors" where it "required [the plaintiff] to meet criteria that it [had] not required in other cases").[14]

"The basis for an administrative decision . . . must be clear enough to permit effective judicial review.  It will not do for a court to be compelled to guess at the theory underlying the agency's action."  Int'l Longshoremen's Ass'n v. Nat'l Mediation Bd., 870 F.2d 733, 735-36 (D.C. Cir. 1989) (quoting SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947)) (internal quotation marks omitted).  Here, the administrative record contains no indication why the Department would refuse to consider Muwekma's requests for administrative correction while allowing Ione and Lower Lake to proceed outside the Part 83 regulatory process.  See Bowman

---

[14]  The defendants argue that Wyandotte Nation is inapposite because the Department in this case "has not required [Muwekma] to satisfy criteria not required of either the Lower Lake Rancheria or the Ione Band of Miwok; namely, the continuity of tribal relations."  Defs.' Second Resp. at 1.  However, Muwekma does not allege that Ione and Lower Lake were not required to demonstrate continuity of tribal relations.  Rather, the Tribe claims, and the Department does not dispute, that it was subjected to a "greater evidentiary burden" than Ione and Lower Lake when it was forced to seek tribal recognition through the cumbersome and detailed Part 83 procedures rather than through an alternative administrative route.  Pl.'s Mem. at 23.  Indeed, it is Muwekma's central contention that it would have been able to demonstrate the requisite tribal continuity had its request for recognition been evaluated under the standard used for Ione and Lower Lake.  See, e.g., Pl.'s Opp. at 10 (asserting that "Muwekma has provided a much more thorough record of its right to be recognized than Ione or Lower Lake").  It may be that the standard imposed upon Ione and Lower Lake in their requests for recognition was no less stringent or exacting than the "lengthy and thorough" process of evaluation followed by the Department in Muwekma's Part 83 petition.  Pl.'s Mem., Ex. 46.  If so, however, it is not reflected in the administrative record in this case, nor in the pleadings before the Court.  See Defs.' Reply at 17 (noting that "the full body of administrative records regarding [Ione and Lower Lake] is not before the Court").  Thus, on the strength of the factual record before it, the Court is not persuaded by the defendants' argument that the Department "has not required [Muwekma] to satisfy criteria not required of [Lower Lake] or [Ione]," Defs.' Second Resp. at 1, especially in light of the defendants' failure to "cogently explain why it has exercised its discretion in a given manner," State Farm, 463 U.S. at 48-49 (citations omitted).

Transp., 419 U.S. at 285 (stating that courts "may not supply a reasoned basis for [an] agency's action that the agency itself has not given").  More importantly, the Department's defense for this refusal in its submissions to the Court—that groups such as Muwekma have been "regularly [and] repeatedly required" to submit Part 83 petitions and that its treatment of Muwekma "clearly followed established procedures," Defs.' Reply at 18—is not enough to refute Muwekma's claim that the Department has treated it differently from similarly situated tribal petitioners without sufficient justification.  Petroleum Commc'ns, 22 F.3d at 1172 (stating that the District of Columbia Circuit has "long held that an agency must provide adequate explanation before it treats similarly situated parties differently") (citations omitted) (emphasis added).

The defendants' reliance on Hoyl v. Babbitt, 129 F.3d 1377 (10th Cir. 1997), and Puerto Rican Cement Co. v. EPA, 889 F.2d 292 (1st Cir. 1989), for the contrary proposition is unavailing.  See Defs.' Reply at 18-19.  In Hoyl, the Tenth Circuit held that the Department "did not depart from well established agency precedent when it refused to grant [the] [p]laintiff's request" for a suspension of its federal coal lease while the Department prepared an Environmental Impact Statement ("EIS"), because caselaw demonstrated that the Department "issued the suspensions in the exercise of its discretion and not as a matter of right."  129 F.3d at 1384 (citations omitted).  Similarly, the Court in Puerto Rican Cement Co., in finding that the Environmental Protection Agency had interpreted its regulations in a sufficiently consistent manner, held that

> one inconsistent precedent does not entitle an agency litigant to demand that the agency ignore prior and subsequent holdings which have followed a uniform approach. . . .  [The] [p]laintiff must do more than point to a single potentially deviant precedent before the reviewing court can find such inconsistency in agency action as to constitute arbitrary treatment of litigants.

889 F.2d at 299.  The present case is easily distinguishable from both Hoyl and Puerto Rican Cement Co.

First, unlike the plaintiff in Hoyl, Muwekma does not dispute that granting exemptions from the Part 83 tribal acknowledgment procedures is a matter of the Department's discretion. See 129 F.3d at 1384 (noting the plaintiff's argument that the Department "departed from well-established agency precedent by failing to grant a suspension during the preparation of the EIS"); see also 25 C.F.R. § 1.2.  In fact, Muwekma "embraces" the Department's exercise of its discretion to allow Ione and Lower Lake to bypass the Part 83 procedures, noting that "[t]his was [the] correct action, because [Ione and Lower Lake], like Muwekma, should have been on the list of federally recognized tribes from the outset."  Pl.'s Opp. at 11.  That is, in stark contrast to the facts of Hoyl, the Department here claims that it has "clearly followed established procedures" with regard to Muwekma because "groups demonstrating or alleging characteristics similar to [Muwekma] are regularly required to proceed through the federal acknowledgment process," Defs.' Reply at 17-18, while Muwekma argues simply that the Department retains the discretion to waive the Part 83 procedures and provided an insufficient explanation why it did not do so in this case, given its exercise of discretion for Ione and Lower Lake, Pl.'s Opp. at 9-10; see also id. at 12 (contending that the Department's "argument that it was required to adhere to its regulations, without regard to the treatment afforded Lower Lake and Ione, has no merit").

Second, it is not fair to say that the procedure by which the Department refused to recognize Muwekma adheres to "prior and subsequent holdings which have followed a uniform approach" or that Muwekma has merely "point[ed] to a single potentially deviant precedent" in claiming disparate treatment.   Defs.' Reply at 19 (quoting P.R. Cement Co., 889 F.2d at 299).

While it may be the case that the Department requires many, or even most, tribal petitioners to satisfy the Part 83 criteria through detailed findings and documentation, see Defs.' Reply at 18, it apparently retains the ability, especially given the clear regulatory provision for waiver of Department regulations when it is "in the best interest of the Indians," 25 C.F.R. § 1.2, to exempt petitioners at will from the regulatory process, as it did with Ione in 1994 and Lower Lake in 2001.  If this is so, the Department cannot take refuge in a blanket justification that its treatment of Muwekma is "in keeping with agency precedent."  Defs.' Mem. at 40.  See State Farm, 463 U.S. at 48-49 (holding that "an agency must cogently explain why it has exercised its discretion in a given manner") (citations omitted); County of Los Angeles, 192 F.3d at 1022 (holding that "an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently").

Thus, the Department here "has never provided a clear and coherent explanation" for its disparate treatment of Muwekma when compared with Ione and Lower Lake, nor has it ever, in the administrative record or in the papers before this Court, "articulated the standards that guided" its decision to require Muwekma to submit a petition and documentation under Part 83 while allowing other tribes to bypass the formal tribal recognition procedure altogether.  Tripoli Rocketry Ass'n, 437 F.3d at 81.  In short, the Department "has provided virtually nothing to allow the [C]ourt to determine whether its judgment [that Muwekma's petition merited more stringent review than those of Ione and Lower Lake] reflects reasoned decisionmaking."  Id.  It is therefore necessary to remand this case to allow the Department to supplement the administrative record in this regard.  This result is called for because "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course,

except in rare circumstances, is to remand to the agency for additional investigation or

explanation." Fla. Power & Light Co., 470 U.S. at 744 (internal quotation marks and citations

omitted) (emphasis added).

Muwekma argues that rather than remanding these proceedings to the Department, the

Court should "compel agency action and resolve the underlying issues in this case" by ordering

the Department to place it on the list of federally recognized tribes. Pl.'s Opp. at 18 (internal

quotation marks omitted). Specifically, Muwekma contends that (1) remand would be redundant,

as the Department has already had an opportunity to address the allegedly disparate treatment at

the administrative level following Muwekma I, Pl.'s Opp. at 13-14; (2) remand would be futile,

because the Department could arrive at "only one conclusion [that] would be supportable," Pl.'s

Opp. at 14 (quoting Fogg v. Ashcroft, 254 F.3d 103, 111-12 (D.C. Cir. 2001)) (internal quotation

marks omitted); and (3) remand would lead to inappropriate delay, in light of the Department's

previous failure to timely consider the Tribe's petition for acknowledgment, Pl.'s Opp. at 15-18;

see also Muwekma I, 133 F. Supp. 2d at 41. While the Court is sympathetic to Muwekma's

concerns, it nevertheless concludes for the following reasons that remand is the appropriate

remedy at this point, considering the need to supplement the administrative record on a relatively

narrow question of fact to address the basis for the Department's decisionmaking.

In opposing remand, Muwekma first argues that "[d]irect judicial action is proper when

an agency 'again fails' to satisfy the [C]ourt after an initial remand." Pl.'s Opp. at 13 (citation

omitted); see also Greyhound Corp. v. ICC, 668 F.2d 1354, 1364 (D.C. Cir. 1981) (stating

because the agency "had ample time and opportunity to provide a reasoned explanation of [its]

decision . . . [the Court found] no useful purpose to be served by allowing [it] another shot at the

target") (citation omitted).  Muwekma asserts that because the Department stated in <u>Muwekma I</u>

that issues of alleged disparate treatment "should be made in the first instance by the Department

[at the administrative level]," <u>Muwekma I</u>, 133 F. Supp. 2d at 38, the remand of that case for the

timely consideration of its Part 83 petition served as the Department's opportunity to explain why

it was choosing to treat Muwekma differently than Ione and Lower Lake.  Pl.'s Opp. at 13-14.

The <u>Muwekma I</u> Court, however, simply stated that "other factors not previously considered by

the defendants <u>may</u> weigh in [the Department's] consideration on remand."  <u>Muwekma I</u>, 133 F.

Supp. 2d at 38 (internal quotation marks omitted) (emphasis added).  While the "other factors"

referenced by that Court surely included, <u>inter</u> <u>alia</u>, Muwekma's assertion "that [the Department]

has in other cases recognized a tribe outside of the procedures set forth in [Part 83]," <u>id.</u> at 37, the

<u>Muwekma I</u> Court did not direct the Department upon remand to explain its refusal to allow

Muwekma to bypass the Part 83 procedures.  Rather, the Court permitted the Department to

consider the expedited recognition of other tribes when weighing Muwekma's petition for

recognition, <u>id.</u> at 38, and ordered it to "submit to the [C]ourt . . . a proposed schedule for

resolving the plaintiff's petition" in a timely manner, given the Department's "unreasonable

delay," <u>id.</u> at 41.  Thus, the Department has not yet been specifically directed to "articulate[] the

standards that guided its analysis" of Muwekma's request to be recognized outside of Part 83,

<u>Tripoli Rocketry Ass'n</u>, 437 F.3d at 81, and remand in these circumstances will not be redundant.

Muwekma also argues that remand would be futile because the Department could arrive

at "only one conclusion [that] would be supportable."  Pl.'s Opp. at 14 (quoting <u>Fogg v.</u>

<u>Ashcroft</u>, 254 F.3d at 111) (internal quotation marks omitted).  It further contends that if the

Court rules in its favor on any of its other substantive legal claims, <u>see</u> <u>supra</u> n. 11, then "remand

would be an empty exercise which would serve no purpose other than to delay the inevitable—a

return of [Muwekma] to the list of recognized tribes." Pl.'s Opp. at 15.  Without remanding this

case for additional information regarding Muwekma's equal protection and APA claims,

however, the Court "cannot evaluate the challenged agency action on the basis of the record

before it." Fla. Power & Light Co., 470 U.S. at 744.  Because these claims are potentially

dispositive, it is in the interests of judicial economy for the Court to direct the Department to

supplement the administrative record in this regard.

Finally, Muwekma asserts that remand is inappropriate because the Department "has

frustrated and delayed matters" such that it could not be counted upon to proceed forward on its

own accord "in anything remotely resembling a timely manner." Pl.'s Opp. at 15 (internal

quotation marks and citations omitted).  The Tribe compares this case to Greene v. Babbitt, 943

F. Supp. 1278 (W.D. Wash. 1996), which held that "when agency delays or violations of

procedural requirements are so extreme that the [C]ourt has no confidence in the agency's ability

to decide the matter expeditiously and fairly, it is not obligated to remand," but instead "may put

an end to the matter by using its equitable powers to fashion an appropriate remedy." Pl.'s Opp.

at 16 (quoting Greene, 943 F. Supp. at 1288) (internal quotation marks omitted).  The Greene

Court concluded that the Departmental proceedings there had "been marred by both lengthy

delays and a pattern of serious due process violations." Greene, 943 F. Supp. at 1288.  Here, the

Muwekma I Court concluded that the Department's "delay in processing [Muwekma's] petition

[was] unjustifiable and without good reason," Muwekma I, 133 F. Supp. 2d at 41, and further

found that the Department attempted to evade providing a date for the review of Muwekma's

petition in a manner that was "erroneous [and] glaringly disingenuous," Muwekma II, 133 F.

Supp. 2d at 49-50.  However, while the defendants have certainly shown a shameful lack of

regard for Muwekma's interests in seeking a timely resolution of the merits of its claims, the

Court cannot say that the Department's dilatory behavior is "so extreme that [it] has no

confidence in the [Department's] ability to decide the matter expeditiously and fairly."  Greene,

943 F. Supp. at 1287.  Nevertheless, the Court is mindful of the delaying tactics previously

exhibited by the defendants, and will retain jurisdiction over this matter in order to ensure,

"within a reasonable time," that the Department "proceed[s] to conclude [the] matter presented to

it" upon remand.  5 U.S.C. § 555(b) (2000).  Should the Department unreasonably delay

supplementing the administrative record in the manner that the Court directs, the Court will not

hesitate to compel appropriate agency action.  See 5 U.S.C. § 706(1) (2000) (granting the

reviewing court authority to "compel agency action unlawfully withheld or unreasonably

delayed").

        "[W]hen there is a contemporaneous explanation of the [challenged] agency decision, the

validity of that action must stand and fall on the propriety of that finding. . . .  If that finding is

not sustainable on the administrative record made, then the [agency's] decision must be vacated,

and the matter remanded to [it] for further consideration."  Vt. Yankee, 435 U.S. at 549 (quoting

Camp, 411 U.S. at 143) (internal quotation marks and other citation omitted).  Here, however,

there is no contemporaneous explanation of the Department's decision to treat Muwekma

differently from Ione and Lower Lake; indeed, it is the lack of a reasoned explanation in this

regard that Muwekma is challenging under the Equal Protection Clause and the APA.  See, e.g.,

Pl.'s Opp. at 9-10.  Accordingly, the appropriate remedy at this juncture is not to vacate the

Department's detailed and lengthy findings concerning Muwekma's ostensible failure to satisfy

three of the modified Part 83 criteria, the merits of which this Court has not yet addressed, but rather to remand the case, without prejudice to either party, specifically for the Department to supplement the administrative record so that the Court may fully evaluate Muwekma's disparate treatment claims.[15]  See Tripoli Rocketry Ass'n, 437 F.3d at 81 (remanding case where the agency "[had] never articulated the standards that guided its analysis"); Beach Commc'ns v. FCC, 959 F.2d 975, 987 (D.C. Cir. 1992) (remanding case where the Circuit concluded that it "need[ed] more evidence to enable it to understand the issues clearly" and "require[d] additional legislative facts") (internal quotation marks omitted).

Upon remand, the Department must provide a detailed explanation of the reasons for its refusal to waive the Part 83 procedures when evaluating Muwekma's request for federal tribal recognition, particularly in light of its willingness to "clarif[y] the status of [Ione] . . . [and] reaffirm[] the status of [Lower Lake] without requiring [them] to submit . . . petition[s] under . . . Part 83."  Answer at 23.  Such an explanation may not rely on the fact that a "lengthy and thorough" evaluation of Muwekma's petition, Pl.'s Mem., Ex. 46, led the Department to conclude that Muwekma failed to satisfy three of the modified Part 83 criteria, see 66 Fed. Reg.

---

[15]  The Court's determination that this case must be remanded so that the defendants may supplement the administrative record in no way contradicts the Court's previous Order granting the defendants' Motion for Protective Order Against Plaintiff's Discovery Requests.  See Dkt. No. 33 (June 13, 2005 Order).  In that Order, the Court concluded that Muwekma was not entitled to factual discovery of matters outside of the administrative record, in part because it "[had] not presented any evidence that support[ed] [its] claim that [it is] similarly situated to other tribes, or that [it was] treated differently."  Id. at 6.  However, not only has Muwekma now adduced facts to show that the Department has failed to adequately explain its differential treatment of tribal petitioners that appear to be similarly situated, see Pl.'s Mem. at 23-28, but the Department does not dispute that Muwekma was required to undergo a more strenuous process in seeking tribal recognition than other tribes evaluated outside of the Part 83 procedures, nor does it offer a reason for exercising its discretion in the manner it did, see State Farm, 463 U.S. at 48-49.  Moreover, the Court is not permitting Muwekma to gather extra-record evidence regarding the alleged disparate treatment, see Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989), but merely directing the Department to "provide[] a statement of reasons []sufficient to permit [the] [C]ourt to discern its rationale," Tourus Records, 259 F.3d at 737.

40,712-14.  At issue for the purpose of this remand is not whether the Department correctly

evaluated Muwekma's completed petition under the Part 83 criteria, but whether it had a

sufficient basis to require Muwekma to proceed under the heightened evidentiary burden of the

Part 83 procedures in the first place, given Muwekma's alleged similarity to Ione and Lower

Lake.  In addition, the Department shall express its position regarding whether it is permitted,

under 25 C.F.R. § 1.2 or otherwise, to waive or make exceptions to the Part 83 acknowledgment

procedures, and whether this waiver or exception imposes a lesser evidentiary burden on

petitioning tribes than the completion of a Part 83 petition.

## IV.  Conclusion

"When an agency provides a statement of reasons insufficient to permit a court to discern

its rationale, or states no reasons at all, the usual remedy is a 'remand to the agency for additional

investigation and explanation.'"  Tourus Records, 259 F.3d at 737 (quoting Fla. Power & Light

Co., 470 U.S. at 744).  Here, the Court is unable to discern the Department's rationale for

requiring Muwekma to proceed through the Part 83 tribal acknowledgment procedures while

allowing other tribes that appear to be similarly situated to bypass the procedures altogether, an

issue which is dispositive of Muwekma's Equal Protection Act and APA claims.  Accordingly, it

will remand this matter to the Department for the limited purpose of supplementing the

administrative record in a manner consistent with this Opinion.  During this time, the case shall

be administratively closed.  The Court shall retain jurisdiction over this matter and shall require

the Department to complete its evaluation and submit a supplement to the administrative record

by November 27, 2006.  In light of the Department's past delays, and given the narrow purpose

for which this matter is being remanded, the Court will look extremely skeptically on motions for

extensions of time.  Such motions will not be granted absent extraordinary circumstances.  Once

the Department has filed its supplemental administrative record, the case will be automatically

reopened and a briefing schedule will be set for the expeditious refiling of dispositive motions.

     **SO ORDERED** this 21st day of September, 2006.[16]


              REGGIE B. WALTON
              United States District Judge

---

[16] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.