# SAR EXHIBIT 87



## United States Department of the Interior



OFFICE OF THE SECRETARY
Washington, D.C. 20240

MAR 22 1994

The Honorable Nicholas Villa, Jr.
Chief, Ione Band of Miwok
P.O. Box 1152
Ione, California  95640

Dear Mr. Villa,

I am writing regarding our meeting on October 28, 1993 and subsequent discussions with Congressman Doolittle. In that meeting I agreed to clarify the United States' political relationship of the Ione Band of Miwok, as well as Mr. Louis Bruce's 1972 letter regarding the tribe's political status and its historic land base.

Upon review of the matter, I am now reaffirming the portion of Commissioner Bruce's letter which reads:

> The Secretary also recognizes that obtaining a tribal community land base for the Ione Band is a part of his policy of Indian self-determination and cultural identification. *** Federal recognition was evidently extended to the Ione Band of Indians at the time that the Ione land purchase was contemplated. *** As the Commissioner of Indian Affairs, I therefore, hereby agree to accept by relinquishment of title or gift the following described parcel of land to be held in trust for the Ione Band of Miwok Indians. (See Bruce letter attached)

As Assistant Secretary of Indian Affairs I hereby agree to accept the parcel of land designated in the Bruce letter to be held in trust as territory of the Tribe. As I stated during the October meeting, the Tribe will henceforth be included on the list of "Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs," last published in the Federal Register on October 21, 1993.

I am hereby directing the Bureau of Indian Affairs and specifically the Sacramento Area Office to deal with the tribe accordingly. The Bureau will maintain contact with the tribe to address the relevant details. I extend my personal congratulations and look forward to working with you and your people.

Ada E. Deer

Ada E. Deer
Assistant Secretary - Indian Affairs

# SAR EXHIBIT 88



# United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C.  20240

DEC 29 [2000]

Memorandum

To:          Regional Director, Alaska Region
             Regional Director, Pacific Region

Through:     Deputy Commissioner of Indian Affairs

From:        Assistant Secretary - Indian Affairs

Subject:     Reaffirmation of Federal Recognition of Indian Tribes

I have received information from you that the King Salmon Tribe, the Shoonaq' Tribe of Kodiak, and the Lower Lake Rancheria have been officially overlooked for many years by the Bureau of Indian Affairs ("Bureau" or "BIA") even though their government-to-government relationship with the United States was never terminated. I have been requested to review these cases and take action, if warranted.

At one time, each of these groups was recognized by the Bureau. However, for reasons not clearly understood, they were simply ignored as the BIA went through fundamental organization and philosophical changes following landmark legislation such as the 1934 Indian Reorganization Act and other federal policy shifts. It is an unfortunate part of the Bureau's legacy that I spoke of during our reconciliation event several months ago, and I am pleased today, and on behalf of the Department of the Interior and the BIA, to correct this egregious oversight.

The Indian tribes mentioned above should not be required to go through the Federal acknowledgment process outlined in the Federal Register at 25 CFR. Part 83 ("acknowledgment regulation") because their government-to-government relationship continued. The acknowledgment regulation does not apply to Indian tribes whose government-to-government relationship was never severed. Rather, the acknowledgment regulation provides a process for tribes to seek recognition when the tribe has yet to establish such a government-to-government relationship, when a previously existing government-to-government relationship has lapsed, or when the government-to-government relationship was terminated through an administrative process. Here, the Tribes were never administratively terminated nor were their relations with the United States broken. Instead, an administrative error by the Bureau of Indian Affairs occurred in the initial failure to place the tribes on the Federal Register list of entities recognized and eligible to receive services from the United States Bureau of Indian Affairs. The administrative oversight, having now been identified, must be corrected and the Tribes' rightful existence must now be reaffirmed.

With respect to the King Salmon Tribe, the Alaska Regional Director advises me that the King Salmon Tribe has provided documentation that supports its position that it has existed and maintained a continuous Indian community from historic times. In addition, these documents support my finding of a long-standing governmental relationship with the United States. In 1994, the Department re-established governmental relationships with 224 Alaska Native governments under similar circumstances. Documents supporting the King Salmon Tribe's request were forwarded by the Bristol Bay Native Association. The original village site of Old Savonoski was destroyed when a volcano, Mount Katmai, erupted and buried it. Members traveled downstream on the Naknek River from the original site and settled in King Salmon, New Savonoski, Naknek and South Naknek. Although scattered, the people of King Salmon did not abandon their traditional tribal identity. Ethnographic records confirm that the people of King Salmon today are descendants of the indigenous people from the King Salmon area.

The BIA's West Cental Alaska Field Office and the Alaska Regional Office support the Tribe's request that their status be reaffirmed and authorized to conduct a Secretarial election under provisions of the Indian Reorganization Act, 25 U.S.Code Section 476. The Acting Director, Office of Tribal Services, also recommends that Federal recognition of the King Salmon Tribe be reaffirmed.

With respect to the Shoonaq' Tribe of Kodiak, the Alaska Regional Director advises me that the Shoonaq' Tribe has provided documentation that supports its position that it has maintained a continuous political organization since European contact. In addition, these documents support my finding of a long-standing relationship with the United States. As with King Salmon, the Department's 1994 re-establishment of governmental relationships with 224 Alaska Native governments was under similar circumstances.

Members of the Shoonaq' Tribe are descendants of a consortium of Koniagmiut from Kodiak Island (known to the Russians as St. Paul or St. Paul's Harbor) who settled in the locale of the contemporary city of Kodiak. The Council of the Shoonaq' Tribe of Kodiak governs the historical Native community in and around the contemporary community of Kodiak, Alaska. No other tribe claims this territory or membership. The Tribe has entered into numerous federal contracts through which it provides the same federally funded services and benefits to its members as are provided by other federally recognized tribes in Alaska. Congress acknowledged Kodiak as a historic Native village possessing claims to aboriginal title in the Alaska Native Claims Settlement Act (ANCSA). Consequently, Kodiak was declared eligible and received land and other benefits under ANCSA.

In 1987, the Kodiak Tribal Council, upon learning that they were not included in the Federal Register listing of federally recognized Indian tribes, requested that the Secretary of the Interior correct the list. By letter dated August 12, 1987, they submitted arguments that they had been federally recognized prior to 1931 and they should have been included in the Secretary's published list. In an August 25, 1987, letter the Anchorage Agency Superintendent, after reviewing the matter, concurred with the Tribe's request and recommended that the Shoonaq'

Tribe be reaffirmed and added to the Federal Register listing. Today, the West Central Alaska Field Office and the Alaska Regional Office, as well as the Acting Director, Office of Tribal Services, recommend that the Shoonaq' Tribe of Kodiak be included on the list of federally recognized Indian tribes.

With respect to the Lower Lake Rancheria, the documentation shows that it should be treated differently than other California tribes that were terminated during the termination era. The California Indian tribes considered terminated during this era were those subject to the terms of Pub. L. 85-671, 72 Stat. 619, as amended by Pub. L. 88-419, 78 Stat. 390, commonly referred to as the Rancheria Act. The Rancheria Act specifically provided, in §10b, that when assets were accepted, the affected tribe was terminated. In contrast, the Lower Lake Rancheria lost its land pursuant to the Lower Lake Act, Pub. L. 84-443, 70 Stat. 58, as amended by Pub. L. 84-751, 70 Stat. 595, which sold its land for the purpose of establishing a local airport. This Act predated the Rancheria Act and did not contain a provision to cause the loss of an Indian's legal status as an Indian as a result of his (or her) acceptance of any of the assets of the Lower Lake Rancheria. Thus, the Lower Lake Act did not terminate the Lower Lake Rancheria.

The Lower Lake Rancheria's tribal status has been continuously maintained by the tribal members. The Lower Lake Rancheria successfully obtained funding from the Administration of Native Americans, U. S. Department of Health and Human Services, to strengthen their tribal government structure. Both the BIA's Agency Superintendent, Central California Agency, and the Regional Director, Pacific Region, as well as the Acting Director, Office of Tribal Services, recommend administrative reaffirmation of the status of the Lower Lake Rancheria.

Therefore, by action today, I am reaffirming formal recognition of the following Indian tribes:

King Salmon Tribe in Alaska;

Shoonaq' Tribe of Kodiak in Alaska; and

Lower Lake Rancheria in California

The Federal recognition of the Tribes and the trust relationship between the United States and the Indian Tribes are hereby reaffirmed, subject to further discussion and negotiation between the tribes and the BIA with respect to respective tribal membership lists, if necessary. All laws and rules of law of the United States of general application to Indians, Indian tribes, or Indian reservations which are not inconsistent with the 1934 Indian Reorganization Act, the Rancheria Act, or the 1971 Alaska Native Claims Settlement Act, as amended, shall apply to the respective Alaskan tribes and Lower Lake Rancheria, and their respective members. Each of the Tribes listed above is recognized as an independent tribal governmental entity, separate from any other nation, band, village, rancheria or Indian tribe.

By this memorandum, I am directing that the Bureau of Indian Affairs, specifically the Alaska Region, and Pacific Region officials deal with the respective tribes accordingly. Further, I direct that the Office of Tribal Services include the Tribes mentioned above in the "Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs," a

list published in the **Federal Register** most recently on March 13, 2000 (Vol. 65, No. 49), pp. 13298-13303, pursuant to Section 104 of the Act of November 2, 1994, Pub. L. 103-454, 108 Stat. 4791, 4792.

The Bureau of Indian Affairs will maintain contact with the respective tribes to address the relevant details in maintaining a government-to-government relationship in accordance with Executive Orders 13084 and 13175 as well as the Executive Memorandum of April 29, 1994, on Government-To-Government Relations with Native American Tribal Governments.

Please contact the Director, Office of Tribal Services, at (202) 208-3463, if you have any questions regarding this matter.

cc:    Office of the Special Trustee
       Office of American Indian Trust
       Director, Office of Indian Education Programs
       Director, Office of Trust Responsibility

<u>Department of the Interior</u>



## NEWS

### U.S. Department of the Interior

Office of the Secretary
For Immediate Release: September 22, 2004

Contact: Frank Quimby,
202-208-7291

## California Tribe Presents Flag to Interior for Bureau of Indian Affairs Hall of Tribal Nations

WASHINGTON - The Chairman of the Lower Lake Rancheria - Koi Nation presented his tribe's flag to Interior Secretary Gale Norton and Interior Assistant Secretary Dave Anderson today, calling it a symbol of their struggle for recognition.

"We are delighted to have this beautiful symbol of your nation and we are proud to have it displayed along with other tribal flags in our Hall of Tribal Nations, " Secretary Norton said at the morning ceremony. "Your presentation comes at a most appropriate time this week, as we celebrate the heritage and cultural achievements of Indian people."

Norton also praised Assistant Secretary Dave Anderson, saying his energy, enthusiasm and concern for Indian people are helping Interior to improve the services it provides 1.5 million Native Americans and Alaska Natives. Anderson told Tribal Council Chairman Daniel Beltran that he was pleased and honored that the Lower Lake Rancheria - Koi Nation would like its tribal flag to join the Hall of Tribal Nations.

"We are grateful to Secretary Norton and Assistant Secretary Anderson for displaying this symbol of our tribal identity," Chairman Beltran said. "It has been a dream of ours for many years as we worked to regain federal recognition of our nation. This flag is a symbol of that struggle."

The Lower Lake Rancheria - Koi Nation, located in Santa Rosa, California (Sonoma County), has about 30 members, primarily of Pomo descent. The Lower Lake Rancheria land was sold in 1914 and the proceeds were placed within the Indians of California Judgment Fund.

At the time the federal government viewed the sale as the termination of the tribe. But the tribe continued to function and maintain its integrity throughout the 20th century. During the

Alaska Native tribes in the United States. The flag of the Lower Lake Rancheria - Koi Nation displays a bald eagle over a lake scene as its central focus.



*Members of the Tribal Council of the Lower Lake Rancheria-Koi Nation present their tribal flag to Interior Secretary Gale Norton and Assistant Secretary Dave Anderson. The flag will be displayed with other tribal flags in the Hall of Tribal Nations at the Main Interior Building. From left, Vice Chairperson Carol Tapia, Assistant Secretary Dave Anderson, Council Chairman Daniel Beltran, Secretary Norton, Councilman Dino Beltran, and Council Secretary Judith Morgan-Faber. At front center are the three children of Chairman Beltran (he is holding one of them); at right are two children of Council Secretary Morgan-Faber. Photo by Jeffrey Hunter, DOI/OCO.*

-DOI-

Selected News Releases

# AR EXHIBIT 89

*1904.01.12*
*pg. 143*

BALLENA PRESS PUBLICATIONS
IN ARCHAEOLOGY, ETHNOLOGY AND HISTORY No. 13

Editor: Robert F. Heizer

# Federal Concern about Conditions of California Indians
## 1853 to 1913: Eight Documents

### Selected and Edited by Robert F. Heizer



Vol. III    OCTOBER, 1858    No. 4.

RETURN SCENE OF MENDOCINO

THE HEADQUARTERS OF THE MENDOCINO RESERVATION. DISTRIBUTION OF RATIONS TO THE INDIANS.

Muwekma Ohlone Administrative Record – Department of the Interior
MWC-FDM-010-D0027 Page 1 of 3

*1904.01.12*
*89-203*

VI.  MEMORIAL OF THE NORTHERN CALIFORNIA INDIAN ASSOCIATION, PRAYING
THAT LANDS BE ALLOTTED TO THE LANDLESS INDIANS OF THE NORTHERN
PART OF THE STATE OF CALIFORNIA*

---

January 21, 1904. — Referred to the Committee on Indian
Affairs.

January 28, 1904. — Ordered to be printed on motion by Mr.
Bard, from Committee on Indian Affairs.

---

*To the honorable the Congress of the United States:*

The Undersigned, the Northern California Indian Association,
hereby respectfully petitions and prays your honorable body for the
relief of the landless Indians of northern California.

The petitioner is a body corporate under the laws of the
State of California, having its principal place of business in the
city of San Jose, Cal., and is organized for "benevolent, charitable,
and missionary purposes for the benefit of the Indians of California,"
among which purposes are the following:

> To aid the Government and people of the United
> States in preventing all oppression of Indians and
> securing to each and every Indian the same rights,
> protection, and privileges under the laws, whether
> national or State, as are secured to all citizens and
> inhabitants of the United States of whatever race or
> color.

> To engage in and aid in educational, missionary
> and other work among the Indians of California, for
> their benefit and advancement, in the same manner,
> as far may be, as that pursued by the National Indian
> Association of the United States.

During the last nine years the petitioner has had occasion
to investigate carefully the conditions surrounding the northern
California Indians and the causes of their present state.

---

*Senate Document No. 131, 58th Congress, 2d Session, 1904
(pp. 1-16).

Muwekma Ohlone Administrative Record - Department of the Interior
MWC-FDM-010-D0027 Page 2 of 3

*1904.01.12*
*89.3 of 3*

*Schedule showing the location and numbers of the various bands of
nonreservation Indians of northern California*

| County | Place or school district | Linguistic Stock | Number | Remarks |
|--------|--------------------------|------------------|--------|---------|
| Alameda | Niles | Costanoan | 8 | |
| | Pleasanton | do | 70 | |
| Alpine | Markleeville | Paiute (Shoshonean) | 150 | No complete report |
| Amador | Buena Vista | Moquelumnan | 45 | |
| | Franklin | do | 30 | |
| | Gilbert | do | 65 | |
| | Ione | do | 10 | |
| | Jackson | do | 40 | Have 320 acres of land of United States. |
| | Julian | do | 20 | |
| | Pigeon Creek | do | 10 | |
| | Union | do | 20 | |
| | Plymouth | do | 25 | |
| Butte | Bald Rock | Pujunan | 25 | |
| | Bidwells Bar | do | 20 | |
| | Biggs | do | 80 | |
| | Chico | Copehan | 70 | On the Bidwell Ranch |
| | Cherokee | Pujunan | 15 | |
| | Clayton | do | 5 | |
| | Concow | do | 5 | |
| | Dredger | do | 25 | |
| | Honcut | do | 40 | |
| | Lumpkin | do | 25 | |
| | Mesilla Valley | do | 15 | |
| | Mountain Spring | do | 55 | |
| | Reservoir | do | 10 | |
| | Oroville | do | 10 | |
| | Webster | do | 5 | |
| Calaveras | Angels | Moquelumnan | 40 | |
| | Avery | do | 25 | |
| | Cave City | do | 30 | |
| | Railroad Flat | do | 10 | |
| | Murphys | do | 50 | |
| | Sheep Ranch | do | 25 | |
| | Valley Springs | do | 5 | |
| | Washington Flat | do | 35 | |
| | West Point | do | 10 | |
| Colusa | Leesville | Copehan | 30 | |
| | Grand Island | do | 40 | |

Muwekma Ohlone Administrative Record - Department of the Interior
MWC-FDM-010-D0027 Page 3 of 3

# SAR EXHIBIT 90



C. H. ASBURY,                                      W. C. VAN EHON
Special Indian Agent                                   Clerk


Land                          DEPARTMENT OF THE INTERIOR
Allotments.
W A M                        United States Indian Service.

                                31-33 Gazette Building,
                                   Reno, Nevada.

Purchase of Land
     California.                        Dec. 7, 1914.



          The Commissioner of Indian Affairs,

               Washington, D. C.

     Sir:-

               Referring to the above letter of September 10th,

     regarding use of the appropriation for the purchase of lands

     for the Indians in California, I have made some investigation

     of this, but to make a thorough investigation as to all of

     the Indians in California not provided with land would re-

     quire a great deal of time and expense.   In this connection,

     I called on Mr. Kelsey for such data as he might have that

     would be helpful.   The amount of money available is entirely

     inadequate to care for all of these settlements, that are said

     to be in particular need of land for homes.   The list as given

     to me by Mr. Kelsey, and which  is probably approximately right,

     is as follows:

| | | | |
|---|---|---|---|
| Fort Ross | 100 | Cloverdale and Dry Creek | 60 |
| Northern Wappos | 37 | Santa Rosa | 49 |
| Little River | 22 | Bodega | 34 |
| Mouth of Russian | | Sonora and vicinity | 75 |
|      River | 14) | Lagoons, Humboldt Co. | 39 |
| Sebastopol | 46) | Ione | 54 |
| Pleasant Valley | | Richey | 32 |
|      and vicinity | 91 | Oleta and vicinity | 65 |

| | | | |
|---|---|---|---|
| Tejon | 60 | Cache Creek | 40 |
| Lower Lake and | | Sheep Ranch and vicinity | 70 |
| Sulphur Bank | 69 | Verona | 30 |
| Kings County | 40 | Redding, 2 bands | 60 |
| Placer Co. | 60 | Nashville and vicinity | 100 |
| Chico | 60 | Rest of Butte Co. | 100 |

and I have a more detailed report on each of these places.
It is hard to say that any particular bands are the most
needy or the most deserving.  I am somewhat familiar with
several of these settlements; however, there are some that
are entirely strange to me.

In connection with the Tejon Indians, they have
been the subject of a great deal of correspondence (see
Land-Allotments 38388-14, W A H: 44459-14, 52588-14, 68210-
14, 75281-14, 82746-14, H V C) and if this syndicate would
sell us a tract of land there at any reasonable price, I
would recommend the immediate purchase of a piece of land
for those Indians, but so long as they are undisturbed and
have an opportunity there to earn their living, as shown in
the above correspondence, I would not favor purchasing a
piece of land for them elsewhere and asking them to move,
as they have gardens and very comfortable homes where they
are.

The Lower Lake and Sulphur Bank Indians were vi-
sited a short time ago and there is some complaint being made

2

by the owners of the land where some of these Indians live, asking that they be removed.   They are willing to move and the two settlements, being closely related, can be put together. The Yolo Water & Power Co. (see correspondence Land-Contracts:- 81311-13, 125729-13, 142586-13, 50686-14, 11703-14, 114435-14, C H I: and 153631-13 H V C ) own a great deal of land around Clear Lake, where these Indians live and I am assured by their manager, that they will sell us land at a very reasonable price and if we can make this purchase for these two bands of Indians while our settlement for the flooding right of land, bought for other Indians, is still pending, we can probably get a very good bargain, as they are anxious to convert their land, that is above the lake, into cash.   I recommend that an examination be made, at the earliest practicable date, to make specific recommendations and to secure options with a view of purchasing land for these two bands.

Mr. Kelsey has often told me, that he considered the Indians at Ione, Amador Co , as about the next most in need of a home and that he had negotiated there for an option on some land, but owing to some local conditions, he had not secured the option.   I recommend that steps be taken to get definite information at that place.

3

The Indians at Chico, Butte Co., live in a little village on land that was given to them by Gen. Bidwell and his wife, many years ago and Mrs. Bidwell has always taken a particular interest in that band of Indians. They are well housed and seem to make a very good living. There are only a few acres of the land, right in the edge of the city of Chico.   I understand, that it was Mrs. Bidwell's intention that these Indians should have a title to this land, or it should be placed in some way, so that the Indians would have a permanent title to it, but just the status of that matter, I don't know and I am not sure, that it would be advisable at this time to ask Mrs. Bidwell to make that conveyance, as they have always had the use of the land, she has built houses for them, provided them work and acted much as a mother to the whole band.  At present, they are in no immediate need.

As to the other bands reported, I am in no position to make any specific recommendations, at this time, but it is my opinion, that there is very little difference in their merit.   The Indians reported in Placer Co. mostly live at Colfax, where they have fairly comfortable homes on ground that they rent, paying a small rental for the privilege of having

4

their houses on the ground and they make  their living at such labor as they can find in the community. They would be more independent, if we could buy a small tract of land for them on which they could have their homes.

A number of the Indians in Butte Co. have filed applications for allotments in the Forest, which will probably be approved in due time.  If the Office desires that I handle this matter further, I could probably get time to give it some attention by about the first of March.

Very respectfully,

(Signed)  C. H. Asbury,

Special Indian Agent.

12-7-14.

# SAR EXHIBIT 91

UNITED STATES

DEPARTMENT OF THE INTERIOR

INDIAN FIELD SERVICE

~~~~~~~~~~~~~~~~~~~~~~~

June 23, 1927.

L-1
1663-27

Commissioner of Indian Affairs,
Washington, D. C.

My dear Mr. Commissioner:

This has reference to Office letters of January 8th and May 26, 1927 and telegram of the 21st inst., pertaining to data, in detail, relative to the expense of activities in the matter of purchasing land for homeless California Indians. It is noted the Office states it is assumed that this information could be given without making extensive thorough investigation. Kindly be advised that such is not the case, that, as the Office is aware, this jurisdiction includes the activities in forty-five counties of Northern and Central California and that, with the exception of seven counties, so far as this office is aware, no census has ever been made and that in four of the seven counties in which we have census the census has not been made according to bands and was consequently practically useless for the purpose at hand.

The undersigned, together with the entire personnel of this agency, has given considerable time to the compiling of data submitted herewith; same is not as extensive as we would like to submit it but it is believed that it will serve the purpose for which it is desired. To facilitate the handling of this matter, same will be discussed as to counties, with a summary of all counties. Data as to the various counties is as follows:

ALAMEDA COUNTY:

Estimated Indian population of Alameda County is 125, but all of this number, with the exception mentioned below, reside in the cities of Alameda County, where they have gone to procure employment. There is one band in Alameda County commonly known as the Verona Band, which consists of about thirty individuals, located near the town of Verona; these Indians were formerly those that resided in close proximity of the Mission San Jose.

It does not appear at the present time that there is need for the purchase of land for the establishment of their homes.

FILED BY ? 49 R.

ALPINE COUNTY:

Former estimates place the Indian population of Alpine County at 200. Estimate placed by the writer during the past several years has been in the neighborhood of 95. When it is considered that the total population of Alpine County in 1920 was only 243 (which included whites as well as Indians) it is believed that our estimate of 95 is approximately correct. This is further borne out by the fact that we have a school population in Alpine County of sixteen. We have found that the average relation between the total population and the school population is on the ratio of 6 to 1. This Indian population is about evenly distributed between Woodfords and Markleeville; most of these Indians reside on public domain allotments; further, they have never been considered as bands and, in the writer's opinion, there is no need to consider the purchase of tracts for them to establish their homes.

AMADOR COUNTY:

Amador County has an Indian population of approximately 250, as shown by the following detailed bands:

                    Enterprise...........24
                    Oleta...............60
                    Ione................46
                    Richey..............37
                    Jackson.............53
                    Buena Vista.........20

At Enterprise there is no need for the Government to purchase land to be used as a rancheria.

It is regretted that we have been unable to secure substantial information relative to the Oleta band; however, it is not considered probable that they are in need of land for, as we have been purchasing land for Indians for a period extending over twenty years, it would seem that their needs would have been called to the attention of some Government official some time during that period.

As the Office is aware, we have been considering the purchase of a tract for the Indians at Ione for the past several years, the property being a forty acre tract, which has been tied up by legal procedure. See File 36222-22. The proposed price is $4,000.00.

The Richey band is not in need of land.

At Jackson we have the former Digger or Miwuk Reservation, which is now being used as a rancheria. There are three families actually making their homes on this reservation for the present time; in one family there are four adults; in another two adults; in the third one adult and six children.

—2—

As the Office is aware, we are now giving consideration to the purchase of a tract for the Indians of the Buena Vista band; File #15250-27. The Buena Vista band consists of four families; one family has one adult; the second has one adult and three minors; the third has two adults and five minors; whereas, the fourth has two adults and six minors. The tract that we propose to purchase contains about 70 acres at the price of $3,000.00.

BUTTE COUNTY:

There are approximately 482 Indians in Butte County; these Indians are located, according to the various bands, as follows:

```
Nome....................30
Yankee Hill.........30
Chico..................86
Bidwell.............45
Mountain House......96
Lumpkins............20
Enterprise..........30
Mooretown...........30
Oroville............25
```

Little is known about the Nome band of Indians except that most of the adults find employment on the Butte City Ranch.
It is not believed that any land is needed for them.

The Yankee Hill band is a branch of the Conccw tribe, many of whom were taken to the Round Valley Reservation in the early days. Most of these Indians own property, on which they pay taxes, the same as other citizens. It would therefore not appear to their best interests be purchase land on which they might establish homes.

In the vicinity of Chico, California, there are approximately 86 Indians; these do not comprise any one band but are members of other bands that have gone to Chico to procure work and have established their homes there. They are living the same as white citizens, are of the laboring class, and consequently no land is required.

The Bidwell band also resides in the vicinity of Chico on land set aside for them by the former Bidwell estate, which was acquired by the Bidwells as a Mexican grant. There are two houses located on this property that when constructed cost over $3,000 each, which are occupied by Indians. It is understood from reliable sources that the Indians residing thereon are responsible for the taxes, which condition has existed since 1923. It may be necessary at some future date, to protect these Indians and to prevent them from becoming homeless, to acquire tracts that become delinquent on account of taxes and set same aside as a rancheria.

-5-

The Mountain House band lives in the vicinity of Pulga and consists of approximately 96 individuals. There are approximately sixteen minors in this band, the remainder being adults. It is understood that there are about twenty-two families.

The writer had intended to make a personal survey of this situation, but the road has been closed since last November and it is now reported that same will not be open until approximately July 15th. It is understood that it will probably be necessary to make arrangements to purchase land for this band.

A tract of land was purchased from the Central Pacific Railway for the Lumpkins band of 20. We have very little, if any, information concerning this purchase, although it is understood that same consisted of 39 acres. Most of the Indians that reside thereon are adults.

Two tracts of land have been purchased for the Enterprise band. The two tracts, together, comprise 80 acres. No further purchase will be necessary for this band.

Eighty acres was purchased for the Mooretown band. No further purchase will be necessary for this band.

There are approximately 25 Indians residing within the vicinity of the town of Oroville, but their conditions are practically the same as those in the vicinity of Chico, and no land will be required for them.

## CALAVERAS COUNTY:

The records at this office show that the population of Calaveras County is 125, distributed as follows:

Westpoint..................20
Mokalumne Hill...........10
Sheep Ranch..............25
Averys....................60
Murphys..................10

The Indians residing in the vicinity of Westpoint are somewhat scattered and it will not be necessary to purchase any land for them.

The above applies to Mokalumne Hill also.

A rancheria was purchased at Sheep Ranch, which contains two acres. At the present time there are about 13 or 14 Indians residing on this land. No other land will be necessary for the Sheep Ranch band.

It is known that quite a large number of Indians reside in the vicinity of Averys, but it is not considered as one band and they are scattered over a considerable area. It does not appear that it will be necessary to purchase any land for these people.

-4-

A small number of Indians live in Murphys; however at present they have moved about twenty miles in search of work to the town of Tallicity, at which there is a mine. It will not be necessary to purchase any land for these Indians.

## COLUSA COUNTY:

The records of this office show that Colusa County has a population of 175, as follows:

| | |
|---|---|
| Colusa | 80 |
| Stony Ford | 23 |
| Sites | 13 |
| Cortina | 47 |
| Grimes | 12 |

A tract of land has been purchased for the Indians at Colusa; this tract contains 40 acres. There are 80 Indians in the Colusa band, which is divided into about twenty families. No further land is needed at Colusa.

There are about 23 Indians that reside in the vicinity of Stony Ford. No land is needed for these people by reason of the fact that most of them at the present time are residing on their allotments or homesteads.

There are about 13 Indians that make their home in the vicinity of Sites. However, no land is needed for these people at the present time.

480 acres were purchased for the Indians of the Cortina Band. There are six families residing on the Cortena Rancheria at the present time.

There is a small band of Indians in the vicinity of Grimes but no land is needed for them at the present time.

## EL DORADO COUNTY:

There are approximately 189 Indians residing in El Dorado County, distributed as follows:

| | |
|---|---|
| Blairs | 12 |
| Shingle Springs | 15 |
| El Dorado | 21 |
| Pleasant Valley | 55 |
| Rey | 24 |
| Nashville | 24 |
| Indian Diggins | 29 |
| Latrobe | 15 |

-5-

adults and eight minors. However, at the present time no land is needed
for them.

A tract of 40 acres was purchased for the Shingle Springs Band,
which consists of about fifteen persons.

The Indians of the Eldorado Band do not require any land at
the present time.

A tract has been purchased for the Placard Valley Band consist-
ing of 80 acres. No further land is needed at this time.

There are about 24 Indians in the Bay Band, which consists of
six families. No land is required for this band at this time.

In the Nashville Band there are approximately 24 Indians. It is
not believed that they are in need of land.

Indian Diggins Band consists of about 25 persons and so far as
we are able to find these Indians are not in need of land.

The Latrobe Band of Indians consists of about 15 persons. It is
not believed that they are in need of land.

The writer has not been able to inform himself as fully as he
would desire before making this report on the Nashville, Indian Diggins
and Latrobe Bands of Indians, but from information at hand it does not
appear that it will be necessary to purchase land for these people.

FRESNO COUNTY:

The records of this office show that there are approximately
a little over 800 Indians residing in Fresno County. However, those
that belong to the various bands number about 664, as follows:

| | |
|---|---:|
| Auberry | 144 |
| Brush Creek | 10 |
| Big Creek | 75 |
| Burroughs | 100 |
| Millerton | 57 |
| Lower Mill Creek | 64 |
| Dunlap | 75 |
| Sanger | 20 |
| Squaw Valley | 46 |
| Table Mountain | 90 |

A tract consisting of 288 acres has been purchased for the
Indians of the Auberry Band. No further purchase will be required.

The Indians at Brush Creek are not in need of land at the
present time.



-5-

A majority of the members of the Elk Creek Band own land of their own, either in the form of allotments of small places that they have acquired.

The Burroughs Band has been provided for through an executive order withdrawing certain lands for their use.

A tract of 140 acres has been purchased for the Millerton Band and no further land is required.

Practically all the Indians of the Lower Mill Creek Band are living on Indian allotments or homesteads.

The Dunlap band is considerably scattered and it is doubtful if land was purchased whether they would make beneficial use of same. Further, they have never made request that any purchase be made or for aid of any kind.

There are about 20 Indians residing in the vicinity of Sanger, but no land is required for them.

Many of the Indians of the Squaw Valley Band own allotments of their own; others have acquired home sites. It will not be necessary to give consideration to the purchase of land for this band.

A tract of 160 acres has been purchased for the Table Mountain Band.

## GLENN COUNTY:

There are approximately 70 Indians residing in Glenn County. 52 of these reside on the Grindstone Rancheria in which we are making some improvements at the present time. The rancheria contains 80 acres. No additional land need be purchased for these Indians. The majority of the other Indians residing in Glenn County are located in close proximity to Elk Creek. No land is required for them.

## KERN COUNTY:

We have approximately 420 Indians in Kern County, distributed as follows:

```
Isabella.....................30
Kernville....................10
Onyx.........................80
Weldon.......................75
Grapevine Canyon.............20
Kelso Valley.................40
Walkers Basin................25
Piute........................40
Tehachapi....................25
Tejon........................75
```

-7-

Indians numbering about 30 reside in the vicinity of Isabella, either on allotments or homes acquired by their own effort. It is not necessary to purchase land for their benefit at this time.

A small number of Indians reside in and around the town of Kernville, where they procure employment. No land is required for their needs.

In the vicinity of Onyx we have approximately 50 Indians. No purchase of land for their immediate use is required.

Walden, like Onyx, is quite an Indian community. Land for their need is not required at this time.

A small band of Indians is located at Grapevine Canyon. They are making their own way and land is not required for their use at this time.

Kelso Valley is a location for a number of Indians who have allotments and the purchase of land for their immediate need is not required.

Walkers Basin is another Indian settlement but land is not required for their immediate use.

In Piute and vicinity Indians reside to the number of about 40. They are making their own way and land for home site is not required.

At Tehachapi we have a small band of Indians who are self-supporting. Home site is not required.

Tejon which at one time was considered a rancheria has passed through legal procedure and title has been declared to be in the Tejon Ranch. Effort has been made to purchase land the Indians occupied, but the owners of the Rancho refused to sell but have expressed their willing-ness that the Indians should remain there and occupy the land as formerly without any objection so long as they do not make legal claim for same. A rental of $1.00 per year is charged them for occupancy of the land. It is useless to consider purchasing land for them elsewhere as they would positively refuse to move from their present habitation.

KINGS COUNTY:

From the records at this office it appears there are about 18 Indians in the Charley George band and 104 in Muscles Slough (Tache ) band. The remnants of the Charley George band reside in the vicinity of Hanford. However, they are not in need of land.

The Muscles Slough, or Tache band, reside in the vicinity of Lemoore. Some years ago these Indians purchased 50 acres for their use. It is understood that within the past fifteen years the Government has purchased some of these tracts when they became delinquent for taxes. This band is not in need of more land. However, if some of the land should become delinquent for taxes, it would probably be necessary for the Government to step in and purchase same to keep them from losing their rights. There are

-3-

normally 17 families that belong to this band; of the total number in part of school age.

LAKE COUNTY:

The records at this office show that there are approximately 600 Indians now actually residing in Lake County, as follows:

| | |
|---|---|
| Eariesty | 125 |
| Robinson | 100 |
| Lakeport | 50 |
| Big Valley | 100 |
| Lower Lake | 37 |
| Sulphur Bank | 35 |
| Cache Creek | 40 |
| Middletown | 50 |
| Scotts Valley | 60 |

A tract of 143 acres has been purchased for the Indians of the Eariesty band. Besides this 143 acres, the Indians themselves own an adjoining tract which contains 93 acres. The 125 Indians of this band consist of 42 families; there are 32 minors.

A tract of 58 acres has been purchased for the Robinson band. There are 34 families represented by the population of 100; there are 32 minors in this band.

The Lakeport band consists of approximately 50 persons. No land will be needed for this band.

A tract of 60 acres has been purchased for the Big Valley band. Twenty-six families are represented in the population of 100. There are 28 minors in this band.

The Lower Lake band consists of 37 persons, represented by 13 families. There are 9 minors in this band. It will probably be necessary to purchase a tract for this band, as at present they have no rancheria.

Sixty acres were purchased for the Sulphur Bank band. 14 families are represented in the Sulphur Bank band. There are 10 minors in this band.

A tract of 160 acres was purchased for the Cache Creek band, in which are 7 minors.

A tract of 106 acres was purchased for the Middletown Band. There are 21 families in this band, in which are 12 minors.

A tract of 56 acres was purchased for the Scotts Valley band. There are 28 families represented in this band, including 13 minors.

—9—

LASSEN COUNTY:

The Indian population of Lassen County is approximately 560, located as follows:

```
Ash Valley.................10
Bieber....................97
Cove,.....................15
Hayden Hill............... 7
Madeline..................27
Dixie Valley..............72
Secret Valley.............10
Willow Creek..............15
Susanville...............125
Johnstonville............ 35
Standish.................. 27
Janesville................ 25
Milford................... 15
Long Valley.............. 40
```

Before discussing these individual bands of Indians, kindly permit the writer to advise that so far as homes are concerned, the majority of the Indians of Lassen County have provided homes for themselves which compare favorably with, if not better than the average home situated on land purchased for homeless Indians.

Ash Valley, consisting of a small band, does not require home site.

The Bieber band, one of the largest in the County, are making their way and do not require land for a home site.

The Cove band do not need land for a home site.

The Hayden Hill band, being quite small, do not need assistance in the way of home site.

The Madeline band do not require land for home site.

The Dixie Valley - another large Indian community - are providing for themselves quite satisfactorily and do not need help in the way of land for home site.

The Secret Valley band do not require land for home site.

The Willow Creek band do not need land for a home site.

In the vicinity of Susanville we have the largest Indian settlement of Lassen County. Thirty acres was purchased for them but to date they have failed to make any use of same, having, as already stated, provided fairly good homes for themselves. However, there is a strong tendency for the Indians to drift to Susanville on account of the market it affords for labor, hence it is believed that within a short time additional land for home site will be required; in fact, it is about definitely decided that such will be the case.

-10-

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

The Johnstonville Indians do not need land for home sites.

The Standish band are not in need of land for homes.

The Janesville band do not require home sites.

The Milford band is well provided for.

The Long Valley band does not require land for home sites.

## MADERA COUNTY:

Our records show that we have an Indian population in Madera County of approximately 519, consisting of various bands located as follows:

```
Ahwahnee.....................43
Fresno Flat.................129
Coarsegold...................91
Picayune.....................50
Crane Valley.................10
North Fork..................214
Fine Gold....................34
O'Neals......................34
```

The Ahwahnee band are located well up in the mountains and have provided fairly good homes. They are so situated by reason of their allotments, homesteads, and other holdings, that home site would not be of benefit to them.

The Fresno Flat Indians are scattered and are either living on allotments, homesteads, or other acquired land, and therefore are not in need of a home site.

Picayune is a rancheria and is ample for the Indians located thereon. No additional land will be required.

Crane Valley is a small settlement and the Indians are not in need of a home site.

North Fork is the largest Indian community in Madera County. Their holdings are very scattered and few have taken advantage of the land purchased near North Fork for home site, there being not to exceed four families residing thereon. No additional land is needed for these Indians.

The Fine Gold band have provided very well for themselves and do not need any land for home site.

The O'Neals Indians are scattered and are residing on either allotments, homesteads, or other lands, acquired by themselves. They are not in need of any land for home site.

-11-

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

## MARIN COUNTY:

We are one band of Indians in Marin County consisting of approximately 150 persons, which are located at a point known as Tomales Bay. The advisability of procuring a home site for these Indians has been under consideration but we have as yet been unable to arrive at any definite plan as to what would be to their best interests. It should, however, be kept in mind that land will probably be required for their benefit.

## MARIPOSA COUNTY:

The Indian population of Mariposa County is approximately 192, distributed as follows:

```
Yosemite..................47
Greeley...................10
Merced Falls.............10
Kalarow..................15
Chowchilla...............25
Mariposa.................93
```

The Yosemite band has been somewhat nomadic in their disposition but have finally settled in the vicinity of Yosemite National Park headquarters, where they find a ready market for their labor since the Park has become so popular and important a playground. It is believed that it may be advisable to acquire a tract for home site, as it will be in their best interests to be assigned a specific locality for their colony. This matter will be given early consideration and the probability of land being acquired for them should be kept in mind. This, however, will probably not require any funds, simply the assigning of a tract for their use by the National Park people.

Greeley, a small Indian settlement, does not require land for home site.

The Merced Indians will not be in need of a home site.

Kalarow, another small band, do not need land for home site.

Chowchilla Indians do not require land for home site.

Mariposa, the largest band in Mariposa County, are considerably scattered and therefore will not require land for home site.

## MENDOCINO COUNTY:

Previous estimates submitted as to the population of Mendocino County gave same as between 1300 and 1400. The writer had been of the opinion that this was approximately correct until he began to assimilate data for this report and it now appears, from information at hand, that the total population of Mendocino County is approximately 1754, of which number 690 reside on the Round Valley Reservation, leaving 1064 non-

-12-

reservation Indians in Mendocino County, as follows:

| | | | |
|---|---|---|---|
| Laytonville........39 | | Yokaia..........300 | |
| Sherwood..........39 | | Hopland.........33 | |
| Potter Valley......49 | | Yorkville......25 | |
| Redwood...........26 | | Manchester....35 | |
| Coyote Valley......17 | | Pt.Arena.......90 | |
| Pinoliville......120 | | Fort Bragg....120 | |
| Guideville........36 | | Caspar........100 | |
| Booneville........35 | | Rockport......80 | |

A tract of 200 acres has been purchased for the Laytonville band. There are 20 families on the Laytonville Rancheria, with 16 minors.

Two tracts have been purchased for the Sherwood band, aggregating 290 acres. There are 25 families in this band, with 4 minors.

A tract of 16 acres has been purchased for the Potter Valley Indians, which consists of 25 families; there are 9 minors in this band.

A tract of 60 acres has been purchased for the Redwood Valley band. There are 11 families in this band, with 7 minors.

A tract of 100 acres has been purchased for the Coyote Valley band. There are 9 families, with two minors.

A tract of 95 acres has been purchased for the Pinoliville band, besides the Indians themselves own an adjoining tract of 60 acres. There are 40 families on the Pinoliville Rancheria, with 33 minors.

A tract of 74 acres has been purchased for the Guideville band, which consists of 12 families, with 12 minors.

The Indians of the Booneville band are scattered over considerable territory and no land is needed for them.

The Indians of the Yokaia band have purchased a tract of their own; this band consists of 33 families, with 26 minors.

A tract of 630 acres has been purchased for the Hopland band, which consists of 33 families, with 34 minors. In this connection, kindly permit the writer to here advise that the Hopland band have made better use of the land purchased for them than any other band for which property has been purchased. No additional land is required.

The Yorkville band is widely scattered and no land is needed for them at the present time.

A tract of 75 acres has been purchased for the Manchester band, which consists of 30 families,with 33 minors.

A tract of 40 acres has been purchased for the Pt. Arena band.

-13-

Fort Bragg.  Fort Bragg is a large lumbering town and, as it is the center
for Indian labor, it is possible that in the future it will be necessary
to purchase a tract there.

A large number of Indians reside in the vicinity of Casper,
commonly known as Coast Indians.  Most of the Indians at Casper are employ-
ed in the woods as loggers and other similar work, and it is therefore very
difficult to get a correct estimate of the number actually belonging there,
as they are coming and going practically all the time.  It is not believed
that the purchase of land will be necessary for this band.

The conditions at Rockport are practically the same as at Casper.

In this connection, kindly be advised that the non-reservation
Indians of Mendocino County are seeking and receiving more aid than any
other county under this jurisdiction; that none of the Indians of this
County, excepting Round Valley, have ever received allotments; that the
only means of support is by manual labor.

MONTEREY COUNTY:

The Indian population of Monterey County is small, consisting
of approximately 79 persons, distributed as follows:

Playto..............26
Jolon...............25
Milpitas............ 8

The Playto band have provided their own homes and are not in
need of any home site.

The Jolon band do not require land for home site.

The Milpitas band do not require land for home site.

NEVADA COUNTY:

It appears there are approximately 79 Indians residing in Nevada
County, distributed as follows:

Indian Flat........25
Truckee............26
Chicago Park.......16
Nevada City........12

No land is needed for the Indian Flat band.

The Truckee band is somewhat scattered along the banks of the
Truckee River.  It will not be necessary to purchase any land for this

-14-



By executive order a tract of approximately 40 acres was set aside for the Nevada City band. No further land will be required.

## PLACER COUNTY:

It is estimated there are approximately 103 Indians in Placer County, distributed as follows:

    Colfax................38
    Todd's Valley........25
    Clifford Gap.........15
    Auburn...............25

A tract of 40 acres has been purchased for the Colfax band.

No land is required for the Todd's Valley band, nor is any land required for the Clifford Gap band.

Land has been purchased for the Auburn band but we have no information as to the acreage. No additional purchase of land will be required for this band.

## PLUMAS COUNTY:

It is estimated that 450 Indians residing in Plumas County, are distributed as follows:

    Prattville..........85      Nelson Point.........10
    Greenville..........84      Hartman's Bar........27
    Rich Bar............30      Portola..............30
    Taylorsville........42      Chilcoot.............17
    Quincy..............53      Spanish Ranch........30
    Genesee.............32

Most of the Indians residing in the vicinity of Prattville are located on allotments or other land that they have acquired. No land will be needed for this band.

The Indians residing in Greenville nearly all have homes of their own, mostly acquired through purchase, quite a few of which are held in trust. No land is required for these people.

The Indians at Rich Bar are situated on land owned by them, and it will therefore not be necessary to purchase a tract for their use.

A tract of 160 acres has been purchased for the Taylorsville band.

The Indians residing in the vicinity of Quincy are living in the town of Quincy. The majority of them have homes of their own, consequently no land is required.

-15-



Practically all the Indians of the Genesee neighborhood have acquired homes of their own and are now residing on property held in their name.

No land will be required for the Indians of the Nelson Point band.

This Agency has not been able to secure very definite information as to the Hartman's Bar band of Indians, but from information at hand it appears that they do not require any land.

It does not appear that any land will be necessary for the Indians residing in the vicinity of Portola.

The above applies to the Chilcoot band of Indians.

At the Spanish Ranch we have a rather peculiar situation. The Indians of this band have, for years, refused to send their children to Government school and have only sent them to public school when absolutely forced to do so by the County authorities. At present they have moved so far from the public schools that under the State they can not be forced to have the children attend. This band has never desired to be recognized or aided by the Federal Government and, it is doubtful if land was purchased, if they could be induced to use same.

## SAN BENITO COUNTY:

I. San Benito County we find the San Juan Bautista band, which reside in the vicinity of the Mission San Juan Bautista, which is located near the town of Hollister. These Indians have been well cared for by Catholic priests and no land is required.

## SHASTA COUNTY:

There are approximately 852 Indians now residing in Shasta County, distributed as follows:

| | | | |
|---|---|---|---|
| McArthur | 75 | Dalmar | 45 |
| Slate Creek | 20 | Montgomery Creek | 40 |
| Cayton | 12 | Round Mountain | 20 |
| Pittville | 42 | Bat Creek | 50 |
| Indian Springs | 40 | Mascu | 12 |
| Bunker Hill | 37 | Silverthorn | 10 |
| Albica | 40 | Churntown | 20 |
| Mt. Burney | 15 | French Gulch | 12 |
| Cove | 25 | Ono | 25 |
| Lemoine | 45 | Redding | 100 |
| Delta | 20 | Anderson | 25 |
| Copley | 15 | Mistletoe | 12 |
| Baird | 50 | Anteloya | 15 |

-15-

quently no land is needed.

The Slate Creek band is well provided with homes. It will therefore not be necessary to purchase land for this band.

The Dayton band have sufficient homes of their own.

The majority of the Indians at Bittville have their own homes. No land will be required.

Forty acres was purchased for the Indians of the Indian Springs band.

The Indians of Bunker Hill band have homes of their own.

The same applies as above, to the Albion band.

The same also applies to the Mt. Burney band.

Eighty acres of land was purchased for the Cove band.

The Indians of the Lemoine band are supplied with homes and no purchase of land will therefore be necessary.

The Delta band have homes that compare favorably with the others in the County.

The above applies to the Copley band of Indians.

The Baird band reside along the McCloud River and practically all have homes that they acquired by their own efforts, consequently no land will be needed for this band.

The above applies to the Delamar band.

Seventy-two acres was purchased for the Indians of the Montgomery Creek band.

The Indians of the Round Mountain band have their own homes, situated on land held in trust.

The Hat Creek Indians are well supplied with homes, most of which are considered the best of any band in Shasta County.

The Mason band have homes of their own.

The above applies to the Silverthorn band.

The Churntown band is well supplied with homes.

The French Gulch band has scattered and consequently no land is needed for them.

-17-

The Ono band is well supplied with homes.

A tract of 30 acres of good land was purchased for the Indians residing in the vicinity of Redding, which should be sufficient for their needs.

Practically all the Indians residing in Anderson own homes that are held in trust.

The Mistletoe band is scattered and therefore not in need of land.

The above applies to the Antelope band.

In conclusion of the discussion of Shasta County, kindly be advised that the majority of the Indians of Shasta County are mixed bloods and, with the exception of the places where we have purchased homes for them, are practically well supplied with nice little homes.

SIERRA COUNTY:

In Sierra County there is only one band, which is composed of about 72 persons, residing in the vicinity of Loyalton and commonly known as the Loyalton band. These Indians are now squatted on private property and it is the writer's opinion that something should be done to provide them with land that they can consider as their own, as at the present time they are entirely (with one exception) without property that they can consider as a home. It is probable that at least $4,000, or possible $5,000, will be needed to secure a suitable tract for this band.

SISKIYOU COUNTY:

There are approximately 1257 Indians residing in Siskiyou County, distributed as follows:

| | | | |
|---|---|---|---|
| Bogus | 22 | Etna | 100 |
| Lowerns | 20 | Quartz Valley | 90 |
| Happy Camp | 190 | Heamber | 90 |
| Lakeview | 15 | Iesca | 180 |
| Sunnyside | 15 | Somes Bar | 90 |
| Dunsmuir | 50 | Butler Flat | 30 |
| Mt. Shasta | 60 | Fork of Salmon | 120 |
| Cleveland | 25 | Black Bear | 25 |
| Greenhorn (Yreka) | 25 | Humburg | 60 |
| Sawyer's Bar | 25 | | |

The Indians of the Bogus district have homes of their own.

The above applies to Lowerns.

Practically all of the Indians of the Happy Camp band have made provision for homes of their own.

-18-

The above applies to Sawyers.

The Indians in the vicinity of Dunsmuir mostly reside in the town, in homes that they rent or that are owned by them personally.

The Indians of the Mt. Shasta band practically all have homes of their own, although some of them do not own the land on which they are located.

The Cleveland band have made provision for homes of their own.

A large majority of the Greenhorn band reside in the town of Yreka.

The Sawyer's Bar band have made provision for homes of their own, practically all of them having small places.

A tract of 480 acres has been purchased to care for the Etna band, generally known as the Buffey's Band.

The Indians of the Quartz Valley band have made provision for homes of their own.

The above applies to the Meamber band.

The Indians of the Isece band are scattered along the bank of the Klamath River, where in many places there are a few acres of agricultural land, on which they have erected their homes and have, in most cases, acquired title or at the present time have applications for title pending.

The above applies to the Somes Bar band.

The Indians of the Butler Flat band reside along the Salmon River, and the conditions are practically the same as the Isece and Somes Bar bands.

The Fork of the Salmon band live up the Salmon River from the Butler Flat band and the conditions are practically the same.

The Black Bear band have made provision for homes of their own along the South Fork of the Salmon River.

The Indians of the Hamburg band have made provision for homes of their own, most of them residing on small tracts along the Klamath River. The title to many of these small tracts is still pending and is receiving consideration at the present time.

In conclusion of the discussion of Siskiyou County, kindly be advised that practically all the Indians of this County are mixed bloods, many of whom resent being classed as Indians and desire to be considered as whites, except when it suits their convenience to be classed as an Indian.

-19-




Further, practically all the Indians of Siskiyou County are treated by the whites of that County as their equal, industrially as well as socially. In fact, the condition in this County and the advancement of the Indians is the best of any county under this jurisdiction. It will not be necessary to purchase additional land for the Indians of Siskiyou County.

## SONOMA COUNTY:

Previous estimates, for several years back, have given the population of Sonoma County as in the neighborhood of 340 to 350, but when securing data for this report we find that the approximate census of Sonoma County is 453, distributed as follows:

| | |
|---|---|
| Cloverdale...........40 | Jenner.................15 |
| Alexander Valley.....62 | Bodega Bay............35 |
| Dry Creek...........57 | Sebastopol............76 |
| Stewart's Point.....118 | Litton (included in the |
| Duncan's Mill....... 20 | total of Alexander Valley |
| | and Dry Creek). |

A tract of land comprising 27.5 acres has been purchased for the Cloverdale band. No additional land will be needed for this band.

Fifty-four acres, comprised in two separate purchases, has been secured for the Alexander Valley or Wapo band. No additional land will be required for this band.

Seventy-five acres have been secured for the Dry Creek band. We have recently purchased another tract for the Dry Creek and Alexander Valley band, which will be known as the Litton Rancheria and which will be discussed at that time.

Forty acres have been purchased for the Stewart's Point band. The land purchased is isolated and not suitable for the purpose for which it was purchased. However, it was the original home of this band and it is doubtful, in fact extremely so, that if additional land was purchased if this band could be induced to leave the present rancheria. For this reason, it is not believed that additional land for the Stewart's Point band should be given consideration.

The Indians of the Duncan's Mill band are scattered and consequently no land will be required.

The Jenner's band consists primarily of two families who have made ample provision for their own homes.

Little is known of the Bodega Bay Indians. However, it is understood that they live along the coast of the Bay as squatters on property belonging to the various persons, making their living primarily as fishermen. The writer is not in position to make definite recommendation concerning this band at the present time, but from information at hand it would seem that no land will be required.

-20-

A tract of 40 acres has been purchased for the Sebastopol band. No additional land will be required.

During the present fiscal year 60 acres were purchased for the Litton Rancheria. The land purchased is as good in character, if not better, than any heretofore procured for Indian rancherias. It is the intention to move the Dry Creek and Geyserville band (which are now occupying the Dry Creek Rancheria) to the Litton Rancheria, by reason of the fact that the land in the Dry Creek Rancheria is not suitable for Indian homes and should never have been purchased, same being in a dark canyon with very little sun at any time of the year and commonly known throughout that locality as Dark Canyon.

## STANISLAUS COUNTY:

There are about 25 Indians residing on land in the vicinity of Knight's Ferry. These Indians have always claimed that they had an interest in this land; in fact, the matter was referred to the United States District Attorney for action in the premises. Recently we were advised by the Office that the case had been dropped by reason of the fact that it was impossible to secure witnesses to testify in the prosecution of the case. The land which is in dispute is ten acres. However, from information at hand it appears that 15 or 20 acres of good land should be purchased for this band.

## TEHAMA COUNTY:

There is an estimated Indian population of 135 in Tehama County, distributed as follows:

| | |
|---|---|
| Farquhar | 30 |
| Manton | 25 |
| Tehama | 20 |
| Lowery's | 10 |
| Paskenta | 30 |
| Haynes Creek | 20 |

The Farquhar band is now scattered, consequently no land is required for this band.

Most of the Manton band have acquired small places of their own.

The Indians of the Tehama band reside in town and have made provision for their own homes, consequently it will not be necessary to purchase a tract for them.

The Indians of Lowery's have scattered and there is no need for the purchase of land for them.

A tract of 260 acres has been purchased for the Paskenta band, which consists of eleven families with 7 minors.

-21-



The Indians of Paynes Creek band have acquired their own homes, consequently no land will be necessary.

TRINITY COUNTY:

Trinity County has a population of 258 Indians, distributed as follows:

| | | | |
|---|---|---|---|
| Junction City | 50 | Brown's Creek | 45 |
| Weaverville | 10 | Hayfork | 41 |
| Lewiston | 30 | Caution | 40 |
| Hyampom | 12 | Burnt Ranch | 40 |

The Indians of the Junction City band are scattered over a considerable area and those that are now residing in the vicinity of Junction City have made provisions for homes of their own, consequently no land is required.

The Weaverville band have homes of their own, consequently no land will be required.

The Indians of the Lewiston band practically all have homes of their own and no land will be needed for them.

The Hyampom band are practically all tax payers on real estate owned by them, therefore have homes of their own and it will not be necessary to purchase any land for this band.

The Indians of Brown's Creek band are scattered over a large area. It is doubtful, even if land was purchased, if they could be induced to make use of same. Further, many of them have made provision for homes and it will not be necessary to acquire land for their use.

The Hayfork band have, in the majority of cases, made provision for homes and no land will be required for them.

The Indians of the Caution band practically all own homes of their own, which are situated either on Indian allotments or on homesteads. This band is located in the rugged section of the Coast Range, many of them living 20 or more miles from the nearest postoffice. No land will be needed for this band.

The Indians that comprise the Burnt Ranch are mostly half bloods, who have made provision for homes of their own. No land will be required for this band.

TULARE COUNTY:

In Tulare County there are approximately 300 Indians. Of this number 159 reside on the Tule River Reservation. Approximately 45 are scattered in the various towns of Tulare County; the other 96 are distributed as follows:

| | |
|---|---|
| Drum Valley | 46 |
| Eshon Valley | 20 |
| Lemon Cove | 30 |

-22-

The above applies to Eshom Valley.

The Indians of Lemon Cove have practically all made arrangements for homes and no land will be required.

In connection with Tulare County, kindly be advised that 40 acres of land has been purchased, which is located near the town of Strathmore; that at present it does not appear that we will be able to make beneficial use of this tract by reason of the fact that we have not been able to get the homeless Indians residing in that vicinity to make use of same.

## TUOLUMNE COUNTY:

There are approximately 290 Indians residing in Tuolumne County, distributed as follows:

| | | | |
|---|---|---|---|
| Tuolumne | 125 | Quartz | 16 |
| Columbia | 29 | Jamestown | 8 |
| Bald Rock | 29 | Ward's Ferry | 10 |
| Sonora | 27 | Groveland | 37 |

A tract of 280 acres has been purchased for the Tuolumne colony.

The Columbia band is considerably scattered and is not in need of land.

We are not very familiar with the Bald Rock band, which resides in the high Sierras and, since receipt of Office letter, have not been able to make field investigation primarily because of climatic conditions. However, from information at hand it does not appear that this band is in need of land.

The Indians of the Sonora band are making very satisfactory progress and provision for their own homes, consequently no land will be required.

The above applies to the Quartz band.

No land is required for the Jamestown band.

Little information is available concerning the Ward's Ferry band, but from that at hand it appears no land will be needed.

The Indians of Groveland band are making satisfactory progress, many of them having their own homes, consequently it will not be necessary to purchase land for this band.

## YOLO COUNTY:

A tract of 75 acres has been purchased for the Rumsey band of Indians in this County, which comprises about 45 individuals. There are no other  bands of Indians in Yolo County, although a small number might be found scattered through the various towns.

-23-

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

There are approximately 31 Indians in Yuba County, which are divided about equally between the Anthony House or Dobbins band and the Strawberry Valley band. A tract of one-half acre has been purchased for the Strawberry Valley band, and it is not considered that any land is required for the other band.

## MISCELLANEOUS COUNTIES:

Besides the Counties listed above, we have an estimated Indian population in the following Counties:

```
Contra Costa.....................36
Merced...........................125
Napa.............................51
Sacramento.......................375
San Francisco....................475
San Joaquin......................125
San Luis Obispo..................45
San Mateo........................?
Santa Clara......................31
Santa Cruz.......................11
Solano...........................45
Sutter...........................33
```

So far as the writer has been able to ascertain, none of the Indians in these Counties have ever been known or considered as bands. The majority of them reside in the larger cities and seek employment in the various factories, mills, etc., in those cities. It is not believed that land is required for any of the Indians residing in these Counties.

### S U M M A R Y:

From the above it will be noted that there are 222 bands located in the 13 counties of this jurisdiction. Provision has been made for tracts for 46 of these bands, having a population of 3813 people, for which 5293.4 acres was purchased. Provision has been made for three bands with a population of 162, for which 360 acres was set aside by Executive Order, thereby making the number of bands that have been provided for, in all, 51 - the population of which is 3380, for which 5293 acres has been provided. It is believed that provision should be made to secure land for the following bands:



| Name | Population | County |
|------|-----------|--------|
| Ione | 46 | Amador |
| Buena Vista | 20 | " |
| Lower Lake | 37 | Lake |
| Tomales Bay | 150 | Marin |
| Yosemite | 47 | Mariposa |
| Loyalton | 72 | Sierra |
| Knight's Ferry | 25 | Stanislaus |



-24-

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

There are seven other bands on which we do not have sufficient information to make definite recommendation at this time but for which it is probable that it will be necessary to purchase land:

| Name | Population | County |
| --- | --- | --- |
| Ione | 50 | Amador |
| Bidwell | 46 | Butte |
| Mountain House | 96 | " |
| Nashville | 24 | El Dorado |
| Indian Diggins | 25 | " |
| Latrobe | 15 | " |
| Spanish Ranch | 30 | Plumas |

These seven bands have a total population of 286.

There are two places where additional purchases will be necessary:

Pinoliville with a population of 120, in Mendocino County,

Susanville  "   "     "     " 125, " Lassen

Since writing the detailed information contained in the foregoing part of this report, it is learned the County Records show that 60 acres for the Muscles Slough, or Tache, band was deeded to the United States by the Indians. This 60 acres of this band of 104 is not included in the recapitulation shown above. Of the original 60 acre tract which was owned by the Indians, there still remains 20 acres in their name, and from recent information it does not appear that it will be necessary in the near future to have this taken over by the Government.

In connection with land to be purchased, attention is most respectfully called to the fact that the purchase of a tract for the Buena Vista band, in Amador County, comprising 70 acres, for a consideration of $3,000, is now pending. It is possible that purchase may be completed during the fiscal year 1927, and, if not, it is practically certain that it will be completed early in the fiscal year 1928.

The further fact that the purchase of a tract of 40 acres for wood reserve as an addition to the present Pinoliville Rancheria, is also pending, with the possibility that it may be completed this fiscal year. If not, it is very probable that same will be completed the early part of next fiscal year.

-25-



Supplemental Muwekma Ohlone Administrative Record - Department of Interior

It is understood from Office communications that a complete report as to the needs of the homeless Indians of California is desired; such report would not be complete without calling attention to the fact that, although land is needed as shown above for from 7 to 14 additional bands, the paramount need of the homeless Indians of California now is the development of tracts already purchased, through the provision of adequate water supply for domestic use, proper fencing of same, and provision for the construction of better homes on each tract purchased. The importance of adequate water supply for domestic use is apparent as a sanatory and health measure without further discussion.

The tracts should be fenced, as frequently considerable friction and agitation is caused between the Indians occupying the tract and their white neighbors because of poor, or no fences. These improvements should, in the writer's opinion, be cared for out of gratuity appropriations.

The question of homes has caused this Agency considerable concern as to the plan that will prove the most successful. The reimbursable plan has proved a failure among the California Indians on the public domain, except in one or two isolated instances. Therefore this plan was discarded. Two other plans have suggested themselves; one, that the Government furnish the home gratuitously; the other, that the home be built and written up on a contract similar to reimbursable plan, with the understanding that the Indian is to pay so much each year, and the further understanding that if he does not make payments when due, the house will be confiscated and sold to another desiring a home. It is believed that payments should extend over a period of ten years, and the condition of the contract should be practically the same as used by real estate firms in this State who sell homes on long-time payment. It is further believed that this rule of forfeiture for non-payment should be strictly adhered to, except in cases of physical disability incurred after the contract has been made. It is further suggested that, before an Indian be given a home under this plan, he be required to make a down-payment of at least 10%. It is recommended that the minimum allowed for houses be $100 and the maximum $500, under this plan, depending upon the need of the individual and his ability to meet the obligation.

It is therefore accordingly recommended that in the future, when the matter of funds for the homeless Indians of California is presented to the Budget Bureau and Congress, provision be made so that funds so allotted will be available for improvements of tracts already purchased as well as for purchase of additional tracts.

-25-

CONCLUSION:

In conclusion, kindly be advised that it has not been physically possible to comply literally with Office instructions, and it is believed from the foregoing the magnitude of the undertaking will be realized, especially as census, so far as we are aware, is available for only seven counties.

In this connection, kindly be advised that little data covering the question at hand was found in the files of Agencies consolidated to form this jurisdiction.

Also in this connection, kindly be further advised it is believed the Office realizes that at an Agency having jurisdiction over public domain Indians such as Sacramento Agency, it is impossible to have as close a personal touch with the individual as on a closed reservation.

We sincerely trust that the data given herewith will serve the purpose for which desired.

Respectfully submitted

L. A. Dorrington,
Superintendent.

KHE-3

-27-

# SAR EXHIBIT 92

6—1142

UNITED STATES

DEPARTMENT OF THE INTERIOR

INDIAN FIELD SERVICE

Sacramento Indian Agency
Sacramento, California

December 8, 1928

Commissioner of Indian Affairs
Washington, D. C.

My dear Mr. Commissioner:

This will acknowledge receipt of your letter, under date of November 10, 1928, pertaining to purchase of land for homeless Indians in California. Kindly be advised that this matter has been given serious thought and careful consideration since the establishment of this agency, October 1, 1923.

Since that date, rancherias at Litton, Sonoma County and Wilton in Sacramento County have been purchased and also rancheria at Buena Vista in Amador County has all but been acquired, and will probably be closed within a few days. Immediately prior to consolidation, former Superintendent Miller at Greenville and former Superintendent Carter at Tule River purchased rancherias at Redding and Strathmore. These purchases are of exceptional land, and are regarded as the "cream" of rancherias under this jurisdiction. But without aid from the Federal Government, the Indians are unable to make any progress in establishing themselves thereon. In fact, on only one of these tracts has there been a house built, the exception being at Wilton in Sacramento County, although there are many Indians that desire to establish homes on the various reservations.

Water systems are needed on each of these reservations. On the Wilton Reservation there is a good community well and pump, but a water system should be installed, and at the other reservations water systems should also be installed, not only those mentioned, but on practically all of the forty-five reservations of this jurisdiction.

In my opinion, we should not give consideration to the purchase of additional for landless Indians, unless we are assured that funds will be available for improvements thereon, and also for improvements of the tracts already purchased. If funds had been available for improvement of lands already purchased, much of the criticism pertaining to lands purchased, and home conditions on the lands would probably have been eliminated.

This brings us to another phase of the work among homeless Indians of California, that is, the actual establishment of homes on the rancherias already purchased. Here, other problems present themselves, same being that part of the Indians only would be able to repay the cost of construction of their homes,

FILED BY S. G. J.

Commissioner   -2-                                    December 8, 1928

while others would not be able to meet such expense.  In any event, probably 90% would need assistance in some way in establishing their homes on the reservations.

There is another factor which should be given consideration, and that is provision for a wood reserve convenient to rancherias where there is no wood available.  We recommend to the Office the purchase of a wood tract in Mendocino County for use of the Indians residing on the Pinoliville and other rancherias in that locality.  The same failed to receive favorable action, because no applicable funds were available.

In consideration of this matter, your attention is respectfully invited to my letter of June 23, 1927, file 1668-27, having reference to landless Indians of this jurisdiction, and wherein a list of seven bands were mentioned for which provisions should probably be made.

The first is Ione.  In this connection, attention is invited to the fact that land for this band is now under consideration and has been for several years, same being held up because of the inability to procure a clear title.

The second is Buena Vista.  This band is being given consideration, and purchase of tract is now pending, but practically completed.

The next is Lower Lake.  From investigation it was found that this band does not need land at the present time.

The next is Tomales Bay.  A trip to Tomales Bay was to be included in my itinerary when recently on a trip to the coast, and would have been completed had I not met with an automobile accident on October 17 which has prevented further action.  It is my intention to take up this particular band at an early date and then submit a supplementary report with recommendations.

By Office letter of November 12, 1927, the matter of improved home sites for the Indians of Yosemite were considered, and we were advised that their problem belonged to the National Park Service (see File 51325-27).

At Loyalton the Indians are well provided for through the lumber companies, who have made it possible for the Indians to have a desirable site, and in many instances, assisted them in procuring suitable homes.  Consequently, Loyalton does not need further consideration at this time.

It was my intention to also visit Knights Ferry, but because of my injuries mentioned above I was unable to do so.  This locality will be visited at an early

Sacramento Indian Agency
Sacramento, California

December 8, 1923

Commissioner of Indian Affairs
Washington, D. C.

My dear Mr. Commissioner:

This will acknowledge receipt of your letter, under date of November 10, 1923, pertaining to purchase of land for homeless Indians in California. Kindly be advised that this matter has been given serious thought and careful consideration since the establishment of this Agency, October 1, 1923.

Since that date, rancherias at Likton, Sonoma County and Wilton in Sacramento County have been purchased and also rancheria at Buena Vista in Amador County has all but been acquired, and will probably be closed within a few days. Immediately prior to consolidation, former Superintendent Miller at Greenville and former Superintendent Carter at Tule River purchased rancherias at Redding and Strathmore. These purchases are of exceptional land, and are regarded as the "cream" of rancherias under this jurisdiction. But without aid from the Federal Government, the Indians are unable to make any progress in establishing themselves thereon. In fact, on only one of these tracts has there been a house built, the exception being at Wilton in Sacramento County, although there are many Indians that desire to establish homes on the various reservations.

Water systems are needed on each of these reservations. On the Wilton Reservation there is a good community well and pump, but a water system should be installed, and at the other reservations water systems should also be installed, not only those mentioned, but on practically all of the forty-five reservations of this jurisdiction.

In my opinion, we should not give consideration to the purchase of additional for landless Indians, unless we are assured that funds will be available for improvements thereon, and also for improvements of the tracts already purchased. If funds had been available for improvement of lands already purchased, much of the criticism pertaining to lands purchased, and bad conditions on the lands would probably have been eliminated.

This brings us to another phase of the work among homeless Indians of California, that is, the actual establishment of homes on the rancherias already purchased. Here, other problems present themselves, ours being that some of the Indians might not be able to repay the cost of construction of their home,



Commissioner   -2-                          December 6, 1928

while others would not be able to meet such expense.  In any event, probably 90%
would need assistance in some way in establishing their homes on the reservations.

There is another factor which should be given consideration, and that is pro-
vision for a need require consignment to rancherias where there is no need avail-
able.  ...e recommend to the Office the purchase of a tract in Mendocino County
for use of the Indians residing on the Pinoleville and other rancherias in this
locality.  The same failed to receive favorable action, because no applicable
funds were available.

In consideration of this matter, your attention is respectfully invited to
my letter of June 24, 1927, file 1668-27, having reference to landless Indians of
this jurisdiction, and wherein a list of seven bands were mentioned for which
provisions should probably be made.

The first is Iron.  In this connection, attention is invited to the fact
that land for this band is now under consideration and has been for several years,
same being held up because of the inability to procure a clear title.

The second is Buena Vista.  This tract is being given consideration, and pur-
chase of tract is now pending, but practically completed.

The next is Lower Lake.  From investigation it was found that this band does
not need land at the present time.

The next is Bodies Bay.  A trip to Bodies Bay was to be included in my itin-
erary when recently on a trip to the coast, and would have been completed had I
not met with an automobile accident on October 17 which has prevented further action.
It is my intention to take up this particular band at an early date and then submit
a supplementary report with recommendations.

By Office letter of November 12, 1927, the matter of improved home sites for
the Indians of Yosemite were considered, and we were advised that their problem
belonged to the National Park Service (see file 51325-27).

At Loyalton the Indians are well provided for through the lumber companies, who
have made it possible for the Indians to have a desirable site, and in many instances,
assisted them in procuring suitable homes.  Consequently, Loyalton does not need
further consideration at this time.

It was my intention to also visit Knights Ferry, but because of my injuries
received I was unable to do so.  This locality will be visited at an early

Commissioner    -3-                                    December 9, 1925

date and supplementary report submitted.

More land is really needed for the Indians at Stewart Point. The forty acres originally purchased is not sufficient. In order to take care of this band, it will be necessary to procure land adjoining or near, and we have made several attempts to get options of suitable property in that locality, but without favorable result.

The advisability and necessity of establishing homes on the various rancherias was mentioned in Inspector Trowbridge's report on this jurisdiction made in January and February of this year, and was discussed by me with him at the time, and further mentioned in my reply to said report under date of August 14, 1925.

With Season's Greetings, I am

                        Very sincerely,

                            L. A. Dorrington
                                 Superintendent

LAD:LF

# SAR EXHIBIT 93

Land Allotments  
40113-1915  
Homeless Ind.  
Calif.  
P.B.M.

(Ione Indians)

# DEPARTMENT OF THE INTERIOR

## UNITED STATES INDIAN SERVICE

Williams, Cal., Sept. 16, 1915.

Commissioner, Indian Affairs,

    Washington,

        D. C.

SEP 20 1915  
OFFICE OF INDIAN AFFAIRS  
RECEIVED  
40191 1/4

Dear Sir:

    Replying to that portion of Office letter of the 2d inst., relative to the purchase of 40 acres at the cost of $50 per acre from the Ione Coal & Iron Company, for a home for the Indians near Ione, noting that the Office desires to close this transaction at the earliest possible moment, have by this day's mail again requested Mr. Vanderlynn Stow, President of said Company, 608 Insurance Exchange Bld., San Francisco, Cal, to have prepared the required deed and abstract, forwarding same to me at the earliest possible moment, addressing me at Santa Rosa, Cal., which place will likely be the most convenient place for forwarding my mail.

    In this connection, beg to advise that on the 18th ult., just prior to my leaving San Francisco, I addressed a letter to Mr. Stow advising him that the Office had approved my recommendation for the purchase of this land, requesting that he have prepared the suggested deed and abstract, forwarding same to me at a early date. The fact that Mr. Stow is a very busy man and that likely the preparing of the abstract has required considerable time, suggests a

REPRODUCED AT THE NATIONAL ARCHIVES

-2-

delay in this matter.    I hope to receive from him, within
a very short time, the requisite deed and abstract, which will
be, when received, promptly forwarded to the Office, as re-
quested.

Very respectfully,

John J. Terrell
Special Indian Agent

JJT/VG

REPRODUCED AT THE NATIONAL ARCHIVES

D-1100

((Ione-Indians))

Land-Allot.        DEPARTMENT OF THE INTERIOR
Pur.Land Calif.            OFFICE OF INDIAN AFFAIRS:
119180-15
119306-15
  P B M

                        San Francisco,Calif.,Nov.30th,1915.

Commissioner Indian Affairs,

            Washington,D.C.

Dear  Sir:

            This is to advise that on receipt of carbon letter
from the Office of Nov.15,1915,to Mr.Vanderlynn Stow,which reached
me on the 22nd,instant at Merced,California,I advised Mr Stow that
on my arrival in his City I would call on him at the earliest
possible moment touching the proposed purchase of the 40 acres of
land for the above named Indians,and accordingly managed to meet him
on yesterday in the forenoon.

            It developed that the abstract covering title to a large body
of land,among which are embraced the 40 acres in question,has not
been brought down to date;in fact,for a number of years;however,
while with him he called up by phone his abstractor and requested to
be advised as to the approximate cost to bring the abstract down to
date.  In this connection he had to say,should it develop that to
bring same down to date would cost considerable,"in neighborhood of
the price of consideration  for the 40 acres", he"would not care to
meet the expense"; further saying that his impression was that the
cost would be only nominal,and that by last of this week he would
further advise me,further expressing the hope that by that time he
would be able to furnish me the abstract for remittance to the
Office.   I shall use every possible dilligence to secure and remit
to the Office this abstract at the earliest moment.

                        Very   respectfully,

                        John J. Terrell
                        Special Indian Agent.

REPRODUCED AT THE NATIONAL ARCHIVES (To ...-Indians)

Land-Allot.
119180-...
P B M

THE BOARD OF TRUSTEES
LELAND STANFORD JUNIOR UNIVERSITY
608 INSURANCE EXCHANGE BUILDING
SAN FRANCISCO

BUSINESS OFFICE

December 13th, 1915.

Mr. J. J. Terrell,
Special Indian Agent,
DEPARTMENT OF THE INTERIOR,
Sacramento, California.

Dear Sir:

It seems that I failed to send
you a written memorandum, as I had intended
to do, and now desire to confirm my tele-
phone of this morning to the effect that
the Abstract has gone to the Searcher at the
County seat of Amador County.   I will be
glad to notify you as soon as it is received
by my office here.

Yours very truly,
Vanderlynn Stow, President
IONE COAL & IRON COMPANY.

Ack.receipt 12/18/1915:
Copy retained: Referred to Commissioner Indians Affairs for informa-
tion.
Repsectfully,

John J. Terrell
Special Indian Agent.

VS/R

REPRODUCED AT THE NATIONAL ARCHIVES

(Ione Indians) (Amador)

THE BOARD OF TRUSTEES
LELAND STANFORD JUNIOR UNIVERSITY
608 INSURANCE EXCHANGE BUILDING
SAN FRANCISCO

Land-Allot
119180-15
P B M

BUSINESS OFFICE

December 20th, 1915.

Mr. John J. Terrell,
Special Indian Agent,
DEPARTMENT OF THE INTERIOR,
Santa Rosa, California.

Dear Sir:

Answering your letter of

December 18th, in the matter of Abstract

covering the proposed purchase of certain

forty (40) acres of land in Amador County:

I have received notice that

the Abstract has been returned from the

Searcher of Records run down to date and

is in the office of the Ione Coal & Iron

Company, 401 Crocker Building, San Francisco.

When you return to San Francisco

I shall be glad to cooperate with the idea

of winding this matter up.

Yours very truly,
Vanderlynn Stow, President
IONE COAL & IRON COMPANY.

(Copy retained: Respectfully referred to the Commissioner
Indian Affairs for information and such attention as may
be deemed necessary.

Special Indian Agent.

12/22/1915½

VS/R

# SAR EXHIBIT 94

REPRODUCED AT THE NATIONAL ARCHIVES

DEPARTMENT OF THE INTERIOR
OFFICE OF INDIAN AFFAIRS
WASHINGTON

Purchase-
Supplies
*42-198-16*
H S

# A AUTHORITY.

OFFICE OF INDIAN AFFAIRS
RECEIVED
MAY 18 1916
42198

*Authority is hereby granted for you to expend, during the fiscal year 1916,*
*from*

*(1)* "PURCHASE OF LANDS FOR LANDLESS INDIANS IN CALIFORNIA."  $2,000 00
*(2)* ........................................................................ $
*(3)* ........................................................................ $
*(4)* ........................................................................ $
*for the following :*

| OBJECT.<br>(HERE TABULATE SEPARATELY ITEMS FOR AGENCY, SCHOOL, POLICE, ETC., SHOWING PURPOSE OF EACH.)<br>(Do not crowd this space—use leading sheets, Form 5-202 b, if necessary.) | UNIT PRICE. | AMOUNT. |
|---|---|---|
| In the purchase of 40 acres of land in Amador County, California (described by metes and bounds) from the Ione Coal & Iron Company, for the use of 101 homeless California Indians, designated as the Ione Band, at not to exceed $50 per acre, .......................<br><br>PAYMENT TO BE MADE BY THE INDIAN OFFICE AFTER GOOD AND SUFFICIENT TITLE, FREE FROM ALL EN-CUMBRANCES, HAS BEEN PLACED ON RECORD AS BEING IN THE UNITED STATES' |  | 2,000 00 |
|  |  | **TOTAL, $2,000 00** |

FILED BY E. S. S.

To Secretary
MAY 17 1916

DEPT. OF THE INTERIOR
RECEIVED
MAY 17 1916
SEC'Y'S OFFICE

TO:
For signature
Commissioner of Indian Affairs,
(Title or name.)
Washington, D. C.
(School.)
........................................................
(Post office.)

HS

MAY 18 1916

*Approved :-*

*Assistant Secretary.*

## DO NOT WRITE IN THIS SPACE.

5-EWB-13

Fill in "The Superintendent" if a school superintendent; if not, insert name.

Any EXPLANATION OR JUSTIFICATION concerning this proposed expenditure must be made in a separate letter if space hereon be insufficient.

REPRODUCED AT THE NATIONAL ARCHIVES

## DEPARTMENT OF THE INTERIOR

### OFFICE OF INDIAN AFFAIRS
### WASHINGTON

Purchase-
Supplies
42198-16
H S

**A**

*Authority is hereby granted for you to expend, during the fiscal year 1916,
from*

(1) "PURCHASE OF LANDS FOR LANDLESS INDIANS IN CALIFORNIA," $2,000 00
(2) .................................................................................... $
(3) .................................................................................... $
(4) .................................................................................... $
*for the following :*

| OBJECT. | UNIT PRICE | AMOUNT |
|---|---|---|
| In the purchase of 40 acres of land in Amador County, California (described by metes and bounds) from the Ione Coal & Iron Company, for the use of 101 homeless California Indians, designated as the Ione Band, at not to exceed $50 per acre, ................... |  | 2,000 00 |
| PAYMENT TO BE MADE BY THE INDIAN OFFICE AFTER GOOD AND SUFFICIENT TITLE, FREE FROM ALL EN- CUMBRANCES, HAS BEEN PLACED ON RECORD AS BEING IN THE UNITED STATES" |  |  |
|  | TOTAL, | $2,000 00 |

OFFICE OF INDIAN AFFAIRS
RECEIVED
MAY 18 1916
42198

MAY 1 8 1916

(Signed) Bo Sweeney.

TO:

Commissioner of Indian Affairs,
(Title or name.)

Washington, D. C.
(School.)

(Post office.)

COPY.—To be filed by the dis-
bursing officer with proper voucher
in his copy of memorandum ac-
count.

**3**

This sheet to be detached and retained by Disbursing Officer.

5-EWB-13

6—1660

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

REPRODUCED AT THE NATIONAL ARCHIVES

Land-Allotments
43198-16
P B M

MAY 4 - 1916

Authority.

### MEMORANDUM TO PURCHASE DIVISION

Please procure authority to expend $2,000 in the purchase of land for homeless California Indians, as follows:

### Fund: Purchase of Lands for Landless California Indians.

In the purchase of 40 acres in Amador County, California (described by metes and bounds) from the Ione Coal and Iron Co., for the use of 101 homeless California Indians designated as the Ione Band,
@ $50 per acre----------------------------------$2,000.

NOTE: Payment to be made by the Office, after good and sufficient title free from all encumbrances has been placed on record as being in the United States.



AUTHORITY

OFFICE OF INDIAN AFFAIRS
RECEIVED
MAY 18 1916
42198

**\* \* \* \* \* \* \* \* \***

Justification.

In justification, see attached Departmental approval, dated May 2, 1916.

PLEASE MAKE AUTHORITY FOR PAYMENT BY THE OFFICE , and send to Land-Allotments when procured, so that the purchase may proceed in the usual manner.

RECEIVED
PURCHASE DIVISION

_____
Chief Land Division.

REPRODUCED AT THE NATIONAL ARCHIVES

5-202

DEPARTMENT OF THE INTERIOR

OFFICE OF INDIAN AFFAIRS

WASHINGTON

Purchase-
Supplies
42-198-16
H S

# AUTHORITY.

AUTHORIZED

OFFICE OF INDIAN AFFAIRS
RECEIVED
MAY 18 1916
42198

*Authority is hereby granted for you to expend, during the fiscal year 1916
from*

(1) "PURCHASE OF LANDS FOR LANDLESS INDIANS IN CALIFORNIA." $2,000 00

(2) ........................................................... $

(3) ........................................................... $

(4) ........................................................... $

*for the following:*

| OBJECT.<br>(ITEMS TABULATE SEPARATELY ITEMS FOR AGENCY, SCHOOL, POLICE, ETC., SHOWING PURPOSE OF EACH.)<br>(Do not crowd this space—use leading sheets, Form 5-202 b, if necessary.) | UNIT PRICE. | AMOUNT. |
|---|---|---|
| In the purchase of 40 acres of land in Amador County, California (described by metes and bounds) from the Ione Coal & Iron Company, for the use of 101 homeless California Indians, designated as the Ione Band, at not to exceed $50 per acre, ..................... | | 2,000 00 |
| PAYMENT TO BE MADE BY THE INDIAN OFFICE AFTER GOOD AND SUFFICIENT TITLE, FREE FROM ALL EN-CUMBRANCES, HAS BEEN PLACED ON RECORD AS BEING IN THE UNITED STATES | | |
| | TOTAL, | $2,000 00 |

To Secretary

DEPT. OF THE INTERIOR
RECEIVED
MAY 17 1916
SEC'YS OFFICE

MAY 17 1916

TO:

For signature
Commissioner of Indian Affairs,
(Title of name.)*

Washington, D. C.
(School.)

(Post office.)

HS  V  Pal  M

MAY 18 1916

*Approved:*

*Assistant Secretary*

## DO NOT WRITE IN THIS SPACE.

5-EWB-13

* Fill in " The Superintendent " if a school superintendent; if not, insert name.

# SAR EXHIBIT 95

b-110:

(Ione-Indians)   (Sima Vista Rancheria)

Land-Allotments
118180-16
119306-15.
  P B M.

Los Angeles, Calif.Feby.10/1916.

Mrs Lena Oliver,

Ione,Calif.

Dear Madam:    Your letter of Jan. addressed to Mr.C.H.Asbury,
Special Indian Agent of Reno,Neva,wherein you express an earnest
as commendable desire to secure a permanent home with the Ione
Indians,has been referred to me for further reply than his letter to you
of January 29th,last,copy of which has been kindly furnished me with
your letter.

Replying beg to advise you  that it now appears the
pending purchase of 40 acres of land to include the present village
location of the Ione Indians will be soon be consumated;in that deed
and abstract of title has been forwarded to the Indian Office at
Washington for examination and approval of sufficient title.

I feel reasonably certain that this proposed purchase will soon
be closed.  It appears from the census of the Ione Indians compiled
by me last May through the kind assistance of Charley Maximo and some
few other Indians of the band that your name does not appear,unless
you are the wife of either John or Casus Oliver,then reported as liv-
ing up at Jackson,but belong properly to the Ione band.

This census indicates a total of 101 Indians,of which 62 then
resided at Ione and near there,10 at Jackson and 29 at Richey.
If you are not the wife of either John or Casus Oliver,but really
belong to the Ione band of Indians,am sure the omission of your name
has been an unintentional oversight,and therefore,you would be entitl-

REPRODUCED AT THE NATIONAL ARCHIVES

Page 2

ed to a home on this land,if purchased by the United States of
america for a permanent home for these Indians,in which event you
would be permitted  to equal rights and privilages of the other
Indians of the Ione band.

As soon as this proposed purchase is fully consumated,which should
be within the next 6 weeks or 2 months,I shall take great pleasure of
accordingly advising  Charley Maximo,Chief of the Ione Band.

By reason of the very small appropriation by the former Congress
for the purpose of buying land for the landless Indians of California,
and the very hight price of land in this State and the large number of
landless and needy Indians,but small tracts only can at this time
be purchase by the Government.

                              Very  respectfully,

                                   Special Indian Agent.


(For information Commissioner Indian Affairs)

XX

# SAR EXHIBIT 96

REPRODUCED AT THE NATIONAL ARCHIVES

Census of Ione and ... potty Indians

```
Capt. Charlie Maximo, recently elected Chief of the band    1.
Mrs.    "      "      wife of Capt.Charlie                   1.
   An orphan girl living with Capt.Charlie, 14 years old    1.
Capt.Charlie's sister and 3 grandchildren                   4.
Ione Alex and child Pearl                                   2.
Alex Blue and wife          William 31,Frank 29,            2.
Six children of Wm.Frank,viz:Johny 19,Fenice 17,Mary 21,
and Annie 31,                                               6.
George  Clifford                                            1.
Mrs Geo. Clifford & twin boys,Clrance & Harry 15 yrs.       2.
Mable Clifford  12 years                                    1.
Albert Clifford and wife                                    2.
Jess Clifford 25 years old                                  1.
Henry  Miller & wife & one child 15 yrs old(Frank           3.
Sam Howdy and wife and three children                       5.
Ruby  Castino 9 years old                                   1.
Alex John & wife and three ch.Billy,Mary & Lucy             5.
Mrs Comus Norman & 2 children                               3.
  Charley Kellog & wife & 1 child                           3.
  Mrs West, Andy West and Lizzie West,                      3.
Isaac Howdy & wife and 1 child 8 years old                  3.
Young Dony & wife and 1 child,boy 5 years old               3.
Wm. Dony                                                    1.
Billie Joe wife and three girl children                     5.
  An orphan child 5 years old living with Billy Joe         1.
John Casteno and Andrew Casteno                             2.   62.
            At Jackson belonging to the Ione Band.
Sallie Jackson & sister                                     2.
Joe Castatupe and wife                                      2.
John Jack and wife                                          2.
Four children belonging to the Jack family                  4.   10.
            At Richey belonging to the Ione Band.
Allen Jimison and Andy Jimison                              2.
Jeff Jimison and 2 children,Gladys  and Enis                3.
Allie Ray & 1 child(Cleveland 10 yrs.old,                   2.
Mrs Mamie Clifford                                          1.
John Powell,wife and 2 children                             4.
Frank Powell,wife and 3 stepchildren                        5.
John Oliver,wife and 3 children                             5.
Casus Oliver and wife                                       2.
Lucy and Joseph Oliver                                      2.
C.Brown                                                     1.
Dan Cain and mother                                         2.   29.
                                        Total.                  101.
```

OFFICE OF INDIAN ... RECEIVED MAY 17 1915 54777

Respectfully submitted *John J Terrell*

*Special Indian Agent.*

5/11/1915

Exhibit AA

# SAR EXHIBIT 97

REPRODUCED AT THE NATIONAL ARCHIVES
0-1.00

(Ione-Indians)        (Amador Co.,Calif.)

## DEPARTMENT OF THE INTERIOR

Copies of
letters from        UNITED STATES INDIAN SERVICE
Ione Indians:

(COPIES)

"Ione City;
December 28, 1916.

FEB    1917
13371

Mr. J.J.Terrell,
    Dear Sir.

        I am writing you a few lines to ask you if our
land was purchased at Ione. We are all getting anxious to know
the real circumstances:

        We heard once that we got the land and that we had to go
ahead and measure it off.  This was told to a few of the people
and lots of us wasnt sure wether it could be so or not because
we only heard a part of it and it seemed as though it wasnt
explained as it should have been.

        There have been a number of the people ask me to write you
and find out the real facts.  Especially those which dosent
understand english or writing.  So being that we are entilled
to some of the land providing we are to have it.

        We thought it would be a good policy to write and find out
for ourselves.

        Well as I have spoke of all that is necessary
I must close my letter hoping to receive an early reply from you
        I remain as your truly.
                Mr. Albert Clifford,
        Box 25.           Ione City, Amador Co.
                                California."


"Indians Johny Oliver, Ione Calif.
                    1/31/17.

Mr. John J. Terrell,
Dear  Sir:            this
        AMI writing you a letter for a information  for we have
home here at Buna Vista  rased here and worked out all out life
and we see that we can not make money by working out, make good
living ite all. for we want to know if we could baro money from
government to ranche with, to rent place here at Jackson Valley
    for government wants to help out Indians here at Ione.
        So we want help from goverument this way.
    I hope you write me a letter rightaway for I want to know ho to
write to, to get this money from governmahh
    ho do I have to ask  if  you are write me letter right away
then I will tell you how much I want  we want it for five years
if he want intrest to be pay on  we will pay it  an  we can give
report ever month if you want us to,  we to ranche  and do right
    we know how to do it but know money to do with.
                Very respectfully
                    Indian
            Johny Oliver Louie Oliver
                        Ione
R.F.D.1(Box 59) Amador Co. California.

                                Exhibit FF

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

# SAR EXHIBIT 98

REPRODUCED AT THE NATIONAL ARCHIVES

4

5  1100

JDRESS ONLY THE
COMM·SSIONER OF INDIAN AFFAIRS

Land-Allots.     **DEPARTMENT OF THE INTERIOR**
108465-14
Part 8.        OFFICE OF INDIAN AFFAIRS.
P B M

WASHINGTON

FOR FILE

JAN —4 1917

The Honorable,

The Secretary of the Interior.

Sir:

On July 10, 1916 (D-40059), the Solicitor returned
to this Office an abstract in two volumes which had been
referred to him for examination as to the validity of title
to forty acres desired to be purchased from the Ione Coal and
Iron Company at a cost of $2,000. for the benefit of one hundred
and one landless California Indians.

Authority for this purchase was approved by the
Department May 18, 1916.

The reason the abstract was returned was that it
covered an area of approximately 48,000 acres, including the
forty acre tract in question, and was too voluminous to permit
of examination by the Solicitor's office, in view of the amount
of work then before it. It was suggested that a separate ab-
stract be procured covering only the forty acres.

Through Special Commissioner J. J. Terrell this Office
took the matter up with the president of the Ione Coal and Iron
Company. Special Commissioner Terrell reports that the only
abstractor with whom that company is willing to leave its
abstract for recompilation is unbonded and would probably be

unsatisfactory. The most serious difficulty to be encountered in the compilation of an independent abstract would', of course, be to clearly locate the forty acres in question with respect to the other lands covered by the abstract.

However, in view of the fact that there are one hundred and one Indians in this band and the site proposed to be acquired embraces their ancient village home, this Office is particularly anxious to have this purchase made.

Under all the circumstances the most feasible solution appears to be to have the title insured, which, together with the covenant of warranty in the deed, should be adequate to protect the United States beyond the period of the statute of limitations.

Should the Department agree with this view, it is recommended that this Office be authorized to proceed accordingly.

Respectfully,

EPHauke

Chief Clerk.

Inc. 29367.

Approved: JAN -9 1912

Assistant Secretary

-2-

REPRODUCED AT THE NATIONAL ARCHIVES

26716

Land-Sales
107465-1914
P  B  M

Mr. J. J. Terrell,

    Special Commissioner.

JAN 16 1917

My dear Mr. Terrell:

    Enclosed is a copy of Departmental approval
dated January 9, 1917, in connection with the desired
purchase of forty acres from the Ione Coal and Iron
Company, authority for which was approved by the De-
partment May 18, 1916.

    You are directed to get in touch with one
or more of the title insurance companies of California
with a view to ascertaining the terms and contracts
of insurance which they would be willing to enter into
in such a case and after you have obtained this information
you will report it immediately to the Office for further
consideration.

                Very truly yours,

1-HGG-11

            (Signed) C. F. Hauke
             Chief Clerk.



# Title Insurance and Trust Company

INCORPORATED DECEMBER 20TH 1893.

CAPITAL AND SURPLUS $2,000,000.

## Title Insurance Building

**DIRECTORS:**
WM.H.ALLEN,JR.,PRESIDENT. H.S.HELLMAN, VICE PRESIDENT.
O.P.CLARK, SEC'Y & TREAS. H.W.O'MELVENY, VICE PRESIDENT.
W.M.CASWELL. O.F.BRANT, MANAGER.
WM.R.STAATS. WM.H.BURNHAM.
DR.C.B.JONES. H.M.ROBINSON.
H.C.ALLEN.

LAW DEPARTMENT.
LEE C.GATES, CHIEF COUNSEL.
ASSOCIATE COUNSEL.
M.P.FRASIER, J.R.HASTINGS.
C.H.BROCK.
CONSULTING COUNSEL.
O'MELVENY, STEVENS & MILLIKIN

## LOS ANGELES, CAL.

CABLE ADDRESS "TITLE TRUST"

February 1st, 1917.

OFFICE OF INDIAN AFFAIRS
RECEIVED
FEB 8 - 1917
13371

J. J. Terrell, Esq.,
610 West 56th Street,
LOS ANGELES, California.

Dear Sir:-

Replying to your inquiry as to the charge to be made by this Company for issuing its Policy of Title Insurance upon a tract of about forty acres of land in Amador County proposed to be purchased by the Federal Government from the Ione Coal and Iron Company, a California corporation, of which Mr. Vanderlyn Stow of San Francisco is President, the result of such investigation as we have been able to make is that as reported to us by Mr. Stow the tract is along the exterior boundary line of a private grant originally comprising about 48,000 acres of which the Ione Coal and Iron Company owns somewhat in excess of 30,000, that there is some difference disclosed by the records as to the true ranch boundary, that is to say, that the ranch line as platted and and the government surveys of the adjoining public land do not exactly coincide as to lines. That an abstract has been prepared by a local abstracter in Amador County which has been brought down to within a year or two and which covers the entire holding of the corporation.

It will of course be necessary to follow the title of the larger tract to determine the status and ownership to the smaller parcel and it is somewhat more difficult to examine the title to a tract of land in a distant County as many local features which bear upon the situation are not disclosed by the bare record. We feel, however, that this is a case where by the use of a Policy of Title Insurance the transaction perhaps can be closed and further delay avoided. This Company will issue its Policy of Title Insurance in its usual form based upon an examination of the abstract and charge therefor the sum of $50.00. This Policy of course will show as exceptions to the title such matters as may be disclosed upon an examination of the abstract and will contain a statement in substance to the

(For information Commissioner Indian Affairs. Copy retained for my files. Terrell)

#2

effect that it is based upon examination of the abstract
or perhaps it would be better to show as one of the things
not insured against matters of record affecting the title not
disclosed by the abstract.     If, however, the officers of
the department feel that they desire a Policy based upon
an examination of the record, it will be necessary for us to
send one of our men to Amador County to make the examination
there.    In that case our fee would be $150.00 for the Policy
and in addition thereto the actual travelling and subsistence
expenses of our representative during the time he might be
absent.    This might reach $100.00 or probably it would not
exceed $75.00 - perhaps be less.    In explanation of the
difference in price for the two Policies, it may be said that
the officers of this Company have never felt that they would
be justified in issuing a Policy without an actual examination
of the public records affecting the title to the property
described therein unless the Policy was qualified so as to show
upon its face that it was based upon the work of others in
compiling an abstract.

As above indicated it probably will be found that
the abstract in existence was compiled some little time ago,
perhaps two years or more.   It will be necessary in some way to
arrange to cover the period of time between the date when the
abstract was certified and the closing of the transaction.

Enclosed herewith you will find a specimen
form of our Purchasers Policy.   This is used in cases where
insurance runs to a prospective purchaser.   We also have a form
of Owners Policy which would only be used in case the examination
was carried down to and included the passing of title into the
new owner, for which ordinarily an additional fee is charged.
We would not insist upon the additional fee in this case.   We also
issue when required a Settlement Report based upon an examination
of the title or abstract as the case may be which is submitted
to the parties pending the conclusion of other negotiations
and which shows the condition of title at its date and is used
as a basis for the closing of the transaction.

This is written you in accordance with your request
at our late interview and if the authorities should conclude
to use this form of evidence of title, we will undertake to
handle the work as expeditiously as possible and believe that
title insurance will be found a most convenient form of showing
clearly and plainly the exact condition of the title.

Very respectfully,

TITLE INSURANCE AND TRUST COMPANY

BY   N. W. Thompson
Title Officer.

HWT/ILA

REPRODUCED AT THE NATIONAL ARCHIVES

5-1100
26716                                                                        3

Lan.-Sales
107465-14          (Ione-Indians)    (Amador Co.,Calif.)
Part 8              DEPARTMENT OF THE INTERIOR
   P B M
                        UNITED STATES INDIAN SERVICE

                                    Los Angeles.,Calif.,Feby.3, 1917.

Commissioner Indian Affairs,

          Washington, D. C.

Dear  Sir:

          In reply to your favor of the 16th, ultimo, above

reference, have the honor to herewith inclose letter of Mr. N.

W. Thompson, Title Officer of the Title Insurance & Trust Co.,

Los Angeles, California, and specimen form of Purchasers Policy

                                              title to
of said Company, relative to the proposed  insurance of the

40 acres of land in Amador County, California, desired as the

permanent village home of the above named Indians.

          Immediately on receipt of Office letter of the 16th,ult.

I got in touch with Mr. Thompson, who advised me that he was

just on the eve of departing on a business trip to San Francisco

and would while there take the matter up with Mr. Vanderlynn

Stow and on his return further advise with me in the premises;

however, it was necessary that he advise with his Board after

his return before specific propositions,as are set out in his

inclosed letter, could be given, causing my making three visits

to his office on as many different days.

          My information is that these Title Insurance Companies

here in California have adopted about the same rules or proceed-

ure, as well as rates, for such insurance, therefore, quite likely

nothing would be gained in taking this matter up with other com-

panies.  It is evident that to take the subject up with other

companies before  definite answer  would be given the company's

Page 2.

# DEPARTMENT OF THE INTERIOR

## UNITED STATES INDIAN SERVICE

agent or attorney, as was the case with Mr. Thompson's Company, would make similar investigation, therefore, have deemed advisable not to further delay the possible closing of this important purchase in an effort to secure other propositions from other companies. The two inclosed letters from members of the Ione band of Indians indicate a keen desire and growing impatience as to the result of this proposed purchase among these Indians.

I leave here Monday, 5th, instant, for points to north and northest, working as far in localities indicated as road conditions, on account of unusual slow snow melt, will permit.

On account of these conditions cannot at this time indicate with any degree of certainty progress I may make or with safty designate a post office address ahead. For the present deem it advisable for my mail to come to Los Angeles, ¢.528 Federal Bldg., as I anticipate being able to sooner reach that Office with forwarding orders than other points. The many daily trains in and out of here and the promptness in the kindly forwarding of my mail from 528 Federal Engineering Department will, I am sure, prove best for such time as I may remain south of the south line of Kern County, California. At earliest possible date hope to reach the Paiute Indians In Kern County, reference "85572-16, Aug.17, 1916."

Very respectfully,

John J Terrell

Special Comr. Indians California.

AT THE NATIONAL ARCHIVES

25716.       5-1100
                    (Ione-Indians,)        (Amador Co.,Claif.).

Land-Allot.          DEPARTMENT OF THE INTERIOR
108465-14
Part 8               UNITED STATES INDIAN SERVICE
P B M

Los Angeles, Calif., Feby. 5, 1917.

Mr. John Oliver, (Indian)
Ione, Amador Co., Calif. -

Dear Sir:

    Answering your letter of January 31, 1917, telling me that you and some of your people  desire help from the Government in way of a loan for a number of years, this is to suggest that you take the matter up with your Superintendent.

    The Congress of the United States has made a limited appropriation of money, called a Reimbursable Fund, to be loaned to such Indians as have proven themselves to be good, sober and industrious, for a period of four years with interest, payable back to the Government annually and semi-annually.

    Will suggest that you take this matter up with your local Indian Superintendent who will, I am sure, look into your cases and for all who are every way worthy take same up with the Indian Office at Washington and likely secure you good, hard-working  and sober Indians some little assistance.

    I am very glad indeed to learn from your letter that you and your people are growing ambitious and desire to better your condition in life.  It is likely that I will reach your place as early in the spring as roads will permit of me reaching there by auto, among other things, having in view the allotment of the 40 acres of land at your Buna Vista ancient village home among your people, the purchase of which now seem almost an assured fact.

    I shall be glad to meet you when I reach there, as well as all your people.

Truly, your friend,

Special Comr. Indians California.

(For information Commissioner Indian Affairs.)

OFFICE INDIAN AFFAIRS
RECEIVED
FEB 8 - 1917
13371



REPRODUCED AT THE NATIONAL ARCHIVES

REPRODUCED AT THE NATIONAL ARCHIVES

REPRODUCED AT THE NATIONAL ARCHIVES

26716.

8-1100
(Ione-Indians)      (Amador Co.,Calif.)

Land-Allot.   **DEPARTMENT OF THE INTERIOR**
108468-14
Part 8        UNITED STATES INDIAN SERVICE
  P B M

Los Angeles, Calif.,Feby.6, 1917,

Mr. Albert Clifford,(Indian)
Ione City, Amador Co. Calif.,

My Dear Sir:

I would have answered your letter of December 28th,

sooner but have been waiting further progress in efforts to close

the deal by the Indian Office for 42 acres that embraces the

old home of your people, known as Buna Vista.

The corporation offering to sell this land to the Government
declined to furnish the required abstract of title and this
40 acres being a part of the entire corporate ranch holdings
of about 48,000 acres having an abstract evidencing its title
of more than 1000 pages the Solicitor at Washington who passes
on the title having so mch work before him could not take the
time to examine title-this long abstract of tile-

It has been concluded to have and Insurance Guaranty Title
Company insure the title.

I am by mail today forwarding to the Office at Washington
letter from such Insurance Company here proposing to insure
this title, which proposition seems to be the last and closing
link or transaction in the purchase of this land.

I feel reasonably certain this purchase will soon be made
and that your people will be forever quited in their old ancient
village home.

As soon as I may be advised of the closing of
this purchase will write you that you may inform all your people.

Hoping to be able to write you soon telling you this land
has been purchased for all the Indians belonging to your band,

I am,

Very truly,your friend,

Special Comr.Indians of California.

(For information Commissioner Indian Affairs.)

REPRODUCED AT THE NATIONAL ARCHIVES

6-1.00

(Ione-Indians)        (Amador Co.,Calif.)

# DEPARTMENT OF THE INTERIOR

Copies of
letters from      UNITED STATES INDIAN SERVICE
Ione Indians:
(COPIES)

"Ione City;
December 28, 1916.

OFFICE ...
... ...
FEB 8 - 1917
13371

Mr. J.J.Terrell,
Dear Sir.
            I am writing you a few lines to ask you if our
land was purchased at Ione. We are all getting anxious to know
the real circumstances:
            We heard once that we got the land and that we had to go
ahead and measure it off. This was told to a few of the people
and lots of us wasnt sure wether it could be so or not because
we only heard a part of it and it seemed as though it wasnt
explained as it should have been.
            There have been a number of the people ask me to write you
and find out the real facts. Especially those which dosent
understand english or writing. So being that we are entilled
to some of the land providing we are to have it.
            We thought it would be a good policy to write and find out
for ourselves.
                        Well as I have spoke of all that is necessary
I must close my letter hoping to receive an early reply from you
I remain as your truly.
                        Mr. Albert Clifford,
            Box 25.              Ione City, Amador Co.
                                          California."


"Indians Johny Oliver, Ione Calif.
1/31/17.

Mr. John J. Terrell,
Dear Sir:              this
            AMI writing you letter for a information  for we have
home here at Buna Vista  rased here and worked out all out life
and we see that we can not make money by working out, make good
living ite all. for we want to know if we could baro money from
government to ranche with, to rent place here at Jackson Valley
for government wants to help out Indians here at Ione.
            So we want help from goverment this way.
            I hope you write me a letter rightaway for I want to know ho to
write to, to get this money from governmanh
            ho do I have to ask  if  you are write me letter right away
then I will tell you how much I want  we want it for five years
if he want intrest to be pay on  we will pay it  an  we can give
report ever month if you want us to,  we to ranche  and do right
we know how to do it but know money to do with.
                        Very respectfully
                        Indian
                  Johny Oliver Louie Oliver
R.F.D.1(Box 59) Amador Co. California.
                        Ione

Exhibit FF

AT THE NATIONAL ARCHIVES

REFER IN REPLY TO THE FOLLOWING:

D 1100

ADDRESS ONLY THE
COMMISSIONER OF INDIAN AFFAIRS

L-Allot.
108465-14
  P B M

# DEPARTMENT OF THE INTERIOR

## OFFICE OF INDIAN AFFAIRS

### WASHINGTON

COMPTROLLER
OF THE TREASURY.    MAR 14 1917  RECEIVED
APR 5 - 1917

MAR 16 1917

RECEIVED

Dear Mr. Comptroller:

This Office has the honor to enclose herewith
the record in connection with a question  presented
to you for consideration by Assistant Secretary
Sweeney's letter of March 12, 1917.

It relates  to the desired purchase of  title
insurance covering lands being purchased for the
benefit of certain landless Indians of  California.

Please return  the said record after it has
served your purpose.

Respectfully,

Chief  Clerk.

The Comptroller

Of the  Treasury.

Inclosure 10295

INTERIOR DEPARTMENT                            TREASURY DEPARTMENT
              April 9, 1917.                    Office of Comptroller
Copy for information and guidance                   Washington
of                                                  April 4, 1917.

*Laud*

              Chief Clerk.

The Honorable                                      APR 12 1917
     The Secretary of the Interior.

Sir:                                               36541

     I have with inclosures your letter of March 12, 1917, as follows:

     "I have the honor to inclose herewith a letter received from the Office
of Indian Affairs, together with the record in the case of a desired purchase
of 40 acres of land in California for the benefit of the landless Indians of
that State. This involves the purchase of title insurance, which, in view of
all the circumstances, is necessary if the land is to be acquired for the In-
dians and I regard it as important that it be acquired for them.
     "I will appreciate it if you will give me your views on the questions
presented in the Indian Office letter at the earliest practicable date."

     The inclosed letter from the Office of Indian Affairs, dated March 9,
1917, is in part, as follows:

     "On January 9, 1917, the Department approved the recommendation of this
Office that it be authorized to proceed to have the title insured in connec-
tion with the purchase of 40 acres of land for landless California Indians.
     "The necessity for following that procedure, as outlined to the Depart-
ment, is that the only abstract of title available is one previously loaned
us by the grantor, covering about 48,000 acres, of which the 40 acres was a
part, so that to trace title it would have been necessary to examine the title
to the 48,000 acres and the amount of work before the Solicitor's office did
not permit of such an examination being made there. This Office was unable
to procure the compilation of a satisfactory independent abstract covering the
40 acres. Special Commissioner Terrell, who negotiated this purchase for the
Indians, says that it is probably the most important one of all he has nego-
tiated, in that it embraces their ancient village home and said Indians are
in a very needy condition. Apparently, therefore, if the Government can not
protect itself by insuring the title this purchase must fail.
     "Pursuant to the above Departmental approval, Mr. Terrell communicated
with the Title Insurance and Trust Co. (He reports that it is his information
that California Title Insurance companies have adopted the same rules and
rates and that quite likely nothing would be gained by taking the matter up
with other companies.) The Title Insurance and Trust Co., of Los Angeles,
California, submitted two proposals as follows:
          "1. To issue a policy of title insurance in the usual form, based
     upon an examination of the abstract, for $50. This policy would show as
     exceptions to the title insured, all defects disclosed by the abstract
     and such insurance would not cover any matter of record, not disclosed
     by the abstract.

"'2. To make a personal examination of the record and issue a policy based upon such examination without qualifying it to show that it is based upon the work of others. The fee in this case would be $150 for the policy in addition to the actual travelling expenses and subsistence of the examiner not exceeding $100, or in all $250.'

"This Office would therefore like to be advised whether on the facts as disclosed by the attached record payment could be made from the fund for the purchase of lands for California Indians, for the services of the Title Insurance and Trust Co., including a policy of title insurance on the land to be purchased. The fund referred to is appropriated by the act of May 18, 1916 (39 Stat. L., 123, 132), in the following language:

"'For the purchase of lands for the homeless Indians in California, including improvements thereon, for the use and occupancy of said Indians, $10,000, said funds to be expended under such regulations and conditions as the Secretary of the Interior may prescribe.'"

Since the receipt of the above letters a file of correspondence relating to the same subject was received from the Office of Indian Affairs covering a period from May, 1914, down to about the present time.

Among the papers submitted with this correspondence appears a plat of the 40-acre tract proposed to be purchased as a part of the "Arroyo Seco Rancho," which is elsewhere shown to contain 48,857.52 acres, and a partly executed deed from "Ione Coal and Iron Company," party of the first part, conveying the said 40-acre tract to the United States, party of the second part, containing a special warranty in the following terms:

"And the said party of the first part covenants to warrant and defend the said premises against all persons claiming by, through, or under said company."

If an abstract of title to the land sought to be purchased is deemed necessary and can be procured without insurance of the title the expense of procuring the same may be paid from the appropriation available for the purchase (3 Comp. Dec., 216; 9 id., 569; 23 id., 266).

I do not think the approval of title by the Attorney General is required under section 355 of the Revised Statutes which provides:

"No public money shall be expended upon any site or land purchased by the United States for the purposes of erecting thereon any armory, arsenal, fort, fortification, navy yard, custom house, lighthouse, or other public building, of any kind whatever, until the written opinion of the Attorney General shall be had in favor of the validity of the title, . . ."

-2-

No purpose of erecting any of the structures enumerated in the sec-
tion is entertained, but only occupancy by said Indians as homes.

The policy of the Government has been adverse to marine, fire, and other
forms of insurance, and I do not think the case presented warrants a departure
from the policy.  Insurance would not improve the title nor is it in any sense
necessary.

The broad discretion given to the Secretary, in the appropriation for the
purchase of the land in question, "said funds to be expended under such regu-
lations and conditions as the Secretary of the Interior may prescribe," in-
cludes his authority to pass upon the validity of the title, and to purchase
without an abstract or other usual evidence in a case where he deems it ad-
visable.

                        Respectfully,
                            W. W. WARWICK,
                                    Comptroller.

-3-

NATIONAL ARCHIVES

REFER IN REPLY TO THE FOLLOWING:

ADDRESS ONLY THE
COMMISSIONER OF INDIAN AFFAIRS

Land-Allot
108465-14
36541-17
P B M

# DEPARTMENT OF THE INTERIOR

## OFFICE OF INDIAN AFFAIRS

### WASHINGTON.

The Honorable

The Secretary of the Interior.

APR 20 1917

Sir:

On May 18, 1916 the Department approved authority for the purchase of 40 acres from the Ione Coal and Iron Co., for $2,000.00, for the benefit of 101 landless California Indians.

The proponent company is unwilling to furnish a separate abstract covering the land in question, but it did loan to this Office its abstract covering 48,000 acres of which the 40 desired to be purchased is a part. The amount of work before the Solicitor's Office did not permit of the examination of that large an abstract, and this Office was unable to procure the compilation of a satisfactory independent abstract relating only to the 40 acres desired to be purchased. On the recommendation of this Office, therefore, on March 12, 1917 the Department presented the case to the Comptroller for his opinion as to whether under those circumstances a policy of title insurance might be purchased in order to protect the interests of the Governement and to make possible the purchase of this land, which is reported to be the most important purchase of all those which have been and are being made for the landless Indians of California.

On April 4, 1917 the Comptroller handed down his decision, stating that the policy of the Government has been adverse to marine, fire, and other forms of insurance, and that he does not think the case presented warrants a departure from that policy. The Comptroller further states that the broad discretion given the Department in the appropriation for the purchase of the land in question

"said funds to be expended under such regulations
and conditions as the Secretary of the Interior may
prescribe", includes authority to pass upon the valid-
ity of the title and to purchase without an abstract
or other usual evidence, in a case where he deems
it advisable (see the Act of May 18, 1916, 39 Stat.
L. 123-132).

In view of the foregoing, this Office has
the honor to recommend that it be authorized to accept
the original deed covering the 40 acres in question,
after it is properly signed, without an abstract of
title, and that reliance be placed solely on the
warranty proposed to be inserted in said deed, as
follows:

And the said party of the first part
covenants to warrant and defend against
all persons claiming by, through, or under
said company."

The unsigned copy of the proposed deed will
be found in the enclosed record, and if this recom-
mendation meets with the approval of the Department,
the company will be called upon to furnish a properly
signed original deed which will be recorded, and pay-
ment made by Treasury warrant in the customary manner.

Respectfully,

*C.D. Hauke*

4-MR-17          Acting    Assistant Commissioner.

Approved and returned to the Commissioner
of Indian Affairs with authority to proceed as recom-
mended.

X X

Secretary.

L-36541                    -2-

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

Land-Allot
108465-14

P B M



The Title Insurance and Trust Co.,

 Cor. Franklin and New High Sts.,   APR 20 1917

  Los Angeles, Cal.

Gentlemen:

  Your letter of February 1, 1917 addressed
to J. J. Torrell, relative to title insurance cover-
ing land in Amador County, Cal., was referred to this
Office for consideration.

  On April 4, 1917 the Comptroller handed
down a decision to the effect that the policy of the
Government has been adverse to marine, fire, and other
forms of insurance, and that he does not think the
present case warrants a departure from that policy.

  The propositions submitted by you for the
insurance of the land in question cannot therefore
be accepted. The Office wishes to thank you for
furnishing its agent with information and estimates
in the premises.

   Very truly yours,

    (Signed) C. F. Emile

4-MR-16   Acting  Assistant Commissioner.

(Copy to J. J. Terrell, Inspector)

# SAR EXHIBIT 99

Land-Allots.
108466- 14
    T D M

Greenville, Calif.

May 18th, 1922.

Hon.Chas.B.Henderson,
Reno, Nevada.

My dear Mr.Henderson:-

Upon a recent visit
to your Office at Reno, it was promised
that the Abstract for the Ione Purchase
would be forwarded to us within one week.
We would appreciate very much your prompt
attention in this matter.

Thanking you, we are

Very truly yours,

Greenville Indian Agency

By
        Land & Lease Clerk.

5-FWC-18



W. B......... .....IVER

# UNION LAND & CATTLE CO.

### CAPITAL $ 5,000,000.00
#### RENO NATIONAL BANK BUILDING

RENO, NEVADA    May 29th, 1922.

RECEIVED
9250
MAY 31 1922
SUPT'S DESK
GREENVILLE INDIAN AGENCY

Mr. F. W. Coppersmith,
c/o Greenville Indian Agency,
Greenville, Cal.

Dear Sir:-

    I am in receipt of your favor of the 18th which was on my desk upon my
return to Reno.    I am returning herewith the abstract of title which was
left with me.    The error in this abstract has been corrected.   On the 12th
day of December, 1921 the Ione Coal & Iron Company executed and delivered to
the McKissick Cattle Company a correction deed correcting the error in the
original deed.    This correction deed was filed for record by me with the
County Recorder of Amador County on April 1st, 1922 at 2 minutes past 9 o'clock
A.M. and recorded in volume 43 of Deeds, page 5.   This deed does not appear
in the abstract but it is the deed that I was told would be sufficient to clear
this title.    If you want this deed now incorporated in the abstract and do not
care to go to Amador County  to get it from the records, I can send you the
original deed for your use, and when you have finished with it you can return it
to me.

                   Very truly yours,

                   Charles B. Henderson

CBH/MO

Enclosure.

**RECEIPT FOR REGISTERED ARTICLE NO.** 524    19

Land-Allot
108465-14
TDM
IONE INDIA
RES.

From ......................................... class postage paid.

Addressed to ...........................................

Return receipt desired ...........................................

Delivery restricted    To addressee in person .....
                       To addressee or order .....   Postmaster, per ...........................................

June 2, 1922.

The Honorable
Commissioner Indian Affairs,
Washington:

Sir:

  I have the honor to again submit to the Office the Abstract of Title in the proposed purchase of land from the Union Land and Cattle Company for IONE INDIANS, IONE, CALIF., and request further advice as to action in the matter after the Office reads the attached letter from the attorney of the Union Land and Cattle Company, Hon. Chas. B. Henderson, dated May 29th, 1922.

  This office is desirous of cleaning up this matter and would like immediate instructions accordingly.

  It was my privilege to go over this tract recently while in that neighborhood on business for the Commissioner and it is to be said that it would a terrible calamity for these Indians if this land was not purchased right now. The Indians have a number nice homes on the land and most the land in crops. They are contented, have been there for years, have no other homes, and the place is very desirable and necessary for their use. It would be very unfortunate if they were to be dispossessed. The Office's attention is called to the indifference of the seller and requested to make allowances there for and to do everything possible to get the sale through without more objections if possible for it is feared the sale will fall through if much more delay occurs. The sale means everything to these homeless Indians. It is the best and most desirable "Homeless Indian" rancheria I have yet seen.

    Very respectfully,

Copy to
Mr. Fortuna Calif
Jackson Calif

       Edgar K. Miller, Supt.

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

Land-Allots.
108465-14
TDM
IONE PURCHASE.

October 10, 1922.

The Honorable
Commissioner Indian Affairs,
Washington:

Sir:

I have the honor to ask if the
matter of the IONE PURCHASE has been completed with
the Union Land and Cattle company and Mrs. Fontenrose
sent her fifty dollars. If so, the case will be
marked closed and filed.

Respectfully,

Edgar K. Miller, Supt.

PER IN REPLY TO THE FOLLOWING:

L-Allot.
46390-22
TDM
M

S-1100

ADDRESS ONLY THE
COMMISSIONER OF INDIAN AFFAIRS

## DEPARTMENT OF THE INTERIOR

### OFFICE OF INDIAN AFFAIRS

WASHINGTON WC

OCT 19 1922



Mr. Edgar K. Miller,

    Supt., Greenville School.

My dear Mr. Miller:

       Your attention is again invited to the correspondence relative to the proposed purchase of a 40-acre tract of land in Amador County, California, from the Union Land and Cattle Company, for the use of the Ione Band of Indians, and special reference is made to your letter of June 2, 1922.

       The Office notes the contents of the copy of a letter from Mr. Chas. B. Henderson of Reno, Nevada, stating that a correction has been made in the abstract of title, also in the original deed conveying title from the Ione Coal and Iron Company to the McKissick Cattle Company, which defects were pointed out by the Solicitor for the Interior Department as of date of March 28, 1919 (D-40059).

       This does not, however, satisfy the other serious defect found by the Solicitor, viz. that the title to the tract to be purchased is subject, with other lands belonging to said cattle company, to the incumbrance of a deed of trust executed by said cattle company to secure to the Ione Coal and Iron Company the payment of an indebtedness of $400,000.  It is the Solicitor's opinion that it will be necessary to procure from the Ione Coal and Iron Company a release of the said deed of trust insofar as it pertains to the 40-acre tract it is proposed to purchase.

       It does not appear from your correspondence that such release has ever been obtained.  In view

of the long delay in the matter, it is presumed that
all your attempts have been unsuccessful and that
further endeavor along that line would be useless.
It is believed to be impracticable to complete the
transaction so long as that defect in the title re-
mains and if you advise the Office that in your judg-
ment further efforts will be unavailing, the proposi-
tion will be entirely abandoned and the funds re-
leased for the purchase of other lands.

Very truly yours,

Chief Clerk.

10 CLR 17