# SAR EXHIBIT 100

# IONE COAL AND IRON CC.

VANDERLYNN STOW.
PRESIDENT
~~S. F. B. MORSE,~~ GEORGE STIMMEL,
SECRETARY AND TREASURER
A. J. GUNNELL,
SALES MANAGER

**401 CROCKER BUILDING**
TELEPHONE SUTTER 6130

BROWN LIGNITE COAL
PLASTIC AND FIRE CLAYS
WHITE FIRE SAND
QUARTZ ROCK. ETC.
FROM AMADOR COUNTY

SAN FRANCISCO. CAL.. June 8th 1916.



COMMISSIONER OF INDIAN AFFAIRS,
DEPARTMENT OF INTERIOR,
Washington, D.C.

Attention Mr. C.F.Hanke- Chief Clerk.
Land-Allotments
55243-16
P B M

Dear Sir:-

Replying to your favor of May 27th addressed
to Mr. Vanderlynn Stow, President of this Company:

We enclose herewith two plats which were prepared
by the Abstracter and to which reference is made at page 519
of the Abstract, and beg to advise that the plat which you
have and which is referred to on the second page of the
letter from Mr. Alexander T. Vogelsang, Solicitor, copy of
which you forwarded with your letter of the 27th ult., is
a sketch which was prepared by the Surveyor, Mr. Gustave
Schrader to accompany the description which he prepared,
covering the 40 acre tract which the Government proposes to
purchase for the benefit of the Ione indians.

Commissioner of Indian Affairs(2) June 8th 1916-

In Mr·Schrader's description he makes reference
to lot 277 in the Arroyo Seco Rancho:    This lot is shown
on a large map of a survey made by J.B.Robinson, but which
map is not filed for record.    Therefore, the description
was modified in this office, as will be observed if you compare
the description in the deed form submitted by us with the
Surveyor's description.

We have indicated in yellow on the larger one of the
two maps which accompany this letter( numbered on the reverse
side 13-6)  the location of the 40 acres described in our
deed, and beg to advise that the 153 acre tract of land
owned by E.J.DIEBOLD as recited in our deed is identical
with the tract appearing in the name of H. Dillian on the map
above referred to; the reference numbers appearing on this map
have reference to the volumes and pages of the various Books
of Deeds of the Records of Amador County.   They may be easily
located in the Abstract,however,as Volumes were recorded in
alphabetical rotation when the abstract was prepared. /

We hope with this information that the Solicitor will
feel justified in approving this transaction, and awaiting your
further advices in the matter, we remain,

Very truly yours,

IONE COAL & IRON COMPANY,

per:

JB/GT

Encl.

23481                                                            4

L-Allot.
108485-14
P.B.U.



JUL -5 1916

The Honorable,

The Secretary of the Interior.

Sir:

On May 20, 1916, the Solicitor for the
Interior Department rendered his decision (D-40059)
in the matter of title to certain lands proposed to
be purchased from the Ione Coal and Iron Company for
the Ione Band of homeless California Indians, author-
ity for which purchase was approved by the Department
May 18, 1916.

The Solicitor was of the opinion that the
record was incomplete and he suggested that a plat
of the rancho, showing the several lots into which
it has been divided be procured, which plat should
indicate the portions of the abstract through which
title of the lots to be purchased is derived; other-
wise it would be impracticable for him to render any
opinion as to the title in this case.

The record in this case is now enclosed,
together with a letter dated June 8, 1916, from the
Ione Coal and Iron Company, and two blue prints
which it is believed will give the information which
the Solicitor desires.

DEPT. OF THE INTERIOR
RECEIVED
JUL 5 - 1916
SEC'YS OFFICE
BY MAIL

# DEPARTMENT OF THE INTERIOR

## WASHINGTON

JUL 10 1916

D-40059

The Honorable,

The Secretary of the Interior.

Dear Mr. Secretary:

July 5, 1916, the Assistant Secretary again referred to my office for examination an abstract and some papers intended to show title in the Ione Coal and Iron Company to the Arroyo Seco Rancho, containing 48857.52 acres, out of which the United States proposes to purchase 40 acres described by courses and distances, as a home for the Ione Band of homeless Indians in California.

In my previous communication to you regarding this matter, dated May 20, 1916, I requested that the Commissioner of Indian Affairs secure a plat of the Rancho showing the several lots into which it has been divided and indicating by numeral reference upon each lot the portions of the abstract through which title to the particular lot is supposed to be derived, or to otherwise secure an independent abstract of title to the particular 40 acre tract which is described as lot 277.

Land-Allotments
74679-1916
 P B M

Purchase of land
for Ione Indians.

JUL 14 1916

Mr. John J. Terrell,
    Special Indian Agent,
        General Delivery,
            San Diego, California.

My dear Mr. Terrell:

The Department on July 5, 1916, again referred
to the Solicitor the proposition of purchasing 40 acres in
Amador County from the Ione Coal and Iron Company for
$2,000.

Two copies of the Solicitor's opinion dated
July 10, 1916 (D-40059), are enclosed herewith, and are
self-explanatory.   You may enclose one to the President
of the company and advise him that the Solicitor has sug-
gested that an independent abstract be furnished covering
solely the land to be conveyed, since to pass upon the title
as now presented by the record would involve examination
of title to the entire area of 48000 acres.

The Office believes that Mr. Vanderlynn Stow,
President of the company, will not fail to appreciate that
in view of the amount of business before the  Solicitor it
would be impracticable to undertake the voluminous investiga-
tion necessitated by this state of the record.

The Office does not, by any chance, want this
purchase to fail and in the event Mr. Vanderlynn Stow is

INITIALING COPY - FOR FILE.

REPRODUCED AT THE NATIONAL ARCHIVES

unwilling or unable to furnish a further independent abstract, you are instructed to consult a responsible abstracter with regard to the estimated cost of having this work done  at the Government expense, as in the case of all the purchases from the Central Pacific Railway Company.

The abstract of title in two volumes is returned herewith.

Very truly yours,

(Signed) *C. F. Hauke*

7-JM-13                          Chief Clerk.

-2-

REPRODUCED AT THE NATIONAL ARCHIVES

6-11J0
(Ione-Indians)

Land-Allotments
119306-15
74679-16
P B M

Riverside,Calif.,July 28,1916.

Mr. Vanderlynn Stow,President,
   Ione Coal & Iron.Company,
      608 Insurance Building,
         San Francisco,California.

Dear  Sir:
            Under separate cover by Wells Fargo & Express Co. I am
returning  your Company's  abstract of title covering its Arroyo
Seco Rancho lands of near 49,000 acres,40 acres of which there has
been pending for some time efforts to purchase  through the Indian
Office desired as a village home for the above named Indians.

      Herewith you will please find carbon copy of the Solicitor's
opinion,which is self-explanatory.

As will be observed the Solicitor has suggested that an indepen-
dent abstract be furnished covering solely the 40 acres in question
to be conveyed, since as to pass upon the title as  presented in
the record of the two large volumes containing the abstract would
involve the examination of title to the  area of the  entire ranch
holdings.   It is believed by the Office that you will not fail to
appreciate that in view of the great amount of pressing business
now before the Solicitor it will be impracticable for him to under-
take the  voluminous investigation by  the record as presented in
the two volumes.  I sincerely trust that you will  have compiled
and furnish an independent abstract covering the 40 acres in question
      I go from here to San Diego,Calif.,which point will be my ad-
dress for  next  few days. Inasmuch as the Office is anxious to
close this proposed purchase as soon as possible,will ask that you
give this matter your earliest possible attention.
                        Very respectfully,                Special Ind. Ag

(For information Commissioner Indian Affairs.)

REPRODUCED AT THE NATIONAL ARCHIVES

THE BOARD OF TRUSTEES
LELAND STANFORD JUNIOR UNIVERSITY
608 INSURANCE EXCHANGE BUILDING
SAN FRANCISCO

BUSINESS OFFICE                              August 15th, 1916.


Mr. J. J. Terrill,
Special Indian Agent,
DEPARTMENT OF THE INTERIOR,
San Diego, California.

Dear Sir:

      Answering your letter of July 28th, 1916:

      I desire to call your attention to the fact that in our original conversation I told you what I would do and what I would not do.  One of the things that I would do was to furnish the Abstract of the Ione Ranch as it existed and one of things that I would not do was to go to the expense in making the transfer from the Ione Coal & Iron Company to the United States Government.  I do not claim that I used the term to you, but what I wanted was to get net for that property $2,000.00 or to sell forty acres for $50.00 per acre and I stated or intimated that I did not expect to be put to any expense in completing the transaction.  The request of the Government that I furnish a separate abstract for the property in question would cost from $60.00 to $100.00 and this I will not do. I would suggest, therefore, that the whole matter be called off and that another place be found for the Indians.

      I shall be glad to hear from you at your convenience.

92186

Yours very truly,
Vanderlynn Stow, President
IONE COAL & IRON COMPANY.

VS/R
(Copy made and retained for my files: Terrell.)

RESTORED AT THE NATIONAL ARCHIVES

5-1100

(Ione-Indians.) ( Buna Vista)

Land-Allotments
D-40059.(S).
119306-15
74679-16
P B M

*File with
108466 Part 8
'14*

Los Angeles, Calif.,Aug.23,1916.

02186

Mr. Vanderlynn Stow,President
Inne Coal & Iron Company,
    608 Insurance Building,
        San Francisco,California.

Dear Sir:

        This is to acknowledge receipt of your favor of the
15th,instant, advising that you cannot comply with the request
of the Office to furnish a separate or independent abstract
covering the 40 acres in the proposed purchase out of your
large ranch holdings desired for the permanent village home
for the above named Indians, recalling our original conver-
sation had in this connection, which as I recall, is substanti-
ally correct; that you would furnish the abstract of title to
the entire ranch  for such time only as  was necessarily
required for the Solicitor to examine,to be returned,etc.

        In this connection I beg to advise that it is the
desire of the Office this proposed purchase shall not fail,
in that it is considered of very great importance on account
of the 40 acres marks the ancient village home of these
Indians as far back as they are able to trace their history;
therefore, as soon as I am able to reach your City, I shall
at once take up with some responsible abstracter the compi-
lation of an independent abstract from the two volumes you
kindly permitted me to forward to Washington and by me recently
returned, that this proposed purchase may be consumated at the
earliest possible date.

(For information Commissioner Indian Affairs.)

FILED BY E.S.S.

Page 2.

I sincerely trust that this suggestion will meet your approval and that soon this proposed purchase will be closed as originally contemplated.

I hope to get away from here by the afternoon to-morrow for Bakersfield, California, and from there work my way on north to your City. On account of several intervening important matters that will engage my attention am unable to say just when I shall be able to reach San Francisco.

Inasmuch as these Indians have been so long quietly located on this land, as I understand the most friendly relations having existed between them and the ranch owners, would suppose there will be no serious objection of a further delay in closing up the matter?

Bakersfield will likely be quickest forwarding point for my mail for the next 10 days or two weeks.

Very respectfully,

Special Commissioner Indians Calif.

4

Land-Allot.
1CG373-16
P B M

OCT -6 1916

The Honorable,

The Secretary of the Interior.

Sir:

I have the honor to submit herewith for examination by the Solicitor abstract of title deed and all papers in connection with the desired purchase of lot No. 1, Block 14, Sheep Ranch Townsite, California, from W. R. Cunningham and wife for $150.00.    The beneficiaries are 13 Indians known as the Sheep Ranch Band who according to a report from Special Commissioner Terrell have long resided in that vicinity where they have obtained various kinds of employment.    The property includes a four room house completely furnished with cook stove, cooking utensils, dishes, table, chairs, etc.    There is also a sufficient supply of water and wood.

In view of the fact that the price is reasonable and the property seems to be satisfactory in every way to the use of this small band, this Office recommends that the purchase be made.    As in the other cases of the purchase of California lands heretofore submitted

payment will not be made until after a valid unincumbered title has been placed on record as being in the United States.

The Office attempted to procure a sufficient and authoritative plat showing the location of the property with respect to Sheep Ranch Townsite, but the correspondence indicates that the grantor would not be justified in going to the expense necessary to procure such a plat. However, he has submitted a sketch showing the location of the lot in question. The Special Commissioner states that there is no question that the property comprises at least 2 acres and that the improvements originally cost more than double the price asked for the property. Under these circumstances the grantor naturally feels that he should not be put to the further expense of $35.00 or more to secure such a plat. Therefore, if it is possible to pass upon the title without any further showing as to the location of the land involved it will be greatly appreciated.

Respectfully,

(Signed) C. F. Hauke

Chief Clerk.

JHA 10-4.

OCT -6 1916

Approved and referred to the Solicitor for the Interior Department for examination and opinion as to whether the acceptance and recordation of the inclosed deed together with payment therefor will serve to vest a valid unincumbered title in the United States.

(Sgd.) BO SWEENEY.

Assistant Secretary.

-3-

REPRODUCED AT THE NATIONAL ARCHIVES

2

Land-
Allotments
108465-14
   P B M

NOV 22 1916

Mr. J. J. Terrell,

     Special Commissioner.

My dear Mr. Terrell:

     Please advise the Office relative to the
status of the proposed purchase of forty acres from
the Ione Coal and Iron Company for the benefit of home-
less California Indians. The latest information the
files contain on this subject is a carbon copy of a
letter dated August 33, 1916, written by you to the
president of that company, stating that as soon as you
were able to reach his city you would take the matter
up further.

     Very truly yours,

     (Signed) C. F. Hauke

JW-11-21.

     Chief Clerk.

REPRODUCED AT THE NATIONAL ARCHIVES

THE BOARD OF TRUSTEES
LELAND STANFORD JUNIOR UNIVERSITY
608 INSURANCE EXCHANGE BUILDING
SAN FRANCISCO

BUSINESS OFFICE

November 29th, 1916.



Mr. J. J. Terrell,
2832 Baker St.,
San Francisco, Calif.

Dear Sir:-

I hand you herewith the name of an abstract-
er that we believe reliable namely, Mrs. M.E. Fontenrose.

My office did not fully understand my re-
quest, and wrote her asking what her charge would be, and
have informed me that she would do this piece of work for
Sixty (\$60.00) Dollars.   I would prefer that you make your
own bargain with her, or if this price seems satisfactory
to you that you verify it, and do not take my word for it.

Very truly yours,

Vanderlynn Stow.

VS/T

REPRODUCED AT THE NATIONAL ARCHIVES

b-1100

Ione-Indians).
Land-Allot. **DEPARTMENT OF THE INTERIOR**
108465-14
____P B M____ UNITED STATES INDIAN SERVICE

San Francisco, Calif.,Dec.2, 1916

Commissioner Indian Affairs,

     Washington, D. C.

Dear Sir:

     In connection with the proposed purchase of the 40
acres of land in Amador County, California, from the Ione
Coal & Iron Company, embracing the ancient home of the above
named Indians, above reference given in Office letter of
Nov. 22, 1916, have the honor to herewith inclose letter of
date Nov.29, 1916,received from Mr. Stow.

     The day following my arrival here this time I called on
Mr Stow and discussed with him the suggestion of the Solicitor
of an independent abstract, reference 74679-1916 P B M.,
 resulting in the receipt of the inclosed letter.

     It seems that Mr. Stow was entirely too full of other
business to have fully recalled the essential points discuss-
ed with him, judging from his letter.

     Not finding the name, Mrs.M.E.Fontenrose in City Directory,
again called to see Mr. Stow; however, failed to meet him as he
was engaged to the last moment prior to leaving the City.

     In discussing matters with next in authority it was learned
that Mrs. Fontenrose resides at Jackson, Amador County,Calif.,
is the only abstractor there, but not a bonded abstractor.

     As I understood Mr. Stow, acting for the Board, he would
not object to the two large volumes embracing the abstract to

## DEPARTMENT OF THE INTERIOR

### UNITED STATES INDIAN SERVICE

the entire ranch holdings remaining in the possession of Mrs. Fontenrose sufficient time for the compilation of the desired independent abstract, but would not care to entrust same to other abstractors not known and away from County in which lads are situated.

Over phone by the land man of this Ione Coal & Iron Co. the firm name of Pierce Bosquit & Co&, Abstractors at Sacramento, being bonded, were given; though it was further suggested that this firm would not likely contract to compile the desired independent abstract as cheaply as $60.

It seems that this land man of this Company has been giving the matter of an independent abstract some thought, as he suggested, also over phone, that one of the most serious difficulties to be encountered in the compilation of this proposed independent abstract, was to first locate the proposed 40 acres correctly from some well defined and known point, that abstractors search may correctly relate to the land in question; rather intimating, that this will be a difficult matter. I entertain serious doubts that an abstract compiled by this lady would properly in every instance relate to the 40 acres in question. Of course, should an incorrect beginning as to location or description of the 40 acres result in compilation same would be valuless.

It has occured to me that likely on account of the warrant given by this large corporation, the suggestion that in the

PERSONAL ARCHIVES

Page 3.

# DEPARTMENT OF THE INTERIOR

## UNITED STATES INDIAN SERVICE

purchase of its lands covered by these two lrge volumes of abstract quite thorough search was made by specially qualified authority and able and trustworthy attorney or attorneys as to sufficiency of title, if possibly permissable under rules and regulations, the Office would be justified in waiving an abstract in this case: Or, if this cannot be done, then would it be possible to have some local or nearby Government attorney or some one competent in Government employ to compile this abstract? Otherwise I have some fears that this very important proposed purchase may be consumated. It will be recalled that it was with some difficulty that this Company throught its President, Mr. Stow, concluded to sell, especially at the price offered, first fixing a price just double the one given in the deed. Mr. Stow insists but for the fact to accomodate the Department and the consideration for the Indians he could not have thought of recommending to his Board this sale at the price named in the deed.

Mr Stow seems to be growing just a little impatient in progress of this pending purchase.

A letter address to me at Fresno, California, on receipt of this letter will likely reach me sooner than any other point, as, after going on from there will keep close forwarding orders.

Very respectfully,

*John J. Terrell*

Special Comr. to negotiate with Indians Calif.

# SAR EXHIBIT 101

Land Division
Acq.
21577-41

File No.
Subject
Ii-Rec'd
SACRAMENTO AND AGCY
To

Hon. Harry L. Englebright,

APR 21 1941

House of Representatives.

My dear Mr. Englebright:

Receipt is acknowledged of your letter of April 7 enclosing a petition signed by the Indians living in the vicinity of Ione Valley which was forwarded to you by the Honorable A. L. Pierovich, Superior Judge of Amador County, California.

The Indians, in their petition, requested that a tract of land be purchased for them on which homes can be built. In this connection it may be said that we are desirous of helping all groups of Indians in need of land but the lack of funds prevents us from doing so. We will therefore be unable to acquire land for the Indians of Ione Valley until such time as funds are made available for that purpose.

Our records show that several years ago a small rancheria embracing 70 acres was purchased for the Indians living in the vicinity of Buena Vista, Amador County. As we have very little information concerning the Indians of the Ione Valley and their land needs, the matter is being referred to the Superintendent of the Sacramento Agency for report. It is regretted that we are not in a position to purchase the land desired by these Indians.

Sincerely yours,

WILLIAM ZIMMERMAN, JR.
ASSISTANT
Commissioner.

RCC:4-16 sd    4-17

cc: Supt., Sacramento Agency, with petition, for report and return of papers.

## IONE PROJECT

IV - Information on families to be resettled
    A - Number of families — 19
        Present residential status - single families and small groups of families scattered throughout the county on land grant lands not individually owned or government owned.

        Occupational Status — Able-bodied men work for some 8 months on neighboring ranches, on public works or in mines for a somewhat longer period, as day or monthly labor.

        Financial Status — Poor, with no reserve.

V - Description of proposed resettlement project
    A - Type of project - Land Utilization Div. Resettlement.
    B - Number of families to be resettled in the project - 19
    C - Average acreage - 8.42 acres per family
    D - Total acreage needed for the project - 160
    E - Type of farming proposed - diversified, under irrigation with some intensive cropping to vegetables for market purposes.

VI - Cost
    A - Total cost of land - $24,000.00
    B - Total cost of development
        1 - Houses — $16,625.00
        2 - Outbuildings - 3,800.00
        3 - Irrigation and domestic water - $2,750.00
        4 - Stock and poultry - $850.00
        5 - Feed and seed - 300.00
        6 - Gravel and road construction - 1 mile — $1,000.00

    C - Total cost of project — $49,325.00
    D - Average Unit Cost — 2,596.05 per family.

There are some 135 Indians living in Amador County, within easy reach of the town of Ione, of whom 75 are at present without homes on land that is individually owned or owned by the Government. These would gladly welcome an opportunity to establish homes on government land where some semblance of permanency might be expected. As it is, most of them now live on lands temporarily assigned them by the present owners of old Spanish land grants, on isolated spots not used by individual ranchers or wherever they find unused land upon which they may squat.    In rare cases a few individuals own private tracts of land of one-half to two acres.

In common with most of the California Indians, these live in poorly constructed shacks which are far from weather-proof and into which large families of from 6 to 9 individuals are crowded into a single room or two.

Labor for this group has not been overly plentiful and except for summer work on the ranches, some SERA and CCC assignments, and limited work in mines and on highway construction, there is little to which he may turn for employment.   The result is that he has no surplus over and above his daily needs, even when these are met, and rehabilitation through his own efforts and ability is out of the question.

The establishment of this group upon land of the quality proposed for purchase should lift the load of support from the County and Governmental Agencies, go a long way toward making all Indians in this County self-supporting, would remove the threat which accompanies unsanitary and unhealthful housing and living conditions, would place all the children within easy reach of county and state schools, would place all the Indians effected upon a state highway where supervision could be easily given them and where their products would have a ready market.   Such ends would appear to justify both the money and the effort necessary to attain them.

E. M. Johnston,
U.S. Farm Advisor.

# SAR EXHIBIT 102

21577-41

~ 560 – *Land acquisition*
                      *Ione*

Sacramento Indian Agency
Sacramento, California
April 29, 1941

Commissioner of Indian Affairs
Washington, D. C.

Sir:

Reference is made to your letter of April 21 to the
Honorable Harry L. Englebright, House of Representatives, copy
of which was sent to this office for report and return of in-
closures. This matter has to do with a petition signed by
certain Indians living in the Ione Valley requesting that a
tract of land be purchased for them on which homes can be built.

As early as 1924, an attempt was made to purchase land
for the Indians living near Ione, but because nearly all of
the land in that vicinity has been at some time or other in a
Spanish land grant, it was impossible to get a clear title to
any likely tracts. The matter was dropped at that time and
nothing was done then until 1935, when this office once more
attempted to make a land purchase.

This time the stumbling block was the question of min-
eral rights and values. It should be remembered that Ione and
the surrounding country is in the Mother Lode and everyone
who owns land feels he has great potential mineral values and
his asking price—if you find one willing to sell—is so high
as to preclude any possibility of purchase. In the cases where
mineral rights are of no consideration, the land is valueless
and under no circumstances would this office agree to the
purchase of this type of "rock-pile."

The situation over the past twenty years has not changed.
The Indians still live on the old grants or squat on privately
owned land and in miserable hovels dignified by the name "shack."
The petition which was presented to Congressman Englebright
was started by a young Indian, William Franklin. Mr. Frank-
lin is intelligent and far-sighted enough to know that some
day, the Indians who are living on the grants and on private-
ly owned land will be forced to move; the houses they have
built through their own efforts will remain on the land and
this agency will be faced with the problem of many Indian

Commissioner of Indian Affairs        Page 2        April 29, 1941

families who are not only landless but homeless.

As a group, the Ione people are industrious and hard-working and enjoy a good reputation. The men, with the exception of the pensioners find employment in the mines, brick factories, on neighboring ranches and in the clay pits. However, the wages they earn are not sufficient to take care of an average family of five, with the result these people live a hand to mouth existence. Saving enough out of the monthly income to purchase individual holdings or for the erection of a suitable house is absolutely out of the question.

If land can be purchased for these people and a suitable house erected thereon for them, it should be done. For the latter I would place a limit of about $1,200.00; land for each family to consist of about an acre. This would give them exactly what they have asked for and in my estimation, all they require—land enough on which to put a house and a suitable garden plot. Naturally, there should be an adequate sewage disposal system and equally important, the water supply should be piped direct to the house.

If at any time in the future an allotment of funds can be obtained for such a purpose, a program as herein roughly outlined, will meet with the unqualified approval of this office. In the meantime, we will take the necessary steps to ascertain, first, whether or not a suitable tract of land is available. By "suitable" we mean land on which there is an adequate supply of water or on which such supply can be developed; second, land suitable for truck garden purposes; third, land, the purchase of which will be agreeable to the Indian families who would move thereon, and that can be purchased at an equitable value.

Very truly yours,

Edwin H. Hooper
Chief Clerk in Charge

MH:ng

P. S. - The petition which was forwarded with copy of Office letter of April 21, 1941, is returned herewith.

Inc.



— IONE PROJECT —

AMADOR COUNTY—CALIFORNIA

TO THE DEPARTMENT OF INDIAN AFFAIRS

WASHINGTON, D.C.

The undersigned Indians of the Ione Valley and
vicinity respectfully petition the Department and the
Federal Government to do something for our large group
in the matter of purchase of a tract of land, upon which
homes can be built for our use. Our group consists of
about twenty families, averaging about five. We have
never had a suitable piece of land upon which to build
and believe that our plight is one in which the
Government should and could spend the necessary funds,
for the relief and comfort would be great. A tract
could be had in the valley where there would be suitable
and sufficient water and which would be land suitable for
raising of garden truck which would sustain us in
times when work was scarce.

We also respectfully request the Department to
look into the matter of allocating sufficient moneys
for the building of homes on the tract.

Respectfully submitted;


                    IONE VALLEY INDIANS


                    Bernal Gold _____
                    _____
                    _____
                    _____
                    _____

|                           |                          |
|---------------------------|--------------------------|
|                           | Mr. Al Walloupe          |
|                           | Mrs. Alfred Walloupe     |
| Mrs. A. Walloupe          | George (X) Clifford      |
| William Franklin          | Mrs. George (X) Clifford |
|                           | J. L. Villa              |
| William Franklin          | Mrs. Lucy Villa (X)      |
| Miss Rita Villa           | Mrs. Lenora Titman       |
|                           | Henry Titman             |
| William Franklin          | Frank (X) Powell         |
| Stella Lee                | Ollie Alex               |
|                           | Jennie Alex              |
|                           | Mr. Frank Porter         |
|                           | Mrs. Frank Porter        |
|                           | Mrs. Effie Burris        |
|                           | Mo Howdy                 |
| Richard Clifford          | Lula Clifford (X)        |
| William Franklin          |                          |
| Henry Miller              | Richard Wessell (X)      |
| William Franklin          | Mr. Luna Wessell         |
|                           | Mrs. Helen Wessell       |
|                           | Mr. Charles Wessell      |
|                           | Mrs. Mabel Trent         |
|                           | Pete Kesseler            |
|                           | Mr. Carl Homan           |
|                           | Mrs. Carl Homan          |
|                           | Bernal Gold              |
|                           | William Franklin         |

# SAR EXHIBIT 103



IN REPLY REFER TO:

## UNITED STATES
## DEPARTMENT OF THE INTERIOR
### BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California  95825

Real Prop. mgmt. Area
320-Central California
308-Ione Rancheria

AIRMAIL

**JUN 8 1973**

Commissioner of Indian Affairs

Washington, D. C.  20245

Attention:  Real Estate Services

Sir:

During the early 1900's the Office of Indian Affairs was acquiring tracts of land throughout Northern California to provide a land base for small bands of California Indians.  One small group of Indians was occupying land belonging to the Ione Coal and Iron Company located near the town of Ione, California.

In 1915 the Office of Indian Affairs began negotiations to purchase a forty acre tract on which the Ione Band of Indians were living.  Negotiations for the purchase of this land continued for over thirteen years but were abandoned because of defects in the title.  During this long period of negotiations many of the Indians came to believe that the land had been purchased for them and several families built homes and still live on the land.

In August 1970, two Indian families contacted this office for assistance in improving their homes.  This was our first contact with this group in many years.  A member of our staff visited the location and found seven Indian families living on the forty acre tract in substandard dwellings. A search of the county records revealed that title to the land was in the Crocker Citizens National Bank.

In 1972, California Indian Legal Services began an effort to obtain title to the property in the Indians and filed an action in Superior Court to quiet title.  This action was successful and on October 31, 1972, Judge Ralph McGee of the Superior Court of the State of California, for the County of Amador, ruled that residents of the property were the owners in fee simple absolute, free of any encumbrance.

On July 20, 1972, I wrote Commissioner Bruce asking if the Bureau would accept the tract of land and hold it in trust for the Ione Band.  On October 13, 1972, Commissioner Bruce wrote to the Ione Band stating that he agreed to accept title to the land to be held in trust for the Ione Band of Miwok Indians, and further thattthis Band be considered as accepting the Indian Reorganization Act since Federal recognition was extended during the early 1900's and the group did not formally reject the act.

*P-827-73*

**JUN 1 1 1973**

2

We have had several recent inquiries from the spokesman for this group, Mr. Harold Burris, asking that we meet with them to explain our relationship to this group. We have hesitated to discuss this question until such time as we have assurance that we can grant recognition and take title to the land in trust, if this is the final decision of the band. We have found that often times just meeting with such a group leads to the belief by many that they are recognized and as such are eligible for Bureau services. We would much prefer to have a decision from your office before we raise their hopes.

Although there is much to be done to formally organize the group and there may be some problems with the land title, we believe these obstacles can all be overcome. It is our recommendation that the Secretary formally recognize this band and agree to take title to the land to be held in trust for the band.

An early reply will be appreciated.

Sincerely yours,

*Jerome A. Morlock*

ACTING /Area Director



IN REPLY REFER TO:



## UNITED STATES
## DEPARTMENT OF THE INTERIOR
### BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California  95825

Real Prop. Mgmt. Area
320 CCA
308 Ione

JAN 2 3 1974

# AIR MAIL

Memorandum

To:      Commissioner of Indian Affairs
         Attention:  Chief, Division of Tribal Government
                     Services

From:    Area Director, Sacramento Area Office

Subject:  Ione Indians - Amador County, California

Your memorandum of October 3, 1973, requested additional justifi-

cation for extending Federal recognition to the Ione Band of Indians.

Our Central California Agency is searching for additional file

information on the history of this band and the efforts to purchase

land for the group in the early 1900's.  We will submit our findings

as soon as possible.

*William E. Finale*
Area Director

*Large Ione Mission 5134*

IN REPLY REFER TO:



**UNITED STATES**
**DEPARTMENT OF THE INTERIOR**
BUREAU OF INDIAN AFFAIRS

Sacramento Area Office
2800 Cottage Way
Sacramento, California   95825

Real Prop. Mgmt. Area
320 CCA
308 Ione

MAY 2 8 1974

AIRMAIL

Commissioner of Indian Affairs

Washington, D. C.   20245

Attention:  Chief, Division of Tribal Government Services

Dear Sir:

Reference is made to your memorandum of October 3, 1973, requesting
additional information and justification for our request for Secre-
tarial recognition of the Ione Band of Indians and the acceptance by
the Secretary of the title to a parcel of land to be held in trust
for this Band.

One June 28, 1973, we submitted our complete record of this Band
and their efforts to secure title to the land which they had long
occupied.  This record was directed to Real Estate Services to be
forwarded to Mr. Newton Edwards.

These records indicate that as early as 1915 the Office of Indian
Affairs was attempting to purchase land for this group.  Please refer
to letter dated May 11, 1915, from John C. Terrell, Special Indian
Agent to Cato Sells, Commissioner of Indian Affairs.  These efforts
continued until May 1930.  Apparently the Indian Office was unable
to clear title to the property and the effort was abandoned.  Again
on April 29, 1941, Chief Clerk Edwin Hooper of the Sacramento Indian
Agency attempted, without results, to secure funds to purchase land
and erect housing for the Ione Indians.  Our records indicate no
further action until August 1970.

We firmly believe there is ample justification for recognition of
this group and accepting title to the land which they have acquired
in order that they may become eligible for services provided by the
Bureau.  They have been trying for almost sixty years to gain rec-
ognition and it was only through ineptitude on the part of the Bureau
that land was not made available to them in the 1920's.  Furthermore

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

the Commissioner of Indian Affairs made a firm commitment to these
people in October 1972 to take title to the land to be held in trust
by the United States.

If you are unable to locate the information submitted in June 1973,
please advise and we will submit duplicates.

We urge a speedy and favorable decision.

Sincerely yours,

ACTING     Area Director



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D. C. 20245

IN REPLY REFER TO:

Tribal Government
Services

Memorandum

To:        Sacramento Area Director

From:      Commissioner of Indian Affairs

Subject:   Recognition of Ione Band of Indians and
           acceptance of land in trust.

We are happy to learn that the Ione Indians have acquired
by means of an adverse possession action title to the
40-acre tract that the Bureau has from time to time since
about 1915 sought to purchase for them.

The manner in which a clear title to this tract can be
placed with the United States in trust for the band is not
now under consideration. It does appear from a review of
the documents accompanying a recent request for the formal
recognition of these Indians, however, that the questions
raised by the Assistant Secretary in his memorandum of
January 26, 1973, have been satisfactorily answered, and
that these Indians merit the extension to them of Federal
recognition.

Under authority delegated to me by 230 DM 1.1, I hereby
extend Federal recognition to the Ione Band of Indians,
and ask that assistance be extended to the band in its
preparing to tender a clear title to a 40-acre tract in
Amador County to be held in trust for it by the Secretary,
and that it also be assisted in drafting appropriate docu-
ments for its organization under the Indian Reorganization
Act of 1934.

                         Commissioner of Indian
                         Affairs



CONSERVE
AMERICA'S
ENERGY

*Save Energy and You Serve America!*

To the Reviewers:

This proposed letter of recognition is based upon accompanying documents that contain the following information. They are referred to by their dates.

For some time preceding Bureau contact, the Ione band lived about the home of a Mr. Clifton who managed and lived on the Arroyo Seco Rancho, a Spanish land grant (8:19:1970; 4-4-1919) containing 48,857.52 acres (4-4-1919). He removed them to a 40-acre tract at a corner of the grant. Under one of the bills to acquire land for landless California Indians, and prior to 1917, the Bureau sought to purchase a tract "to embrace the old ancient village homes of the Ione Band of Indians in Amador County." Title to the grant, including this 40-acre tract, then stood in the name of the McKissick Cattle Company, a subsidiary of the Union Land and Cattle Company (12-15-1924) with the Ione Coal & Iron Company holding a trust deed to secure a $200,000 mortgage which embraced the 40-acre tract. The Indian Inspector urged (2-15-1918) that the purchase be consummated quickly because the required funds would revert in the U. S. Treasury on June 30, 1918 (4-4-1918). The McKissick Cattle Company advised the Union Land and Cattle Company that the sale had not been completed earlier because the Attorney General had refused to review an abstract of title to the entire grant since it was not confined to the specific 40-acre tract.

To advance the purchase, the Bureau obtained an offer from McKissick Cattle Company dated November 15, 1918, to sell the 40 acres to the United States for $2,000 for "Ione Band of Land-less Indians of California." (11-15-1918)  The Bureau had an abstract made up (6-30-1923; 7-10-1923; 7-12-1923) and after its examination the Solicitor required a release of the mortgage and a correction made in the legal description in certain recorded documents.  (4-4-1919)  The Superintendent was instructed to obtain, record and forward a deed when these objections were removed.

Before the transaction could be completed, the Union Land and Cattle Company went into receivership (7-29-1924).  Before the consent of the bankruptcy court could be obtained for the release of the mortgage on this 40 acres, the Stanford University acquired the bonds secured by the mortgage (2-14-1925) necessi-tating a renewal of all efforts to secure the release of mortgage. The error in description was corrected (5-29-1921); Stanford University agreed to release the mortgage if a satisfactory release was presented to it (3-24-1924) and the abstract of title was sup-posedly corrected (6-24-1924).  In response to a request that he prepare the release of mortgage, however, the United States Attorney advised that, although the original deed of trust had been released, the tract remained subject to a new one recorded

October 18, 1919, which now needed to be released.

The matter appears to have been dormant until 1927 when Superintendent Dorrington reported Amador County had an Indian population of approximately 200 "as shown by the following detailed bands: xxx Ione, 46 (members) xxx." He also said:

> As the office is aware we have been considering
> the purchase of a tract for the Indians of Ione
> for the past several years, the property being
> a forty acre tract, which has been tied up by
> legal procedure.

On April 29, 1941, the Commissioner acknowledged receipt from Congressman Harry L. Englebright of a petition by 27 Ione Indians requesting that a tract of land be purchased for the group. He reported that the attempt to purchase land had been dropped until 1935 and then revived but that mineral rights had created a new problem. He recommended the purchase of one acre for each family.

We have not located files showing further activity until August 1970 when it was reported seven Indian families were residing on the 40-acre tract, and that title to it rested in the McKissick Cattle Company (12-28-70).

The California Rural Indian Land Project of the California Indian Legal Services became interested in Ione

4

Indians during 1971 and asked if the United States would
accept title for them to the 40 acres (2-3-1971; 1-20-1972).
In response Commissioner Bruce wrote on 10-18-1972 that:

> As the Commissioner of Indian Affairs, I therefore,
> hereby agree to accept by relinquishment of title
> or gift the following described parcel of land to be
> held in trust for the Ione Band of Miwok Indians;
> xxx.

Two months later (1-26-1973) the Assistant Secretary wrote
to the Area Director, saying:

> It is true the band can be considered as a group
> that did not vote against the application of the
> Indian Reorganization Act, and the former con-
> templated purchase or land for them by the
> United States may indicate that they are a recog-
> nized group entitled to benefits of the Indian
> Reorganization Act.  We have no correspondence,
> however, from the group requesting recognition
> or a desire to establish a reservation.
>
> If the Band desires and merits Federal recog-
> nition, action should be taken to assist them to
> perfect an organization under the provisions of
> the Indian Reorganization Act.

5

On June 28, 1973, the Area Director responded that the group of Indians in Amador County requested formal recognition as an Indian band and that title to land be held in trust for them.

With the legal assistance of the California Rural Land Project, thirteen named Ione Indians "and others" obtained a judgment of the Superior Court of the State of California quieting title in them to the precise 40 acres the United States had sought to purchase for the group. While the question remains as to just how the named thirteen "and others" will transfer clear title to the United States, it seems the problems raised by the Assistant Secretary for want of sufficient background information have been solved and that these Indians merit formal recognition which would have long ago been extended to them except for an unfortunate chain of events.

The accompanying memorandum of recognition has been prepared for your consideration pursuant to 230 DM 1.1.

FILE COPY
SURNAME

Tribal Government
Services

Memorandum

To:          Sacramento Area Director

From:        Commissioner of Indian Affairs

Subject:     Recognition of Ione Band of Indians and
             acceptance of land in trust.

We are happy to learn that the Ione Indians have acquired
by means of an adverse possession action title to the
40-acre tract that the Bureau has from time to time since
about 1915 sought to purchase for them.

The manner in which a clear title to this tract can be
placed with the United States in trust for the band is not
now under consideration. It does appear from a review of
the documents accompanying a recent request for the formal
recognition of these Indians, however, that the questions
raised by the Assistant Secretary in his memorandum of
January 26, 1973, have been satisfactorily answered, and
that these Indians merit the extension to them of Federal
recognition.

Under authority delegated to me by 230 DM 1.1, I hereby
extend Federal recognition to the Ione Band of Indians,
and ask that assistance be extended to the band in its
preparing to tender a clear title to a 40-acre tract in
Amador County to be held in trust for it by the Secretary,
and that it also be assisted in drafting appropriate docu-
ments for its organization under the Indian Reorganization
Act of 1934.

INTERIOR DEPT.

DEC 4 – 1974

SOLICITOR'S
DOCKET

                              Commissioner of Indian
                                      Affairs

cc:  Code 220
     Surname
     Chrony – 440
     Mailroom

                    Holdup
                    540:ZBarrow:md   11-26-74
                    Cass. B., Ref. 16

Tribal Government
   Services

   *not sent*

   Memorandum

   To:        Sacramento Area Director

   From:      Commissioner of Indian Affairs

   Subject:   Recognition of Ione Band of Indians and
              acceptance of land in trust.


We are happy to learn that the Ione Indians have acquired
by means of an adverse possession action title to the
40-acre tract that the Bureau has from time to time since
about 1915 sought to purchase for them.

The manner in which a clear title to this tract can be
placed with the United States in trust for the band is not
now under consideration.  It does appear from a review of
the documents accompanying a recent request for the formal
recognition of these Indians, however, that the questions
raised by the Assistant Secretary in his memorandum of
January 26, 1973, have been satisfactorily answered, and
that these Indians merit the extension to them of Federal
recognition.

Under authority delegated to me by 230 DM 1.1, I hereby
extend Federal recognition to the Ione Band of Indians,
and ask that assistance be extended to the band in its
preparing to tender a clear title to a 40-acre tract in
Amador County to be held in trust for it by the Secretary,
and that it also be assisted in drafting appropriate docu-
ments for its organization under the Indian Reorganization
Act of 1934.


                          Commissioner of Indian
                                 Affairs


   cc:  Code 220
   Surname                 Holdup
   Chrony - 440            840:ZBarrow:md   11-26-74
   Mailroom                Cass. B., Ref. 16



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D. C. 20245

IN REPLY REFER TO:

Memorandum

To:        Area Director, Sacramento

From:    Commissioner of Indian Affairs

Subject:  Recognition of Ione Band of Indians and
            acceptance of land in trust

This is in response to your memorandum of May 28, 1974,
concerning the above subject.  A review of the record
which you submitted and other materials available here
has now been completed.  Commissioner Bruce concluded
by a letter of October 18, 1972, to the Ione Band of
Indians and one Nicholas Villa that the Department of
the Interior had previously recognized the Ione Band and
that since they had not voted to reject the Indian
Reorganization Act, they were entitled to organize pur-
suant to that Act.  After reviewing all the materials, I
reaffirm that conclusion.

My conclusion is based on a number of facts.  By
memorandum of May 2, 1916, the Acting Assistant
Commissioner submitted to the Secretary a partially
executed deed, title abstract, and other documents in
connection with the proposed purchase of 40 acres for a
group of homeless California Indians designated as the
Ione Band.  The memorandum indicated that the tract in
question was the ancient village site of the Indians.
Indeed Special Commissioner Terrell, who negotiated the
purchase for the Indians, was of the opinion that this
was probably the most important purchase of all that he
had negotiated because it did embrace their ancient
village home and the Indians were very needy.  On the
same day, the Assistant Secretary approved the Acting
Assistant Commissioner's findings and recommendations



CONSERVE
AMERICA'S
ENERGY

*Save Energy and You Serve America!*

and referred the matter to the Solicitor for examination.
On May 20, 1916, however, the Solicitor sent the abstract
back because it covered the area of the original grant of
the nearly 49,000-acre ranch.   The Solicitor considered
it impracticable for his office to make a title search on
only 40 acres out of the massive record covering the
entire ranch.

In 1919 the abstract was finally reduced to a manageable
form and the Solicitor reviewed it.   The only defect
which the Solicitor found was an "east" which should
have been a "west" in an "unusually long metes-and-bounds
description."   The Solicitor concluded his report of
March 28, 1919, with:

> When this defect is corrected and the
> tract to be conveyed is free from the
> encumbrance of the deed of trust
> mentioned there are, so far as I have
> been able to discover, no good reasons
> why the transaction should not be
> finally consummated.

At the time the Department first tried to negotiate the
purchase of the land for the Band, the entire 49,000
acres of land was owned by the lone Coal and Iron Company.
The coal company later conveyed the land by deed of trust
to the McKissick Cattle Company, a subsidiary of the
Union Land and Cattle Company.   As already noted the
purchase was delayed because of the need to obtain an
abstract relating to only the 40 acres which were intended
to be purchased.   In the meantime the Union Land and
Cattle Company went into receivership and before a release
would be obtained from the receiver, Stanford University
acquired the bonds secured by the mortgage requiring new
efforts to secure a release.   Although these releases were
finally obtained, a new mortgage had been recorded in the
interim and still needed to be released.   The result of
this unfortunate chain of circumstances was that many
years passed and the efforts to acquire the land were
exhausted by the repeated frustrations.   Efforts to obtain
the land were renewed in 1927, 1935, 1941, and 1970 but
they were never successful.

On October 18, 1972, in response to a January 1972 inquiry,
Commissioner Bruce wrote to "Nicholas Villa and the lone

2

Band of Indians" in response to their request that the
United States accept the title to their land in trust.
In his letter Commissioner Bruce concluded:

> Federal recognition was evidently
> extended to the lone Band of Indians
> at the time the lone land purchase
> was contemplated. . . . I am
> directing the Sacramento Area Office
> to assist in the preparation of a
> document containing a membership
> roll and governing papers which con-
> form with the Indian Reorganization
> [sic].

On July 20, 1972, the Acting Area Director initiated his
own inquiry on behalf of the lone Band to request that
the land they had been living on for so many years be
taken in trust for them.    Seemingly unaware that the
Acting Area Director had subsequently received instruc-
tions from the Commissioner on the subject by means of a
copy of the Commissioner's October 18 letter to Mr. Villa,
the Deputy Assistant Secretary also responded.   By
memorandum of January 26, 1973, the Deputy Assistant
Secretary's memorandum acknowledged the earlier efforts
to purchase land for the Band and stated in part:

> The former contemplated purchase of
> land for them by the United States
> may indicate that they are a
> recognizable group entitled to
> benefits of the Indian Reorganization
> Act.  We have no correspondence,
> however, from the group requesting
> recognition or a desire to establish
> a reservation.

The memorandum concludes that:

> If the Band desires and merits Federal
> recognition, action should be taken to
> assist them to perfect an organization
> under the provisions of the Indian
> Reorganization Act.

I have decided that it is unnecessary to insist that the
group articulate and submit any further request for

3

formal recognition.  When the Assistant Secretary
reviewed and approved the Acting Assistant Commissioner's
findings and recommendation as to the purchase of the
land for this group in May 1916, he recognized that the
group was a Band of Indians entitled to the services and
benefits generally available under the law to Indians in
the same or similar circumstances.  When he reviewed the
title in 1919, the Solicitor raised no objection to this
conclusion.  In his October 1972 letter, Commissioner
Bruce acknowledged that recognition had been extended to
the group at the time the purchase of the land was
originally contemplated.  The only question arises out of
the equivocal language in the Deputy Assistant Secretary's
1973 memorandum.  There is no countermand in the
memorandum to the instructions contained in Commissioner
Bruce's October 1972 letter.  Indeed the concluding
paragraph of the memorandum seems to echo the
Commissioner's earlier instructions by directing that
action be taken to assist them organize under the provi-
sions of the Indian Reorganization Act.  There is also
nothing in the Deputy Assistant Secretary's memorandum to
suggest that any further action or approval at the
Washington level was required.

In view of all of the above circumstances, I hereby
reaffirm the conclusion reached by Commissioner Bruce in
October 1972 that recognition had been extended to this
group as a group of Indians at the time the purchase by
the United States of this tract was originally contem-
plated.  I ask that you assist the Band in preparing a
clear title to the 40-acre tract they have now acquired
by adverse possession to tender to the Secretary to be
held in trust for the group.  You are also requested to
assist the group in drafting appropriate governing docu-
ments for its organization under the Indian Reorganization
Act.



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D. C. 20245

IN REPLY REFER TO:

Surname

**Memorandum**

To:         Area Director, Sacramento

From:       Commissioner of Indian Affairs

Subject:    Recognition of lone Band of Indians and
            acceptance of land in trust


This is in response to your memorandum of May 28, 1974,
concerning the above subject. A review of the record
which you submitted and other materials available here
has now been completed. Commissioner Bruce concluded
by a letter of October 18, 1972, to the lone Band of
Indians and one Nicholas Villa that the Department of
the Interior had previously recognized the lone Band and
that since they had not voted to reject the Indian
Reorganization Act, they were entitled to organize pur-
suant to that Act. After reviewing all the materials, I
reaffirm that conclusion.

My conclusion is based on a number of facts. By
memorandum of May 2, 1916, the Acting Assistant
Commissioner submitted to the Secretary a partially
executed deed, title abstract, and other documents in
connection with the proposed purchase of 40 acres for a
group of homeless California Indians designated as the
lone Band. The memorandum indicated that the tract in
question was the ancient village site of the Indians.
Indeed Special Commissioner Terrell, who negotiated the
purchase for the Indians, was of the opinion that this
was probably the most important purchase of all that he
had negotiated because it did embrace their ancient
village home and the Indians were very needy. On the
same day, the Assistant Secretary approved the Acting
Assistant Commissioner's findings and recommendations

and referred the matter to the Solicitor for examination.
On May 20, 1916, however, the Solicitor sent the abstract
back because it covered the area of the original grant of
the nearly 49,000-acre ranch. The Solicitor considered
it impracticable for his office to make a title search on
only 40 acres out of the massive record covering the
entire ranch.

In 1919 the abstract was finally reduced to a manageable
form and the Solicitor reviewed it. The only defect
which the Solicitor found was an "east" which should
have been a "west" in an "unusually long metes-and-bounds
description." The Solicitor concluded his report of
March 28, 1919, with:

>        When this defect is corrected and the
>        tract to be conveyed is free from the
>        encumbrance of the deed of trust
>        mentioned there are, so far as I have
>        been able to discover, no good reasons
>        why the transaction should not be
>        finally consummated.

At the time the Department first tried to negotiate the
purchase of the land for the Band, the entire 49,000
acres of land was owned by the Ione Coal and Iron Company.
The coal company later conveyed the land by deed of trust
to the McKissick Cattle Company, a subsidiary of the
Union Land and Cattle Company. As already noted the
purchase was delayed because of the need to obtain an
abstract relating to only the 40 acres which were intended
to be purchased. In the meantime the Union Land and
Cattle Company went into receivership and before a release
would be obtained from the receiver, Stanford University
acquired the bonds secured by the mortgage requiring new
efforts to secure a release. Although these releases were
finally obtained, a new mortgage had been recorded in the
interim and still needed to be released. The result of
this unfortunate chain of circumstances was that many
years passed and the efforts to acquire the land were
exhausted by the repeated frustrations. Efforts to obtain
the land were renewed in 1927, 1935, 1941, and 1970 but
they were never successful.

On October 18, 1972, in response to a January 1972 inquiry,
Commissioner Bruce wrote to "Nicholas Villa and the Ione

2

Band of Indians" in response to their request that the
United States accept the title to their land in trust.
In his letter Commissioner Bruce concluded:

> Federal recognition was evidently
> extended to the Ione Band of Indians
> at the time the Ione land purchase
> was contemplated. . . . I am
> directing the Sacramento Area Office
> to assist in the preparation of a
> document containing a membership
> roll and governing papers which con-
> form with the Indian Reorganization
> [sic].

On July 20, 1972, the Acting Area Director initiated his
own inquiry on behalf of the Ione Band to request that
the land they had been living on for so many years be
taken in trust for them.   Seemingly unaware that the
Acting Area Director had subsequently received instruc-
tions from the Commissioner on the subject by means of a
copy of the Commissioner's October 18 letter to Mr. Villa,
the Deputy Assistant Secretary also responded.   By
memorandum of January 26, 1973, the Deputy Assistant
Secretary's memorandum acknowledged the earlier efforts
to purchase land for the Band and stated in part:

> The former contemplated purchase of
> land for them by the United States
> may indicate that they are a
> recognizable group entitled to
> benefits of the Indian Reorganization
> Act.  We have no correspondence,
> however, from the group requesting
> recognition or a desire to establish
> a reservation.

The memorandum concludes that:

> If the Band desires and merits Federal
> recognition, action should be taken to
> assist them to perfect an organization
> under the provisions of the Indian
> Reorganization Act.

I have decided that it is unnecessary to insist that the
group articulate and submit any further request for

3

formal recognition. When the Assistant Secretary reviewed and approved the Acting Assistant Commissioner's findings and recommendation as to the purchase of the land for this group in May 1916, he recognized that the group was a Band of Indians entitled to the services and benefits generally available under the law to Indians in the same or similar circumstances. When he reviewed the title in 1919, the Solicitor raised no objection to this conclusion. In his October 1972 letter, Commissioner Bruce acknowledged that recognition had been extended to the group at the time the purchase of the land was originally contemplated. The only question arises out of the equivocal language in the Deputy Assistant Secretary's 1973 memorandum. There is no countermand in the memorandum to the instructions contained in Commissioner Bruce's October 1972 letter. Indeed the concluding paragraph of the memorandum seems to echo the Commissioner's earlier instructions by directing that action be taken to assist them organize under the provisions of the Indian Reorganization Act. There is also nothing in the Deputy Assistant Secretary's memorandum to suggest that any further action or approval at the Washington level was required.

In view of all of the above circumstances, I hereby reaffirm the conclusion reached by Commissioner Bruce in October 1972 that recognition had been extended to this group as a group of Indians at the time the purchase by the United States of this tract was originally contemplated. I ask that you assist the Band in preparing a clear title to the 40-acre tract they have now acquired by adverse possession to tender to the Secretary to be held in trust for the group. You are also requested to assist the group in drafting appropriate governing documents for its organization under the Indian Reorganization Act.

cc:
Secretary's Files
BIA Surname
Commissioner of Indian Affairs
BIA, Atten: Code 440
BIA Control Office
BIA Mailroom File
Docket Files, SOL
(2) SKeep's Files, SOL
CMSoller's Files, SOL
RPChambers' Files, SOL
DIA Reading Files, SOL
DIA/Mrs. Holder's Files, SOL
DIA/Mrs. Smith's Files, (T3, 13-17), SOL

SOL/SKeep:tmws   3/7/75

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

DOI-SAR-V001-D0071 Page 23 of 45

~~Mr. Soller~~

~~Mr. Chambers~~

Re:  Ione

While I am convinced that the Commissioner
is not now Recognizing the Ione Band, the effect of the
memo is that they will now have recognized status.  Given
the sensitivity of our front office to this issue, I
recommend that this be cleared with them even though
it would not normally have to be.

3-10-75

Draft

Memorandum

To:        Associate Solicitor, Indian Affairs

From:      ~~Scott Keep~~, Attorney

Subject:   Recognition of Ione Band of Indians

The Ione Band of Indians is a small California group
residing on a 40 acre tract of land in the central
part of the State generally east of Sacramento.  The
Department has been trying to acquire land for this
group for almost 60 years.  The Bureau's excellent
"Note to Reviewers" recounts the ~~tragic~~ chain of ~~sax~~
circumstances which has th~~x~~us far ~~frastrated~~ the ac-
quisition in trust of the land on which the Band lives.
~~It reads like a Franz Kafka short story.~~

The Bureau's memorandum which is in for review is framed
in terms of extending Federal recognition to ~~xxxx~~Ione
Band.  Since my review  of the available materials ~~xxxxxxxxx~~ convinces
me that the Ione Band has previously ~~xxxxxx~~ been recognized
by the Federal Government, I believe some further explana-
tion would be ~~xxxxxxxxxxxxx~~appropriate.

In 1919 the Solicitor was requested for the second time to
review the title abstract to the 40 acre tract of land which
the Ione Band occupied prior to the United States' taking
~~xxx~~the land in trust for the Band.  The only defect which
the Solicitor found was an "east" which should have been a
"west" ~~and~~ in an "unsually long metes-~~y~~and-bounds description."

RETURN TO J. KEEP

The Solicitor concluded his report of March 28, 1919, with:

> When this defect is corrected and the tract
> to be conveyed is free from the encumbrance
> of the deed and of trust mentioned there are,
> so far as I have been able to discover, no
> good reasons why the transaction should not
> be finally consimated. *Consumated. (Emphasis added - See Tab A)*

For the reasons set out in the Bureau's "Note to Reviewers"
the purchase was never consimated. *consumated.* On October 18, 1972,
Commissioner Bruce wrote to Nicholas Villa and the Ione
Band of Indians in response to their request that the
United States accept the title to their land in trust.
(See Tab B). In his letter Commissioner Bruce concluded:

> Federal recognition was evidently extended to the Ione
> Band of Indians at the time the Ione land purchase was
> contemplated. . .I am directing the Sacramento Area Office
> to assist in the preparation of a document containing a
> membership roll and governing papers which conform with
> the Indian Reorganization (sic)." It is not clear from the

materials that I have why the Area Director did not
complete the action directed by the Commissioner.
In the meantime Deputy Assistant Secretary Hite by memorandum
of January 26, 1973, responded to a much earlier July, 1972,
memorandum from the Area Director. (See Tab C). Mr. Hite's
memo acknowledges the earlier efforts to purchase land for
Band and states in part:

> The former contemplated purchase of land
> for them by the United States may indicate
> that they are a recognizable group entitled
> to benefits of the Indian  Reorganization
> Act.  We have no correspondence, however,
> from the group requesting recognition or
> a desire to establish a reservation.

Mr. Hite's memo concludes that: "If the Band desires and merits Federal recognition, action should be taken to assist them to perfect an organization under the provisions of the Indian Reorganization Act." Unfortunately Mr. Hite's memo seems to have unnecessarily interjected some question at a late stage as to whether or not the group was recognized. ~~Since~~ The United States had attempted to purchase land for the Band since approximately 1916 and had been ~~xxixxxxxx~~frustrated in that endeavor only by a freak circumstances. It *would be extraordinary* ~~certainly seem strange~~ to expect the Band to initiate a request for recognition after 50 years of dealings. ~~Whether or not it~~

Whether or not it should have been required, the Band did in fact request (through the Area Director) that they be formally be recognized, who advised the Commissioner of the Bands request by memo of June 28,1973, (See Tab D). Apparently some time thereafter an additional request for further information ~~were~~ was made by the Bureau of Indian Affairs *which has ultimately resulted in the present Bureau memo.*

When the Solicitor reviewed the purposed purchase of land for this Band in 1919, the only questions he raised were with regard to whether or not the United States would get clear title. He does not question the fact that the United States could legally acquire the land for this ~~xxxxx~~group as Indians. In his October 1972 *memorandum* Commissioner Bruce clearly recognizes the group as a Band of Indians. The only

questions arise out of the ~~ambiguous/equivocal~~ *equivocal* language in
Deputy Assistant Secretary's ~~own~~ memorandum.   Indeed ~~even
that memorandum suggest that~~ the Deputy Assistant
Secretary even concedes that they may be entitled to
recognition but is primarily concerned with the fact
that the group had not requested recognition.   Not only
was that request forthcoming through the Area Director
but also the suggestion that a formal request was
necessary under the circumstances appears to be an
unjustified requirement.   For these reasons I would have
preferred that the Bureau's letter be framed in terms
of acknowledging that the Band is recognized already
rather than suggest*ING* that ~~the~~ affirmative *action in the form
of extending recognition* ~~at this time~~ *is necessary. Since the result
is the same, I have surnamed.*

*2-24-7͞1*

... a federally
recognized tribe by virtue of
the Bruce memo + any other
relevant history. I agree with you.
In light of Stillaguamish + the recognition
study, I can't surname this one, however.

Mr. Chambers:

Mr. Jolley —
Mr. Chambers —

Attached —

— May 2, 1916 memo from
Acting Assistant Comm' IA —
A - 1919 Sol. Opin.
B - 1992 Bruce letter
C - 1973 Dept. Assist Sec memo
D - 1973 Area Director's memo

I am assuming that this memo
will be cleared with our front
office. Mr. Striegel spoke with
me at some length last week
about the Bell letter (Tulalip).
I believe he would be upset if
this went to the Commissioner
without his approval or at least consent.

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C. 20242

Mr. Nicholas Villa and the
IONE BAND OF INDIANS
c/o Mrs. Bernice Villa
Route 1, Box 191
Ione, California  95640

OCT 12 1972

Dear Mr. Villa:

In January of this year the Bureau of Indian Affairs received a
letter from Robert J. Donovan, the Director of the California Rural
Indian Land Project. That letter requested that the United States
agree to accept title to a certain forty acre tract of land near
Ione, California and to hold that land in trust for the Ione Band
of Indians.

Since then the Bureau of Indian Affairs has learned that the Ione
Band has filed suit in Amador County Superior Court to quiet and
perfect title in their names. It has been informed that the Indians
continue to desire that the land ultimately be taken by the United
States and held in trust status.

The Secretary of the Interior recognizes his authority under 25
U.S.C. 465 to

"acquire, through purchase,
relinquishment, gift, exchange,
or assignment, any interest in
lands, water rights or surface
rights to lands, within or
without existing reservations,"

The Secretary also recognizes that, there having been no vote pursuant
to 25 U.S.C. 478 by the Ione Indians, the provisions of 465 apply to
them. The Secretary also recognizes that obtaining a tribal or
community land base for the Ione Band is a part of his policy of Indian
self-determination and cultural identification.

- 2 -

...cognition was evidently extended to the Ione Band of Indians
... that the Ione land purchase was contemplated.  As stated
..., they did not reject the Indian Reorganization Act and thus
...ligible for the purchase of land under this act.  The Sacramento
... Office of the Bureau of Indian Affairs should determine that the
... is merchantable and free of encumbrance.  I am directing the
Sacramento Area Office to assist in the preparation of a document
containing a membership roll and governing papers which conform with
the Indian Reorganization.

As the Commissioner of Indian Affairs, I therefore, hereby agree to
accept by relinquishment of title or gift the follwing described
parcel of land to be held in trust for the Ione Band of Miwok Indians:

> Beginning at the point of in-
> tersection of the center line
> of the County Road to Jackson,
> with the Westerly line of the
> fifty-two acre tract of land
> owned by Anthony Meath, Armando
> Dellaringa, Rocco Dellaringa,
> and Albert Dellaringa, as re-
> corded in Book 130 Official
> Records, Amador County, Calif-
> ornia page 98; thence following
> the center line of said County
> Road, North sixty-five degrees,
> fifty minutes West (N. 65° 50'W.)
> One thousand seven hundred twenty
> five (1725) feet to a point;
> thence at right angles, North
> twenty-four degrees, ten minutes
> East (N. 24° 10'E) One thousand
> seventy two (1072) feet to a point;
> thence at right angles; South
> sixty-five degrees, fifty minutes
> East (S. 65° 50'E) One thousand
> five hundred thirty one (1531)
> feet to the West boundary of the
> said property of Anthony Meath,
> Armando Dellaringa, Rocco Dell-
> aringa and Albert Dellaringa; thence
> following said boundary line,
> South fourteen degrees, eight
> minutes West (S. 14° 08'W) One
> thousand eighty-seven (1087) feet
> to the point of beginning.

BIA surname
300
Mailroom
elw 9/27/72

Sincerely,

(Sgd) Louis R. Bruce

Commissioner

26029

Land-Allotments
42198-16
P B M

MAY -2 1916

The Honorable

The Secretary of the Interior,

Sir:

  There are enclosed herewith a partially executed
deed, abstract of title in two volumes, and plat of survey
in connection with the desired purchase of 40 acres in Amador
County, at the price of $2,000 from the Ione Coal & Iron
Company, for the use of 101 homeless California Indians,
designated as the Ione Band.

  The tract in question is the ancient village site
of these Indians and contains some rich valley land.

  The abstract of title in this case covers other
land in addition to the 40 acres to be purchased.   The
company's President has not signed the deed because he first
wants to know that it is perfectly satisfactory.   If the
record of title is found to be satisfactory, the deed will
be signed in proper form.

  Attention is invited to the fact that no revenue
stamps have been affixed to the deed and cancelled and also
to the fact that no sufficient authority is shown in the deed
or abstract that the grantor corporation is empowered by its
charter to buy or sell land.   It is believed that such
authority, and also the authority of the president to ex-

ecute this conveyance in behalf of the corporation, should be shown.

However, since there may be other defects in the record of title, all the papers are submitted for the usual examination, so that all the defects may be called to the attention of the grantor company at one time.

It is recommended that these enclosures be referred  to the Solicitor for the Interior Department for his examination and opinion as to  whether (subject to the removal of all mortgages, liens, encumbrances, or payment of taxes, affixing of proper revenue stamps and proper showing by the Company of its authority to accept and make conveyances by its president), a valid unencumbered title would vest in the United States upon recordation of the deed.   It is understood that no payment is to be made until after a valid unencumbered title has been placed on record as being in the United States.

If the Solicitor's opinion is favorable, the Office will take whatever steps he may suggest as necessary to perfect the record of title, place  the deed on record and bring the abstract down to the date of recordation.

Respectfully,

(Signed) C. F. Hauke

Acting Assistant Commissioner.

MAY -2 1916
Approved and referred to the Solicitor for the

Interior Department for examination and opinion as above requested.

(Sgd.) BO SWEENEY.

Assistant Secretary.

Scott -

Prepare a different memorandum for Monie to sign indicating that the Lone Band is a federally recognized tribe by virtue of the Bruce memo & any other relevant history. I agree with you. In light of Stillaguamish & the recognition study, I can't assume this one, moreover.

Mr. Bulley — [initials] 2/1/01
Mr. Flanders —

1/1 Thanks! —

— May 2, 1916 memo from [____] Acting Assistant Comm'r IIA —

A - 1919 Sol. Opin. letter
B - 1972 Bruce letter
C - 1973 Dep.T. Assist. Sec memo
D - 1993 Area Director memo

I am assuming that this memo will be cleared with our Joint Office. Mr. Stringel agrees with some at [____] length that we agree about the Bell letter. (Tuesday).

DEPARTMENT OF THE INTERIOR
OFFICE OF THE SOLICITOR
WASHINGTON

D-40059

MAR 29 1910

The Honorable

Secretary of the Interior.

Dear Mr. Secretary:

An examination of the accompanying abstract
of the recorded title to certain lands which the McKis-
sick Cattle Company proposes to convey to the United
States for the benefit of certain homeless Indians in
California discloses the fact that the fee simple title
to the tract mentioned is vested in that company, which
is subject, with other lands, to the encumbrance of a
deed of trust executed by it to secure to the Iobe Coal
and Iron Company the payment of an indebtedness of
$400,000; and it is also possibly subject to certain
right of way easements which would not, however, in any
way decrease the value of the land for the purposes for
which it is desired.   This tract is a part of the
48,857.52 acres formerly embraced in the Arroyo Seco
Rancho in the county of Amador, California, which was
patented by the United States to J. Mora Moss and others
on August 29, 1863, and passed from them through numer-
ous conveyances to the Ione Coal and Iron Company in

D-40059

1890, by which the land has since been held until that
company conveyed it to the present owner on September
1, 1917.

There are minor defects in some of the deeds
antedating the conveyance to the Ione Coal and Iron
Company, and a lack of evidence as to whether some of
the intermediate grantors were married or single, but
a consideration of these possible defects is rendered
unnecessary by the fact that nearly forty years have
elapsed since title came to that company and during
all that time no adverse claims have been asserted to
the land and no question has been raised as to the suf-
ficiency of the title.

The only defect worthy of notice is found in
the second line from the bottom of p.82 of the abstract
where one of the calls in an unusually long metes-and-
bounds description of the entire tract conveyed is erro-
neously given as "thence S. 14° 1½' East, 1,686.4 feet;
thence N. 65° 56' W., 13 feet;  thence N. 85° 40' W.,
3,042.5 feet to an iron post."  The error in this de-
scription consists in the use of the word "East" when
the true call made the word "West" necessary.  This.

-2-

D-40059

description appears to constitute a part of the boundary
of the tract to be conveyed on its southerly and easterly
sides, and the mistake made would have a material effect
in the description and should, for that reason, be cor-
rected, if the same error appears in the deed.   The ab-
stract appears to have been prepared with great care and
it seems safe to say that the mistake was copied from the
record of the deed.   However, the deed may have been in
this respect incorrectly recorded.   If so, the record
should be corrected.   But if the record correctly gives
the wording of the deed a new deed should be executed for
the purpose of correcting the error.

When this defect is corrected and the tract to
be conveyed is free from the encumbrance of the deed of
trust mentioned there are, so far as I have been able to
discover, no good reasons why the transaction should not
be finally consummated.

Cordially yours,

Solicitor.

Enclosure (34409).

-3-

5 copies to Indian Office with record.
1 copy to Miscellaneous Section.
Original and copy filed.

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C. 20242

Mr. Nicholas Villa and the
IONE BAND OF INDIANS
c/o Mrs. Bernice Villa
Route 1, Box 191
Ione, California  95640

OCT 13 1972

Dear Mr. Villa:

In January of this year the Bureau of Indian Affairs received a
letter from Robert J. Donovan, the Director of the California Rural
Indian Land Project.  That letter requested that the United States
agree to accept title to a certain forty acre tract of land near
Ione, California and to hold that land in trust for the Ione Band
of Indians.

Since then the Bureau of Indian Affairs has learned that the Ione
Band has filed suit in Amador County Superior Court to quiet and
perfect title in their names.  It has been informed that the Indians
continue to desire that the land ultimately be taken by the United
States and held in trust status.

The Secretary of the Interior recognizes his authority under 25
U.S.C. 465 to

> "acquire, through purchase,
> relinquishment, gift, exchange,
> or assignment, any interest in
> lands, water rights or surface
> rights to lands, within or
> without existing reservations,"

The Secretary also recognizes that, there having been no vote pursuant
to 25 U.S.C. 478 by the Ione Indians, the provisions of 465 apply to
them.  The Secretary also recognizes that obtaining a tribal or
community land base for the Ione Band is a part of his policy of Indian
self-determination and cultural identification.

- 2 -

Federal recognition was evidently extended to the Ione Band of Indians
at the time that the Ione land purchase was contemplated. As stated
earlier, they did not reject the Indian Reorganization Act and thus
are eligible for the purchase of land under this act. The Sacramento
Area Office of the Bureau of Indian Affairs should determine that the
land is merchantable and free of encumbrance. I am directing the
Sacramento Area Office to assist in the preparation of a document
containing a membership roll and governing papers which conform with
the Indian Reorganization.

As the Commissioner of Indian Affairs, I therefore, hereby agree to
accept by relinquishment of title or gift the following described
parcel of land to be held in trust for the Ione Band of Miwok Indians:

> Beginning at the point of in-
> tersection of the center line
> of the County Road to Jackson,
> with the Westerly line of the
> fifty-two acre tract of land
> owned by Anthony Meath, Armando
> Dellaringa, Rocco Dellaringa,
> and Albert Dellaringa, as re-
> corded in Book 130 Official
> Records, Amador County, Calif-
> ornia page 98; thence following
> the center line of said County
> Road, North sixty-five degrees,
> fifty minutes West (N. 65° 50'W.)
> One thousand seven hundred twenty
> five (1725) feet to a point;
> thence at right angles, North
> twenty-four degrees, ten minutes
> East (N. 24° 10'E) One thousand
> seventy two (1072) feet to a point;
> thence at right angles, South
> sixty-five degrees, fifty minutes
> East (S. 65° 50'E) One thousand
> five hundred thirty one (1531)
> feet to the West boundary of the
> said property of Anthony Meath,
> Armando Dellaringa, Rocco Dell-
> aringa and Albert Dellaringa; thence
> following said boundary line,
> South fourteen degrees, eight
> minutes West (S. 14° 08'W) One
> thousand eighty-seven (1087) feet
> to the point of beginning.

BIA surname                                    Sincerely,

Wilroom
Staley  9/27/30                                (Sgd) Louis R. Bruce

## IONE PROJECT

IV — Information on families to be resettled
    A — Number of families  ―― 19
        Present residential status ― single families and small groups of families scattered throughout the county on land grant lands not individually owned or government owned.

        Occupational Status ――      Able-bodied men work for some 8 months on neighboring ranches, on public works or in mines for a somewhat longer period, as day or monthly labor.

        Financial Status ――      Poor, with no reserve.

V — Description of proposed resettlement project
    A — Type of project - Land Utilization Div. Resettlement.
    B — Number of families to be resettled in the project  ― 19
    C — Average acreage - 8.42 acres per family
    D — Total acreage needed for the project - 160
    E — Type of farming proposed — diversified, under irrigation with some intensive cropping to vegetables for market purposes.

VI — Cost
    A — Total cost of land  - $24,000.00
    B — Total cost of development
        1 — Houses    ―――   $16,625.00
        2 — Outbuildings -     3,800.00
        3 — Irrigation and domestic water  -  $2,750.00
        4 — Stock and poultry - $850.00
        5 — Feed and seed     - 300.00
        6 — Gravel and road construction - 1 mile  ―― $1,000.00

    C — Total cost of project  ―― $49,325.00
    D — Average Unit Cost   ――    2,596.05 per family.

There are some 135 Indians living in Amador County, within easy reach of the town of Ione, of whom 75 are at present without homes on land that is individually owned or owned by the Government. These would gladly welcome an opportunity to establish homes on government land where some semblance of permanency might be expected. As it is, most of them now live on lands temporarily assigned them by the present owners of old Spanish land grants, on isolated spots not used by individual ranchers or wherever they find unused land upon which they may squat.    In rare cases a few individuals own private tracts of land of one-half to two acres.

In common with most of the California Indians, these live in poorly constructed shacks which are far from weather-proof and into which large families of from 6 to 9 individuals are crowded into a single room or two.

Labor for this group has not been overly plentiful and except for summer work on the ranches, some SERA and CCC assignments, and limited work in mines and on highway construction, there is little to which he may turn for employment.    The result is that he has no surplus over and above his daily needs, even when these are met, and rehabilitation through his own efforts and ability is out of the question.

The establishment of this group upon land of the quality proposed for purchase should lift the load of support from the County and Governmental Agencies, go a long way toward making all Indians in this County self-supporting, would remove the threat which accompanies unsanitary and unhealthful housing and living conditions, would place all the children within easy reach of county and state schools, would place all the Indians effected upon a state highway where supervision could be easily given them and where their products would have a ready market.    Such ends would appear to justify both the money and the effort necessary to attain them.

                                        E. M. Johnston,
                                        U.S. Farm Advisor.

26 JAN 1973

Memorandum

To:        Area Director, Sacramento Area
           Bureau of Indian Affairs

From:      Assistant Secretary of the Interior

Subject:   Ione Band of Indians

This relates to your memorandum of July 20, 1972, in which
you pose the question of whether or not the Bureau would
accept a 40-acre tract of land and hold it in trust for
the Ione Band of Indians.  The California Rural Indian Land
Project has filed an action in the Superior Court of the
State of California to quiet title to the parcel for the
benefit of the Ione Band.

During the 1920's and possibly even later the United States
attempted to purchase the parcel for the Band; however, the
efforts were dropped, evidently because of the faulty title.
It is true that the Band can be considered as a group that
did not vote against the application of the Indian Reorganiza-
tion Act, and the former contemplated purchase of land for
them by the United States may indicate that they are a
recognizable group entitled to benefits of the Indian
Reorganization Act.  We have no correspondence, however, from
the group requesting recognition or a desire to establish
a reservation.

If the Band desires and merits Federal recognition, action
should be taken to assist them to perfect an organization
under the provisions of the Indian Reorganization Act.

                        /s/ Richard R. White

                             Assistant Secretary
                                of the Interior

cc: Secretary's Surname
    Secretary's Reading File (2)
    IA Reading File
    BIA Surname
    300 - Attn: Jim Egar
    352    Chrony Mailroom
350:LWhite/lpm/12-20-72          (M-01 Ref. 8)

Supplemental Muwekma Ohlone Administrative Record - Department of Interior



United States Department of the Interior ✓ FILE COPY
Surname:

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240

LIA
Real Estate Svcs.
Acq. & Disp.

Memorandum

JUL 7 1973

To:      Area Director, Sacramento Area
         Bureau of Indian Affairs

From:    Assistant Secretary of the Interior

Subject: Ione Band of Indians

This relates to your memorandum of July 20, 1972, in which
you pose the question of whether or not the Bureau would
accept a 40-acre tract of land and hold it in trust for
the Ione Band of Indians.  The California Rural Indian Land
Project has filed an action in the Superior Court of the
State of California to quiet title to the parcel for the
benefit of the Ione Band.

During the 1920's and possibly even later the United States
attempted to purchase the parcel for the Band; however, the
efforts were dropped, evidently because of the faulty title.
It is true that the Band can be considered as a group that
did not vote against the application of the Indian Reorganiza-
tion Act, and the former contemplated purchase of land for
them by the United States may indicate that they are a
recognizable group entitled to benefits of the Indian
Reorganization Act.  We have no correspondence, however, from
the group requesting recognition or a desire to establish
a reservation.

If the Band desires and merits federal recognition, action
should be taken to assist them to perfect an organization
under the provisions of the Indian Reorganization Act.

**FROM SOLICITOR**

JAN 9 1973          (Sgd.) Richard R. Hite

**FOR SIGNATURE**    Deput Assistant Secretary
                     of the Interior

cc: Secretary's Surname
    Secretary's Reading File (2)
    IA Reading File
    BIA Surname
    300 — Attn: Jim Fgar
    352   Chrony Mailroom
350:LWhite/lpw/12-20-72          (I-01 Ref. 8)

INTERIOR DEPT.

JAN 5  1973

SOLICITOR

COPY FOR THE SECRETARY'S OFFICE



IN REPLY REFER TO:

Real Prop. Mgmt. Area
320-Central Calif. Agcy.
308-Ione Rancheria

## UNITED STATES
## DEPARTMENT OF THE INTERIOR

### BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California  95825

JUL 5 1973

JUN 2 8 1973

AIRMAIL

Commissioner of Indian Affairs

Washington, D. C.  20245

Attention:  Real Estate Services

Sir:

By letter dated June 8, 1973, we outlined the situation of
a small group of Indians in Amador County, California, who
have recently acquired title to a forty-acre tract of land.
It is their request that they be formally recognized by the
Secretary as an Indian band and that title to the land be
held in trust for them by the Secretary.

We have been advised that Mr. Newton Edwards will consider
this request and he has requested our record of this situation.
Enclosed herewith is our complete record of this group as we
know it from 1918 to the present time.  Will you please for-
ward this record to Mr. Edwards.

Sincerely yours,

William E. Finale

Area Director

Enclosures

R-1-74

JUL 2 - 1973

Tribal Government Services                              Aug 4, 1977

Memorandum

To:      Sacramento Area Director

From:    Acting Deputy Commissioner of Indian Affairs

Subject: Ione Band's Request for Federal Recognition


The question of extending Federal recognition to the Ione Band of
Indians has been pending for a number of years. It has been of
special concern for the past five years. We are enclosing a copy
of proposed regulations concerning Federal recognition which were
published on June 16. We are looking forward to any comments the
Ione group may have on the proposal.

We will forward copies of the final regulations as soon as they become
available, and request that the Ione Band resubmit its petition for
recognition at that time in accordance with the regulations.

We realize that you, your staff and the leaders of the Ione Band have
expended a great amount of effort in seeking Federal recognition for
the Band. In view of the time and efforts already involved in this
task, we regret the inconvenience of submitting another request for
recognition. We do feel, however, that processing the Ione's request
under the new regulations, once they are finalized, will be the fastest
way to reach a final determination as to the Ione Band's status.

                         Raymond V. Butler



cc: Scott Keep, Rm. 6447

cc: Surname
    BCCO
    Commr. Reading File
    Chrony 440
    Mailroom
    Holdup:JSHAPARD:dlb:7/5/77:Cass. X-A

# SAR EXHIBIT 104

Real Property Mgmt.
365 Ione

JUL 20 1972

# AIR MAIL

Commissioner of Indian Affairs

Washington, D. C.  20242

Attention:  Real Estate Services

Sir:

The California Rural Indian Land Project, a project of
California Indian Legal Services, has filed an action in the
Superior Court of the State of California for the County of
Amador to quiet title on a 40-acre parcel for the benefit of
members of the Ione Band of Indians.  A copy of the complaint
is enclosed.

In August of 1970 a Bureau employee visited the families
situated on this tract.  At that time there were seven families
residing on the tract.  Records were searched in the Bureau of
Indian Affairs Office and it was found that the Bureau attempted
to purchase the property for the Ione Band of Indians during
the period 1916 to 1930, but the Bureau was never able to com-
plete the transaction because of not being able to get a clear
title to the land.  Some of the correspondence has a Central
Office file number of 36222-22.

This parcel is a portion of Lot 277 of the 48,857.52 acre Arroyo
Seco Rancho, which was patented by the United States to J. Mora
Moss and others on August 29, 1863.

A title search was made by the Western Land Title Company, Inc.,
Jackson, California, who advised that there are numerous deeds
of record describing the entire Rancho wherein a 40-acre tract
of land is mentioned.  In a deed from McKissick Cattle Company,
a Nevada corporation, to Stephen E. Kieffer, entered into
January 24, 1925, appeared the first specific mention of a 40-
acre parcel.

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

2

This exception reads as follows:

"Also excepting therefrom a 40-acre tract of land
heretofor sold to the United States Government.

The land is now fenced and used as an Indian
reservation."

A similar exception is found in all subsequent deeds.

The CRILP has requested whether or not the Bureau would accept the
40-acre tract of land and hold it in trust for the lone Band of
Indians. This Band can be considered as a group that did not vote
against the application of the Indian Reorganization Act, and
Sections 5 and 7 of the IRA could be utilized to accept the land
and establish a new Indian reservation.

Sincerely yours,

(SGD)Robert N. Seitz

Acting Area Director

Enclosure

cc: Regional Solicitor, Attn:  Mr. Bordenkircher, w/cy encl.

Central Office, Frank Hutchinson, w/cy encl.

RNSeitz:mbf   7-20-72

Real Property Mgmt.
1303 Ione

JUL 20 1972

# AIR MAIL

Commissioner of Indian Affairs

Washington, D. C.  20242

Attention:  Real Estate Services

Sir:

The California Rural Indian Land Project, a project of
California Indian Legal Services, has filed an action in the
Superior Court of the State of California for the County of
Amador to quiet title on a 40-acre parcel for the benefit of
members of the Ione Band of Indians.  A copy of the complaint
is enclosed.

In August of 1970 a Bureau employee visited the families
situated on this tract.  At that time there were seven families
residing on the tract.  Records were searched in the Bureau of
Indian Affairs Office and it was found that the Bureau attempted
to purchase the property for the Ione Band of Indians during
the period 1916 to 1930, but the Bureau was never able to com-
plete the transaction because of not being able to get a clear
title to the land.  Some of the correspondence has a Central
Office file number of 36222-22.

This parcel is a portion of Lot 277 of the 48,857.52 acre Arroyo
Seco Rancho, which was patented by the United States to J. Mora
Ross and others on August 29, 1863.

A title search was made by the Western Land Title Company, Inc.,
Jackson, California, who advised that there are numerous deeds
of record describing the entire Rancho wherein a 40-acre tract
of land is mentioned.  In a deed from McKissick Cattle Company,
a Nevada corporation, to Stephen E. Kieffer, entered into
January 24, 1925, appeared the first specific mention of a 40-
acre parcel.

2

This exception reads as follows:

> "Also excepting therefrom a 40-acre tract of land
> heretofor sold to the United States Government.
>
> The land is now fenced and used as an Indian
> reservation."

A similar exception is found in all subsequent deeds.

The CRILP has requested whether or not the Bureau would accept the
40-acre tract of land and hold it in trust for the Ione Band of
Indians. This Band can be considered as a group that did not vote
against the application of the Indian Reorganization Act, and
Sections 5 and 7 of the IRA could be utilized to accept the land
and establish a new Indian reservation.

                    Sincerely yours,

                    (SGD)Robert N. Seitz

                    Acting Area Director

Enclosure

cc:  Regional Solicitor, Attn:  Mr. Bordenkircher, w/cy encl.

     Central Office, Frank Hutchinson, w/cy encl.

RNSeitz:mbf  7-20-72

## DEED OF PARTIAL RECONVEYANCE

WHEREAS, Mercantile Trust Company of San Francisco is named as Trustee in the Deed of Trust executed by McKissick Cattle Company, a corporation, to Mercantile Trust Company of San Francisco, a corporation, as Trustee, for the benefit of IONE COAL AND IRON COMPANY, a corporation, dated the 11th day of October, 1919, and recorded in the office of the County Recorder of Amador County, State of California, on the 18th day of October, 1919, in Volume 7 of Trust Deeds, at page 51 thereof; and

WHEREAS, on the 3rd day of July, 1920, Savings Union Bank and Trust Company and Mercantile Trust Company of San Francisco, consolidated under the laws of the State of California, said consolidated corporation being known as MERCANTILE TRUST COMPANY (whose name has since been changed to Mercantile Trust Company of California) which consolidated corporation has succeeded to all properties, trusts, claims, demands, contracts, agreements, assets choses and rights in action of every kind and description owned and enjoyed by said Mercantile Trust Company of San Francisco; and

WHEREAS, under the conditions of said trust said trustee is now authorized to reconvey the property hereinafter described:

NOW THEREFORE, the MERCANTILE TRUST COMPANY OF CALIFORNIA, Trustee, does hereby remise, release, quitclaim and reconvey unto the said McKISSICK CATTLE COMPANY, a corporation, heirs and assigns, without any warranty, all the estate and interest derived to it by or through said Deed of Trust, in that part of the lands described in said deed of trust, situated in the County of Amador, State of California, together with the appurtenances, described as follows, to wit:

> "Beginning at the point of intersection of the
> Center line of the County Road to Jackson, with the Wester-
> ly line of the One hundred fifty-three acre tract of land
> owned by E. J. Diebold;  thence following the center line
> of said County Road, North Sixty-five degrees, Thirty minutes
> West (N.65 50' W.) One thousand seven hundred twenty-five

(1725) feet to a point;  thence at right angles, North
twenty-four degrees, ten minutes East (N.24 10' E.)
One thousand seventy-two (1072) feet to a point;  thence
at right angles, South sixty-five degrees, fifty minutes
East (S.65 50' E.)  One thousand five hundred and thirty-
one (1531) feet to a point in the line of a wire fence
on the West boundary of the said property of said E. J.
Diebold;  thence following said fence line, South fourteen
degrees, eight minutes West (S.14 08' W.)  One thousand
eighty-seven (1,087) feet to the point of beginning,
   The same being a portion of the Rancho Arroyo Seco
in Amador County, California."

TO HAVE AND TO HOLD, the same, without any warranty, unto
the said McKISSICK CATTLE COMPANY, a corporation, heirs and
assigns forever.

IN WITNESS WHEREOF, said MERCANTILE TRUST COMPANY OF
CALIFORNIA, as Trustee, has caused this instrument to be executed
and its corporate seal to be hereto affixed, this_____day of
_____,192_.

MERCANTILE TRUST COMPANY OF
CALIFORNIA, Trustee.

By_____
Vice-President.

_____
Secretary.

THIS DEED OF TRUST made this 11th day of October, 1919,
by and between McKISSICK CATTLE COMPANY, a corporation duly
created, organized and existing under and by virtue of the laws of
the State of Nevada, party of the first part, grantor, and MERCANTILE
TRUST COMPANY OF SAN FRANCISCO, a corporation created, organized
and existing under and by virtue of the laws of the State of
California, and having its office and principal place of business
in the City and County of San Francisco, State of California,
party of the second part, Trustee, and IONE COAL AND IRON COMPANY,
a corporation created, organized and existing under and by virtue
of the laws of the State of California, and having its office
and principal place of business in the City and County of San
Francisco, State of California, the party of the third part;

WHEREAS the party of the first part heretofore on the 1st
day of September, 1917, made, executed and delivered to the party
of the second part herein, a deed of trust in which said deed
of trust  the McKissick Cattle Company was made party of the first
part, grantor, the Mercantile Trust Company of San Francisco,
party of the second part, Trustee, and the Ione Coal and Iron
Company was named as party of the third part, which said deed
of trust was given to secure an indebtedness of the party of
the first part to the party of the third part in the sum of Four
Hundred Thousand Dollars ($400,000.00), in gold coin of the
United States of the present standard of weight and fineness,
and did agree to repay the same with interest thereon according
to the terms of two certain promissory notes dated the 1st
day of September, 1917, together with interest thereon, executed
and delivered by said McKissick Cattle Company to the Ione Coal
and Iron Company, said deed of trust being recorded in the
County of Sacramento, on the 17th day of September, 1917, in
Book 471 of Deeds, page 262, in the office of the County Recorder
of Sacramento County, State of California, and was also recorded
on the 3rd day of October, 1917, in Vol. 5 of Trust Deeds, page
445, in the office of the County Recorded of Amador County,
State of California; and

- 1 -

DOI-SAR-V001-D0062 Page 7 of

WHEREAS said indebtedness and said promissory notes have not been fully paid and discharged, and whereas it is the desire of the McKissick Cattle Company to give further security to secure the payment of said indebtedness according to the terms of said promissory notes.

NOW, THIS INDENTURE WITNESSETH:

That the said party of the first part in consideration of the premises and the aforesaid indebtedness and the sum of one dollar to it in hand paid by said party of the second part, the receipt whereof is hereby acknowledged, and for the purpose of securing the payment of said promissory notes and of all moneys agreed or provided to be paid by said party of the first part to said party of the third part, has granted, bargained, sold, conveyed and confirmed, and does by these presents, grant, bargain, sell, convey and confirm unto said party of the second part, its successors and assigns all that certain real property and rights therein, situate, lying and being in the Counties of Amador and Sacramento, State of California, and particularly described as follows:

> All real estate, minerals, metals, coal, clay and sand, also all mineral, metal, coal, clay and sand rights, and the right to mine and extract the same, wheresoever situated, within the territory commonly known as Arroyo Seco Rancho, containing eleven (11) square leagues of land, more or less, and described in patents to Joseph Mora Moss, Horace W. Carpentier, Edward F. Beale and Herman Wohler, dated Aug. 29, 1863, and recorded in Book "I" of Deeds, page 403, et seq., records of Amador County, excepting such portions thereof as have been conveyed to other persons by the party of the first part, or its predecessors in interest.

TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, homestead and other claims or demands as well in law in equity which the said grantor now has or may hereafter or to said property, or any part thereof.

-9-

DOI-SAR-V001-D0062 Page 8 of 14

TO HAVE AND TO HOLD the same unto the said party of the second part, and its successors and assigns upon the trusts and each thereof expressed in said deed of trust dated the 1st day of September, 1917, made and executed by said McKissick Cattle Company to said Mercantile Trust Company of San Francisco, and recorded on the 17th day of September, 1917, in Book 471 of Deeds, page 262, in the office of the County Recorder of said Sacramento County, State of California, and also recorded on the 3rd day of October, 1917, in Vol. 5 of Trust Deeds, page 445, in the office of the County Recorder of said Amador County, State of California, to which reference is hereby made as though the same were fully incorporated herein, and all the covenants, conditions and agreements therein contained shall be binding upon the heirs, executors, administrators, assigns and successors of the parties hereto.

IN WITNESS WHEREOF the party of the first part has caused these presents to be executed under its corporate name and seal by its President and Secretary thereunto duly authorized, the day and year first above written.

McKISSICK CATTLE COMPANY

By    J. T. DUNN
President

By    L. D'A. PRINCE
Secretary

State of Nevada  )
              ) SS.
County of Washoe )

On this eleventh day of October, in the year one thousand nine hundred and nineteen, before me, J. W. Davey, a Notary Public in and for said County and State, residing therein, duly commissioned and sworn, personally appeared J. T. Dunn and L. D'A. Prince, known to me to be the President and Secretary respectively, of the corporation described in and that executed the annexed instrument, and also known to me to be the persons who executed it on behalf of the corporation therein named, and they acknowledged to me that such corporation executed the same.

In witness whereof, I have hereunto set my hand and affixed my official seal, the day and year first above written.

J. W. Davey
Notary Public in and for the
County of Washoe, State of Nevada.

Commission expires April 24, 1924.

1   ROBERT J. DONOVAN
    STEVEN R. FLEISHER
2   CALIFORNIA INDIAN LEGAL SERVICES
    2527 Dwight Way
3   Berkeley, California  94704
    Telephone:  415/845-6173
4
    Attorneys for plaintiffs
5

6

7               SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    FOR THE COUNTY OF AMADOR

9

10  NICOLAS VILLA SR., EFFIE BURRIS,      )
    ESTHER BURRIS, HAROLD E. BURRIS,      )
11  BARBARA E. HILL, FRED MIKE,           )
    MURIEL MIKE, FRANK R. PINION,         )
12  BERNICE VILLA, DONALD M. VILLA,       )
    GLEN A. VILLA, WILLIAM A. VILLA,      )   NO. _____
13  & other members of the IONE           )
    BAND OF INDIANS,                      )
14                                        )   COMPLAINT TO DETERMINE
                    Plaintiffs,           )
15                                        )   ADVERSE CLAIM TO REAL
         VS.                              )
16                                        )   PROPERTY.
    W. H. MOFFAT, W. T. SMITH,            )
17  R. S. FRASER, J. H. CLEMONS,          )
    J. W. DAVEY, J. G. HOOPER,            )
18  As Successors in interest to          )
    the Union Land & Cattle Company;      )
19  and W. T. SMITH, R. S. FRASER,        )
    GEORGE S. BROWN, As Successors        )
20  in interest to the McKissick          )
    Cattle Company; and Crocker-          )
21  Citizens National Bank, as            )
    Trustee for the estate of             )
22  CHARLES S. HOWARD,                    )
                                          )
23                  Defendants, and       )
    all other persons unknown, claiming   )
24  any right, title, estate, lien or     )
    interest in the real property des-    )
25  cribed in the complaint adverse to    )
    plaintiff's ownership, or any cloud   )
26  _____   )

27

28        1.  This action, brought pursuant to C. C. P. A. §§738

29  and 749, is being brought so that a small band of California

30  Indians might finally possess that which they, their fathers,

31  and their father's fathers, were promised by the United States

32  Government more than fifty years ago:  title to the forty-acre

Supplemental Muwekma Ohlone Administrative Record - Department of Interior

parcel of land in Amador County, California, that this band
of Indians has always considered its home.

2. Plaintiffs, THE IONE BAND OF INDIANS, are all
citizens of the State of California and have resided contin-
uously for a period of fifty years or more on a forty-acre
parcel of land in Amador County near Ione, California.

3. Defendants MOFFAT, SMITH, FRASER, CLEMONS, DAVEY
and HOOPER are former officers and directors and now successors
in interest to the UNION LAND AND CATTLE COMPANY, a Nevada
Corporation whose charter was revoked in March 1927.  Defendants,
SMITH, FRASER, and BROWN are former officers and directors
and now successors in interest to the MCKISSICK CATTLE COMPANY,
a Nevada Corporation whose charter was revoked in March 1927.
N. R. S. §78.59.  Defendant CROCKER-CITIZENS NATIONAL BANK,
is trustee for the estate of Charles S. Howard.

4. In about 1918, MCKISSICK CATTLE COMPANY, a sub-
sidiary of the UNION LAND AND CATTLE COMPANY, came into
possession of a large tract of land near Ione, California
of which the forty-acre parcel here at issue was a part.

5. Negotiations concerning the forty-acre parcel
developed between the Indian Service of the United States
Department of the Interior and the MCKISSICK CATTLE COMPANY.

6. Shortly thereafter, the first specific mention
of the forty-acre parcel appeared in a deed conveying a
large tract of land surrounding the forty-acre parcel here
at issue.  This was in a deed from the MCKISSICK CATTLE
COMPANY to Stephen E. Kieffer dated January 24, 1925 and
recorded on July 6, 1926, in Book 45, page 255 of Amador
County Deeds.  That deed specifically excepted " a forty-acre
tract of land heretofore sold to the United States Government,
which land is now fenced and used as an Indian Reservation.

-2-

1  A similar exception can be found in a later deed from the
2  Western Investment Company to Charles S. Howard recorded
3  January 15, 1952, in Book 47, page 133, Amador County Official
4  Records.

5      7.  Despite this fact, assessors records now show the
6  forty-acre parcel as belonging to the estate of Charles S.
7  Howard and this constitutes a cloud on the title of the
8  IONE BAND OF INDIANS.

9      8.  For reasons probably related to UNION LAND AND
10  CATTLE COMPANY's going into recovership in July of 1920, the
11  forty-acre parcel is still listed by the Amador County
12  Assessor as being owned by CROCKER-CITIZENS NATIONAL BANK.

13     9.  CROCKER-CITIZENS, however, has   no interest in
14  the forty-acres.  The deed under which they hold title to the
15  surrounding lands specifically excepts that parcel.  Book 47,
16  Amador County Official Records, page 133.

17     10.  Nevertheless, through inadvertence or mistake, the
18  land has been listed on the Amador County Tax Rolls as
19  belonging to CROCKER-CITIZENS NATIONAL BANK and CROCKER-
20  CITIZENS has been paying the taxes on it.

21     11.  Plaintiffs have paid CROCKER-CITIZENS an amount
22  equal to the tax on the forty-acre parcel for the past five
23  years.

24     12.  Plaintiffs are in actual possession of the above
25  mentioned real property situated in Amador County, State of
26  California, more specifically described as:
27

28              Beginning at the point of intersection
                of the center line of the County Road
29              to Jackson, with the Westerly line of the
                fifty-two acre tract of land owned by
30              Anthony Heath, Armando Dellaringa,
                Rocco Dellaringa, and Albert Dellaringa,
31              as recorded in Book 130 Official Records,
                Amador County, California page 98;
32              thence following the center line of
                said County Road, North sixty-five

degrees, fifty minutes West (N. 65°
50'W.) One thousand seven hundred
twenty five (1725) feet to a point;
thence at right angles, North twenty-
four degrees, ten minutes East (N.24°
10'E) One thousand seventy-two (1072)
feet to a point; thence at right angles,
South sixty-five degrees, fifty minutes
East (S. 65° 50'E) One thousand five
hundred thirty one (1531) feet to the
West boundary of the said property of
Anthony Heath, Armando Dellaringa,
Rocco Dellaringa and Albert Dellaringa;
thence following said boundary line,
South fourteen degrees, eight minutes
West (S.14° 08'W.) One thousand eighty-
seven (1087) feet to the point of
beginning.

13.   Plaintiffs have, by themselves and their pre-
decessors in interest, been in the actual, exclusive, and
adverse possession of the property above described continuously
for twenty years prior to the filing of this complaint,
claiming to own the same in fee against the whole world and
have paid all taxes of every kind levied or assessed against
said property for five years.

14.   Defendants claim and assert an interest or interests
therein adverse to the plaintiffs and the claims of said
defendants are without any right whatsoever, and the said
defendants have not, nor has any of them, any estate, right,
title, or interest whatsoever, in said land or premises or
any part thereof.

Wherefore, plaintiffs pray that said defendants
and also all other persons unknown, claiming any right, title,
estate, lien, or interest in the real property described in
the complaint adverse to plaintiff's ownership, or any cloud
upon plaintiff's title thereto, may be required to set forth
the nature of their several claims, and that all adverse
claims of the said defendants or any of them may be determined
by a decree of this Court; and that by said decree it be
declared and adjudged that said plaintiff is the owner of

I, ROBERT J. DONOVAN, SAY:

I am the attorney for plaintiffs, THE IONE

BAND OF INDIANS, in this action; said plaintiffs

are absent from the County of Alameda, California,

where I have my office, and I make this verification

for and on behalf of that party for that reason;

I have read the above document and know its

contents; I am informed and believe and, on

that ground, allege that the matters stated

in it are true.

Executed on _____, 1972 at _____ Ca.

I declare under penalty of perjury that the above

is true and correct.

Robert J. Donovan
Robert J. Donovan
Attorney for the Ione Band of
Indians

# SAR EXHIBIT 105



## United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C. 20242

IN REPLY REFER TO:

OCT 18 1972

Mr. Nicholas Villa and the
IONE BAND OF INDIANS
c/o Mrs. Bernice Villa
Route 1, Box 191
Ione, California  95640

Dear Mr. Villa:

In January of this year the Bureau of Indian Affairs received a
letter from Robert J. Donovan, the Director of the California Rural
Indian Land Project.  That letter requested that the United States
agree to accept title to a certain forty acre tract of land near
Ione, California and to hold that land in trust for the Ione Band
of Indians.

Since then the Bureau of Indian Affairs has learned that the Ione
Band has filed suit in Amador County Superior Court to quiet and
perfect title in their names.  It has been informed that the Indians
continue to desire that the land ultimately be taken by the United
States and held in trust status.

The Secretary of the Interior recognizes his authority under 25
U.S.C. 465 to

> "acquire, through purchase,
> relinquishment, gift, exchange,
> or assignment, any interest in
> lands, water rights or surface
> rights to lands, within or
> without existing reservations,"

The Secretary also recognizes that, there having been no vote pursuant
to 25 U.S.C. 478 by the Ione Indians, the provisions of 465 apply to
them.  The Secretary also recognizes that obtaining a tribal or
community land base for the Ione Band is a part of his policy of Indian
self-determination and cultural identification.

- 2 -

Federal recognition was evidently extended to the Ione Band of Indians
at the time that the Ione land purchase was contemplated. As stated
earlier, they did not reject the Indian Reorganization Act and thus
are eligible for the purchase of land under this act. The Sacramento
Area Office of the Bureau of Indian Affairs should determine that the
land is merchantable and free of encumbrance. I am directing the
Sacramento Area Office to assist in the preparation of a document
containing a membership roll and governing papers which conform with
the Indian Reorganization.

As the Commissioner of Indian Affairs, I therefore, hereby agree to
accept by relinquishment of title or gift the following described
parcel of land to be held in trust for the Ione Band of Miwok Indians:

> Beginning at the point of in-
> tersection of the center line
> of the County Road to Jackson,
> with the Westerly line of the
> fifty-two acre tract of land
> owned by Anthony Meath, Armando
> Dellaringa, Rocco Dellaringa,
> and Albert Dellaringa, as re-
> corded in Book 130 Official
> Records, Amador County, Calif-
> ornia page 98; thence following
> the center line of said County
> Road, North sixty-five degrees,
> fifty minutes West (N. 65° 50'W.)
> One thousand seven hundred twenty
> five (1725) feet to a point;
> thence at right angles, North
> twenty-four degrees, ten minutes
> East (N. 24° 10'E) One thousand
> seventy two (1072) feet to a point;
> thence at right angles, South
> sixty-five degrees, fifty minutes
> East (S. 65° 50'E) One thousand
> five hundred thirty one (1531)
> feet to the West boundary of the
> said property of Anthony Meath,
> Armando Dellaringa, Rocco Dell-
> aringa and Albert Dellaringa; thence
> following said boundary line,
> South fourteen degrees, eight
> minutes West (S. 14° 08'W) One
> thousand eighty-seven (1087) feet
> to the point of beginning.

Sincerely,

Commissioner

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C. 20242

Mr. Nicholas Villa and the
IONE BAND OF INDIANS
c/o Mrs. Bernice Villa
Route 1, Box 191
Ione, California  95640

OCT 12 1972

Dear Mr. Villa:

In January of this year the Bureau of Indian Affairs received a
letter from Robert J. Donovan, the Director of the California Rural
Indian Land Project.  That letter requested that the United States
agree to accept title to a certain forty acre tract of land near
Ione, California and to hold that land in trust for the Ione Band
of Indians.

Since then the Bureau of Indian Affairs has learned that the Ione
Band has filed suit in Amador County Superior Court to quiet and
perfect title in their names.  It has been informed that the Indians
continue to desire that the land ultimately be taken by the United
States and held in trust status.

The Secretary of the Interior recognizes his authority under 25
U.S.C. 465 to

> "acquire, through purchase,
> relinquishment, gift, exchange,
> or assignment, any interest in
> lands, water rights or surface
> rights to lands, within or
> without existing reservations,"

The Secretary also recognizes that, there having been no vote pursuant
to 25 U.S.C. 478 by the Ione Indians, the provisions of 465 apply to
them.  The Secretary also recognizes that obtaining a tribal or
community land base for the Ione Band is a part of his policy of Indian
self-determination and cultural identification.

Exhibit D

- 2 -

...cation was evidently extended to the Ione Band of Indians
... that the Ione land purchase was contemplated.  As stated
... they did not reject the Indian Reorganization Act and thus
... ...ble for the purchase of land under this act.  The Sacramento
... Office of the Bureau of Indian Affairs should determine that the
... is merchantable and free of encumbrance.  I am directing the
... Area Office to assist in the preparation of a document
containing a membership roll and governing papers which conform with
the Indian Reorganization.

As the Commissioner of Indian Affairs, I therefore, hereby agree to
accept by relinquishment of title or gift the following described
parcel of land to be held in trust for the Ione Band of Miwok Indians:

> Beginning at the point of in-
> tersection of the center line
> of the County Road to Jackson,
> with the Westerly line of the
> fifty-two acre tract of land
> owned by Anthony Meath, Armando
> Dellaringa, Rocco Dellaringa,
> and Albert Dellaringa, as re-
> corded in Book 130 Official
> Records, Amador County, Calif-
> ornia page 98; thence following
> the center line of said County
> Road, North sixty-five degrees,
> fifty minutes West (N. 65° 50'W.)
> One thousand seven hundred twenty
> five (1725) feet to a point;
> thence at right angles, North
> twenty-four degrees, ten minutes
> East (N. 24° 10'E)  One thousand
> seventy two (1072) feet to a point;
> thence at right angles, South
> sixty-five degrees, fifty minutes
> East (S. 65° 50'E)  One thousand
> five hundred thirty one (1531)
> feet to the West boundary of the
> said property of Anthony Meath,
> Armando Dellaringa, Rocco Dell-
> aringa and Albert Dellaringa; thence
> following said boundary line,
> South fourteen degrees, eight
> minutes West (S. 14° 08'W)  One
> thousand eighty-seven (1087) feet
> to the point of beginning.

BIA surname
300
Mailroom
Rar:elw 9/27/72

Sincerely,

(Sgd) Louis R. Bru...

Commissioner

(EX)...