**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                                    )
MUWEKMA OHLONE TRIBE,              )
                                                    )
                    Plaintiff,          )
                                                    )
           v.                                 )          Civil Action No. 03-1231  (RBW)
                                                    )
DIRK A. KEMPTHORNE,                  )
Secretary of the Interior, and            )
GEORGE T. SKIBINE,                     )
Acting Assistant Secretary               )
for Indian Affairs,                           )
                                                    )
                    Defendants.      )
———————————————————————)


**ORDER**

        The Muwekma Ohlone Tribe, the plaintiff in this civil lawsuit, seeks judgments against

Dirk A. Kempthorne, the Secretary of the Interior, and George T. Skibine, the Acting Assistant

Secretary for Indian Affairs,[1] in their official capacities due to the issuance of a final decision by

the Department of the Interior (the "Department") "refusing federal recognition of" the plaintiff,

which the plaintiff contends was "arbitrary, capricious, an abuse of discretion, not in accordance

with law[,] and unwarranted by the facts," thereby violating the Administrative Procedure Act, 5

U.S.C. §§ 551-559, 701-706, 1305, 3105, 3344, 4301, 5335, 5372, 7521 (2000) (the "APA") and

the plaintiff's rights "of due process and equal protection" under the Constitution.  Complaint

("Compl.") ¶ 1.  The plaintiff's equal protection claim arises from the Department's decision to

recognize two other tribes, the Ione Band of Miwoks ("Ione")  and the Lower Lake Rancheria

("Lower Lake"), id. ¶ 26, without forcing those tribes to satisfy the criteria set forth in part 83 of

---

[1]  The plaintiff named as a defendant Aurene Martin, the Acting Assistant Secretary for Indian Affairs when the plaintiff filed its complaint.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted the name of Acting Assistant Secretary Skibine for that of former Acting Assistant Secretary Martin.

title 25 of the Code of Federal Regulations ("Part 83"), id. ¶¶ 37-39.  On September 21, 2006, the

Court issued a memorandum opinion addressing cross-motions for summary judgment filed by

the parties in which the Court ultimately concluded that "it lack[ed] sufficient information about

the Department's decisions to recognize Ione and Lower Lake[,] outside of the Part 83 process to

resolve [the plaintiff's] equal protection and APA claims."  Muwekma Ohlone Tribe v.

Kempthorne, 452 F. Supp. 2d 105, 113 (D.D.C. 2006) (Walton, J.).  The Court therefore

"remand[ed] th[e] case to the Department so that the administrative record may be supplemented

on th[at] issue."  Id.

        Following remand of the case pursuant to the Court's memorandum opinion and

accompanying order, the Department issued a detailed supplemental explanation attempting to

justify its treatment of the plaintiff.  After noting that the need for an explanation by the agency

arose "from what the Court describe[d] as '[the plaintiff's] claim that the Department has treated

it differently from similarly situated tribal petitioners,'" Explanation to Supplement the

Administrative Record at 2 (quoting Muwekma, 452 F. Supp. 2d at 120),[2] the Department

described the "key issue" before it as whether "[the plaintiff] 'is similarly situated to Ione and

Lower Lake, as all three entities . . . [were] previously recognized at least as late as 1927," id.

(quoting Muwekma, 452 F. Supp. 2d at 115).  The Department answered that question in the

negative, finding that "[a]ny similarity [the plaintiff] may have to those groups based on the

circumstance of prior historical acknowledgment before 1927 . . . does not require that

[the plaintiff] receive similar treatment outside the Department's acknowledgment process"

because "[t]he decision documents in those cases stressed factors other than previous

recognition."  Id.  Ultimately, the Department concluded that "[o]n the basis of the circumstances

_____

[2]  The defendants filed a copy of the explanation on the Court's docket on November 27, 2006.

that were considered particularly significant to the decision makers as expressed in their decision

documents, [the plaintiff] was not similarly situated to either Ione or Lower Lake." Id. at 3.

Having announced this conclusion, the Department proceeded to detail the various

purported historical dissimilarities between the plaintiff and the Ione and Lower Lake tribes. Id.

at 4-9. It explained that the plaintiff and Ione are not similarly situated because "[t]he [f]ederal

[g]overnment negotiated to purchase land for the Ione band in 1916 . . . and made numerous

efforts into the 1920[s] to acquire clear title to the land," resulting in a quieted title in the Ione

band's name by 1972, whereas "[t]here is no available evidence that any [f]ederal agent ever

engaged in negotiations or discussions to obtain land on behalf of [the plaintiff]." Id. at 5. And

the Department found that "[a] fundamental difference between [the plaintiff] and Lower Lake is

that the United States purchased land in 1916 to create the Lower Lake Rancheria . . . , but did

not do so for [the plaintiff], despite including it on a list of groups for which land might be

obtained." Id. at 4-5. The Department further concluded that the plaintiff "is dissimilar" from

Ione and Lower Lake because "in contrast to Lower Lake and Ione, which had trust lands,

agreements, legislation, or consultation decades later than 1927, no similar examples for

[the plaintiff] exist to provide a basis for concluding, or even contending, that any [f]ederal

acknowledgment of [the plaintiff] continued to exist." Id. at 7. The Department summarized its

historical analysis as follows:

> While some common factors might be discerned in the Ione and
> Lower Lake decisions, the rationale those two decisions gave for
> their actions was too brief in each case to establish a general
> standard by which exemptions from the acknowledgment process
> have been made. Taken together, those decisions did not set forth
> a standard of proof or an alternative evidentiary burden. They did
> not state alternative criteria for acknowledgment. They did not set
> forth any procedures for alternative process. The reasons given in
> those decisions for the "reaffirmation" of each group's status were
> limited. Those decision documents did not justify action merely

> on a finding that the group was recognized in the past. It is not
> clear from those two actions what test would be applied to
> determine whether or not other groups would qualify for a similar
> exemption from the administrative process of acknowledgment. It
> is clear, however, that the historical circumstances of [the plaintiff]
> can be distinguished from those of Ione and Lower Lake.

<u>Id.</u> at 9.

The Department also recognized its obligation pursuant to the Court's memorandum opinion and remand order "to 'articulate the standards that guided its analysis' of [the plaintiff's] request to be recognized outside its regulatory process," <u>id.</u> at 9 (quoting <u>Muwekma</u>, 452 F. Supp. 2d at 122 (internal quotation and citation omitted)), "and to show that it 'sufficiently justified in the administrative record . . . its decision to treat [the plaintiff] differently from Ione and Lower Lake,'" <u>id.</u> (quoting <u>Muwekma</u>, 452 F. Supp. 2d at 119). Rather than provide this "guid[ance]," however, the Department concluded that the plaintiff never definitely argued that its situation was similar to that of both Ione and Lower Lake, and that "[the plaintiff] was treated differently from Ione and Lower Lake because its situation was different from the situation of those two groups." <u>Id.</u> at 17.

In accordance with this explanation, the defendants now argue that summary judgment in their favor is appropriate because, <u>inter alia</u>, "[the plaintiff] has offered no proof that it is similarly situated to [Lower Lake] and [Ione]." Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment at 1; <u>see also</u> <u>id.</u> at 6 ("[The p]laintiff cannot sustain its Equal Protection Clause and APA claims[] because it is not similarly situated to Lower Lake and Ione."); <u>id.</u> at 7-19 (setting forth the purported dissimilarities between the plaintiff and the tribes excepted from the Part 83 process). The defendants further argue that the plaintiff's contentions that they were subjected to a higher evidentiary standard due to their inclusion in the Part 83 process "is flawed because it

rests on [the p]laintiff's refusal to recognize the crucial differences between itself and other

groups, such as Lower Lake and Ione, [that] have existed continuously as political entities." Id.

at 19.  Finally, it argues that the "very clear rational basis" for the Department's decision not to

exempt the plaintiff from the Part 83 procedures is that "there were no grounds for exempting

[the p]laintiff from the process," id. at 21, because "in the Lower Lake and Ione decisions

[the Department] stressed the importance of historical circumstances [that] were more

compelling than mere previous federal acknowledgment," id. at 22.  Thus, every argument raised

by the defendants with respect to the plaintiff's equal protection claim turns on the notion,

advanced by the Department in its explanation, that the plaintiff is not similarly situated to the

Ione and Lower Lake tribes.

        These arguments, and the explanation from the Department giving rise to them,

seemingly cannot be reconciled with the Court's September 21, 2006, memorandum opinion.  In

that opinion, the Court noted that the defendants opposed the plaintiff's initial motion for

summary judgment on three grounds, two of which concerned whether the plaintiff was similarly

situated to Ione and Lower Lake for purposes of the plaintiff's constitutional and APA

arguments.  Specifically, "the defendants argue[d] that the Department ha[d] not treated like

cases differently because by their very nature, federal acknowledgment decisions require highly

fact-specific determinations," and "claim[ed] that [the plaintiff] was not treated differently than

similarly situated petitioners[] because groups demonstrating or alleging characteristics similar to

[the plaintiff] are regularly required to proceed through the federal acknowledgment process."

Muwekma, 452 F. Supp. 2d at 116.

        The Court rejected both of these arguments.  It dismissed the defendants' "hand-waving

reference to 'highly fact-specific determinations,'" which, in the Court's estimation, "[did] not

free the defendants" of their obligation to justify the decision to treat the plaintiff differently

from Ione and Lower Lake based on the administrative record for the plaintiff's petition. <u>Id.</u> at

119.  Further, the Court found the argument "that groups such as [the plaintiff] have been

regularly and repeatedly required to submit Part 83 petitions" insufficient "to refute

[the plaintiff's] claim that the Department has treated it differently from similarly situated tribal

petitioners without sufficient justification." <u>Id.</u> at 120 (internal quotation and citation omitted).

    The Court further noted in a footnote that the defendants "obliquely" provided a "basis

for distinguishing [the plaintiff] and Lower Lake in their reply to [the plaintiff's] opposition to

their cross-motion for summary judgment," but also found this argument wanting. <u>Id.</u> at 118

n.13.  Specifically, the Court explained that:

> First, and most obviously, [the defendants' argument] pertain[ed]
> only to a difference between [the plaintiff] and <u>one</u> of the tribes
> with whom it [was] claiming to be similarly situated.  The
> defendants  [did]  not  assert  any  "highly  fact-specific
> determination[]"  that  would  explain  why  [the plaintiff]  is  not
> similarly situated to Ione in such a way as to require a reasoned
> explanation of the Department's disparate actions.  Second, the
> Department [did] not contend, here or in the administrative record,
> that it required [the plaintiff] and not Lower Lake to undergo the
> Part 83 procedure <u>because</u> the latter, unlike the former, had
> received land in trust and had participated in an election.

<u>Id.</u> (emphasis in original).

    Having rejected all of the defendants' arguments on the issue of similarity of

circumstances, the Court proceeded to find that "the Department . . . ha[d] never provided a clear

and coherent explanation for its disparate treatment of [the plaintiff] when compared with Ione

and Lower Lake," nor had it ever "articulated the standards that guided its decision to require

[the plaintiff] to submit a petition and documentation under Part 83 while allowing other tribes to

bypass the formal tribal recognition procedure altogether." <u>Id.</u> at 121 (internal quotation and

citation omitted).  Because there was "virtually nothing" in the administrative record that would
"allow the Court to determine whether [the Department's] judgment . . . reflect[ed] reasoned
decisionmaking," the Court concluded that it was "necessary to remand [the] case to allow the
Department to supplement the administrative record in this regard."  Id. (internal quotation and
citation omitted).  In other words, the Court determined in its prior memorandum opinion that the
defendants' arguments to the effect that the plaintiff was not similarly situated to Ione and Lower
Lake were without merit, and remanded the case to the Department so that the Department could
explain why it treated the plaintiff differently than other, similarly situated tribes.  The necessary
implication of both conclusions is that the Court found the plaintiff to be similarly situated to
Ione and Lower Lake.

        "Under the mandate rule, 'an inferior court has no power or authority to deviate from the
mandate issued by an appellate court.'"  Indep. Petroleum Ass'n of Am. v. Babbitt, 235 F.3d
588, 596 (D.C. Cir. 2001) (quoting Briggs v. Pa. R.R. Co., 334 U.S. 304, 306 (1948)).  "The
mandate rule is a 'more powerful version' of the law-if-the-case doctrine, which prevents courts
from reconsidering issues that have already been decided in the same case."  Id. at 597 (internal
quotation and citation omitted); see also Kimberlin v. Quinlan, 199 F.3d 496, 500 (D.C. Cir.
1999) ("The law-of-the-case doctrine rests on a simple premise: the same issue presented a
second time in the same case in the same court should lead to the same result" (internal quotation
and citation omitted) (emphasis in original)).  "Although primarily applicable between courts of
different levels, the [law-of-the-case] doctrine and the mandate rule apply to judicial review of
administrative decisions, and 'require[] the administrative agency, on remand from a court, to
conform its further proceedings in the case to the principles set forth in the judicial decision,
unless there is a compelling reason to depart.'"  Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th

Cir. 2002) (quoting <u>Wilder v. Apfel</u>, 153 F.3d 799, 803 (7th Cir. 1998)); <u>accord</u> <u>Brachtel v.</u>

<u>Apfel</u>, 132 F.3d 417, 419 (8th Cir. 1997).

Here, the Department's explanation and the defendants' arguments in defense of that

explanation and in support of summary judgment in their favor would appear to run afoul of the

law of the case established in this Court's prior memorandum opinion.  The Court concluded,

implicitly if not explicitly, that the plaintiff is similarly situated to Ione and Lower Lake, and

remanded the case to the Department for the sole purpose of ascertaining a reason as to why the

plaintiff was treated differently.  Yet, the defendants do not even acknowledge that their

arguments are inconsistent with the law-of-the-case, let alone provide a "compelling reason to

depart" from it.

The defendants' insouciance regarding the law-of-the-case is particularly troubling

because they appear to rely at least in part on administrative records for Ione and Lower Lake

that were not considered when the Department initially considered the plaintiff's petition for

recognition.  This tactic harkens back to the defendants' reply memorandum in support of their

initial cross-motion for summary judgment, where they argued "that because the full body of

administrative records regarding Ione and Lower Lake [was] not before the Court, [the plaintiff]

[could not] establish a violation of the Equal Protection Clause or the APA simply by alleging

that it ha[d] been treated differently than those tribes."  <u>Muwekma</u>, 452 F. Supp. 2d at 118

(internal quotation and citation omitted).  The Court rejected that argument, explaining that

"[w]hat matter[ed] . . . [was] whether the Department sufficiently justified <u>in the administrative</u>

<u>record for [the plaintiff's] tribal petition</u> its decision to treat [the plaintiff] differently from Ione

and Lower Lake."  <u>Muwekma</u>, 452 F. Supp. 2d at 119 (emphasis in original).

The Court remanded this case to the Department so it could explain <u>why</u> it treated similarly situated tribes differently, not so that it could construct post-hoc arguments as to whether the tribes were similarly situated in the first place.  It certainly did not remand the case so that the Department could re-open the record, weigh facts that it had never previously considered, and arrive at a conclusion vis-à-vis the similarity of the plaintiff's situation to those of Ione and Lower Lake that it had never reached before.  The Court would therefore be well within its discretion to reject the defendants' arguments outright, grant the plaintiff summary judgment with respect to its equal protection claim, and bring this case to a close.

However, the plaintiff neglected to raise this argument in its own motion for summary judgment and opposition to the defendants' cross-motion, thus depriving the Court of any briefing on this issue.  Therefore, out of an abundance of caution, the Court will direct the parties to file supplemental memoranda of law addressing (1) whether the defendants' arguments in support of summary judgment in their favor with respect to the plaintiff's equal protection claim are subject to the mandate rule or the law-of-the-case both with respect to whether the plaintiff is similarly situated to Ione and Lower Lake and with respect to whether the Court should consider administrative records pertaining to the latter tribes that were not considered when the Department issued its initial decision denying the plaintiff's petition for recognition, and (2) if so, whether there is a "compelling reason" to depart from the Court's mandate or the law-of-the-case.  If the defendants do not file a supplemental memorandum of law addressing these questions by the deadline established below, the Court will reach its own conclusion based on the analysis set forth above and rule in the plaintiff's favor accordingly.  If the defendants timely file a supplemental memorandum of law (and the plaintiffs file a timely opposition to the defendants' supplemental memorandum), the Court will consider the parties' arguments in reaching a final

decision on the parties' pending cross-motions for summary judgment.  The Court will stay its consideration of those motions until this supplemental briefing is complete.

Accordingly, it is

**ORDERED** that on or before October 30, 2008, the defendants shall file their supplemental memorandum of law, if any they intend to file, addressing the questions set forth above.  It is further

**ORDERED** that on or before December 1, 2008, the plaintiff shall file its opposition to the defendants' supplemental memorandum of law, if any it intends to file.  It is further

**ORDERED** that the Court's consideration of the parties' cross-motions for summary judgment is **STAYED** pending the filing of the memoranda delineated above.

**SO ORDERED** this 30th day of September, 2008.

REGGIE B. WALTON
United States District Judge